

FILED

1   Charles Wheeler (SBN 82915)
    Amanda M. Lorenz (SBN 264336)
2   COZEN O'CONNOR
    501 West Broadway, Suite No. 1610
3   San Diego, California 92101
    Telephone: 619.234-1700
4   Facsimile: 619.234-7831

5   Attorneys for Defendant
    INDEMNITY INSURANCE COMPANY OF NORTH
6   AMERICA

2013 AUG -6  PM 12: 09

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                           WESTERN DIVISION

11   TRI MARINE INTERNATIONAL, INC., a        )   Case No.: CV13-05662-RGK
     Washington corporation; TRI MARINE       )                            (Ex)
12   INTERNATIONAL (PTE) LTD., a Singapore     )   NOTICE OF REMOVAL OF ACTION
     corporation; and TRI MARINE SPAIN, S.L., a Spain )  PURSUANT TO 28 U.S.C. §1441
13   corporation                              )   (DIVERSITY JURISDICTION)
                                              )
14              Plaintiffs,                   )
                                              )
15        vs.                                 )
                                              )
16   INDEMNITY INSURANCE COMPANY OF           )
     NORTH AMERICA, a Pennsylvania corporation; )
17   and DOES 1 through 10,                   )
                                              )
18              Defendants.                   )
                                              )
19

20        Indemnity Insurance Company of North America ("IINA") by its attorneys COZEN

21   O'CONNOR, respectfully files this Notice of Removal pursuant to 28 U.S.C. § 1441, and in support

22   thereof states the following:

23        1.      On or about May 9, 2013, an action for declaratory relief was filed in the Superior

24   Court of California, County of Los Angeles entitled *Tri Marine International, Inc. et al v. Indemnity*

25   *Insurance Company of North America*; Case No. BC508355 ("State Court Action").  A true and

26   accurate copy of the Summons and Complaint is attached hereto as Exhibit "A."  On or about July 8,

27   2013, Plaintiffs Tri Marine International, Inc., Tri Marine International (pte) Ltd. and Tri Marine

28   Spain, S.L. (hereinafter "Plaintiffs") served IINA via its statutory agent, CT Corporation, in Los

NOTICE OF REMOVAL
1

Angeles, CA.

## **BACKGROUND**

2.      Plaintiffs assert that Tri Marine Spain, S.L. employee, Alfonso Beitia ("Beitia") stole millions of euros worth of property by diverting tuna from transportation to its final destination through fake sales to companies he owned or directly or indirectly controlled. The State Court Action alleges that the Marine Policy issued by IINA to Tri Marine, policy no. 494680, provides coverage for alleged losses Plaintiffs suffered when property was stolen by Beitia.

## **GROUNDS FOR REMOVAL – DIVERSITY**

3.      IINA was served with Plaintiffs' Summons and Complaint by service on its statutory agent on July 8, 2013.  IINA has not filed any responsive pleadings in the State Court Action.  As required by 28 USC § 1446 (b), this Notice of Removal is accordingly being filed with this Court "within thirty (30) days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief" upon which the State Court Action is based.

4.      There is complete diversity of citizenship among and between the Plaintiffs on the one hand (Plaintiff Tri Marine International, Inc., a Washington corporation; Plaintiff Tri Marine International (pte), Ltd., a Singapore corporation; and Plaintiff Tri Marine Spain, S.L., a Spanish corporation) and Defendant IINA (a Pennsylvania corporation) on the other hand.

5.      Plaintiff Tri Marine International, Inc. alleges in the State Court Action that it is a Washington corporation. See ¶ 2 of Exhibit A.

6.      Plaintiff Tri Marine International (pte), Ltd. alleges in the State Court Action that it is a Singapore corporation. See ¶ 2 of Exhibit A.

7.      Plaintiff Tri Marine Spain, S.L. alleges in the State Court Action that it is a Spanish corporation. See ¶ 2 of Exhibit A.

8.      Defendant IINA is a Pennsylvania corporation, with its principal offices in Philadelphia, Pennsylvania. See ¶ 3 of Exhibit A.

9.      Plaintiffs are alleging damages in excess of $75,000. See ¶ ¶ 1, 19, 20, and 21 of Exhibit A.

10.      As demonstrated above, the District Court has jurisdiction over this matter pursuant

1    to 28 U.S.C. 1332.

2        11.    IINA will, upon filing of this Notice of Removal, as required by 28 U.S.C. § 1446(d),

3    file a copy of the Notice of Removal with the Clerk of the Superior Court of the State of California,

4    County of Los Angeles, and will serve a copy of same upon Plaintiffs.

5                                    **CONCLUSION**

6        12.    IINA hereby asserts that this removal in no way constitutes: a waiver of any

7    jurisdictional defenses to the claims of Plaintiffs; a waiver of any defense or contest to the validity

8    and effectiveness of service of process upon IINA; a waiver of the statute of limitations defense; a

9    waiver of the defense that IINA is not a proper party to this lawsuit or a waiver of any other defense

10   or pleading challenges.

11

12   DATED: August 6, 2013                COZEN O'CONNOR

13

14                                        By: _____

15                                           Charles Wheeler, Esq.
                                             Amanda M. Lorenz, Esq.
16                                           Attorneys for Defendant
                                             INDEMNITY INSURANCE COMPANY OF
17                                           NORTH AMERICA

     LEGAL\17015342\2 00011.0018.000/334059.000

18

19

20

21

22

23

24

25

26

27

28

---

# EXHIBIT "A"

 **CT Corporation**

**Service of Process Transmittal**
07/08/2013
CT Log Number 523067426

| | |
|---|---|
| **TO:** | Saverio Rocca, Corporate Counsel<br>ACE Group<br>436 Walnut Street, 2nd Floor WA02C<br>Philadelphia, PA 19106 |
| **RE:** | **Process Served in California** |
| **FOR:** | Indemnity Insurance Company of North America (Domestic State: PA) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Tri Marine International, Inc., etc., et al., Dfts. vs. Indemnity Insurance Company of North America, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Notice(s), Instructions, Stipulation(s), Informal Discovery Conference, Stipulation and Order, Cover Sheet Addendum and Statement, Cover Sheet, Certificate of Service/ Notice of Entry, Attachment(s), Affidavit(s), Motion, Complaint, Demand for Jury Trial, Exhibit(s) |
| **COURT/AGENCY:** | Los Angeles County - Superior Court, CA<br>Case # BC508355 |
| **NATURE OF ACTION:** | Insurance Litigation - Declaratory Relief against Defendant Indemnity Insurance - Defendant failed to accept or deny coverage for Tri Marine's barratry losses in a timely manner |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/08/2013 at 13:23 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Clyde M. Hettrick<br>Hettrick Law, P.C.<br>1801 Century Park East<br>24 th Floor<br>Los Angeles, CA 90067<br>310-491-7950 |
| **ACTION ITEMS:** | CT will retain the current log<br>Image SOP<br>Email Notification, Adrienne Logan ADRIENNE.LOGAN@acegroup.com<br>Email Notification, Marie Morrill marie.morrill@acegroup.com<br>Email Notification, Pamela Martin pamela.martin@acegroup.com<br>Email Notification, Angela Jay angela.jay@acegroup.com<br>Email Notification, Darlene Schneider darlene.schneider@acegroup.com<br>Email Notification, Cheryl Barnett cheryl.barnett@acegroup.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Nancy Flores<br>818 West Seventh Street<br>Los Angeles, CA 90017<br>213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Indemnity Insurance Company of North America, a Pennsylvania
corporation, and Does 1 through 10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Tri Marine International, Inc., a Washington corporation; Tri Marine
International (Pte) Ltd., a Singapore corporation; and (see attachment A)

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAY 09 2013

John A. Clarke, executive Officer/Clerk
By Cristina Grijalva, Deputy
Cristina Grijalva

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: *(El nombre y dirección de la corte es):* Los Angeles Superior Court

111 North Hill Street
Los Angeles, CA 90012

**CASE NUMBER:** *(Número del Caso)*: BC 508355

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Clyde M. Hettrick, HettrickLaw, P.C., 1801 Century Park East, 24th Fl., Los Angeles, CA 90067 (310) 491-79

**DATE:** May 9, 2013     John A. Clarke     Clerk, by _____, Deputy
*(Fecha)*                           *(Secretario)*                *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

MAY 09 2013

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Indemnity Insurance Company of North America, *a Pennsylvania Corporation*
   under: ☑ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☑ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

00/00/2013 12:19:27 FAX 2132    990        NATIONWIDE LEGAL                            2.

**Attachment A**

**Tri Marine Spain, S.L., a Spain corporation**

**NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)**

Case Number _____

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT  BC508355

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Daniel Buckley | 1 | 534 | Hon. Michael Johnson | 56 | 514 |
| Hon. Barbara A. Meiers | 12 | 636 | Hon. Ralph W. Dau | 57 | 517 |
| Hon. Terry A. Green | 14 | 300 | Hon. Rolf M. Treu | 58 | 516 |
| Hon. Richard Fruin | 15 | 307 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Rita Miller | 16 | 309 | Hon. Mark Mooney | 68 | 617 |
| Hon. Richard E. Rico | 17 | 309 | Hon. William F. Fahey | 69 | 621 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Yvette M. Palazuelos | 28 | 318 | | | |
| Hon. Barbara Scheper | 30 | 400 | | | |
| Hon. Mary H. Strobel | 32 | 406 | **Hon. Emilie H. Elias** | **324** | **CCW** |
| Hon. Maureen Duffy-Lewis | 38 | 412 | **Hon. Elihu M. Berle\*** | **323** | **CCW** |
| Hon. Michelle R. Rosenblatt | 40 | 414 | OTHER | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | |
| Hon. Holly E. Kendig | 42 | 416 | | | |
| Hon. Mel Red Recana | 45 | 529 | | | |
| Hon. Debre Katz Weintraub | 47 | 507 | | | |
| Hon. Elizabeth Allen White | 48 | 506 | | | |
| Hon. Deirdre Hill | 49 | 509 | | | |
| Hon. John L. Segal | 50 | 508 | | | |
| Hon. Abraham Khan | 51 | 511 | | | |
| Hon. Susan Bryant-Deason | 52 | 510 | | | |
| Hon. Steven J. Kleifield | 53 | 513 | | | |
| Hon. Ernest M. Hiroshige | 54 | 512 | | | |
| Hon. Malcolm H. Mackey | 55 | 515 | | | |

**\*Complex**
All cases designated as complex (other than class actions) are initially assigned to Judge Elihu M. Berle in Department 323 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____    JOHN A. CLARKE, Executive Officer/Clerk

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

LACIV CCH 190 (Rev. 01/12)
LASC Approved 05-06
For Optional Use

NOTICE OF CASE ASSIGNMENT –

UNLIMITED CIVIL CASE

Page 2 of 2

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



Superior Court of California
County of Los Angeles



Los Angeles County
Bar Association
Litigation Section

Los Angeles County
Bar Association Labor and
Employment Law Section



Consumer Attorneys
Association of Los Angeles



Southern California
Defense Counsel



Association of
Business Trial Lawyers



California Employment
Lawyers Association

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lasuperiorcourt.org* under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ (INSERT DATE) for the complaint, and _____ (INSERT DATE) for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ►          _____
(TYPE OR PRINT NAME)                                              (ATTORNEY FOR PLAINTIFF)

Date:

_____          ►          _____
(TYPE OR PRINT NAME)                                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ►          _____
(TYPE OR PRINT NAME)                                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ►          _____
(TYPE OR PRINT NAME)                                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ►          _____
(TYPE OR PRINT NAME)                                              (ATTORNEY FOR _____)

Date:

_____          ►          _____
(TYPE OR PRINT NAME)                                              (ATTORNEY FOR _____)

Date:

_____          ►          _____
(TYPE OR PRINT NAME)                                              (ATTORNEY FOR _____)

| | | |
|---|---|---|
| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.    Be filed within two (2) court days of receipt of the Request; and

    iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.    No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.    If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.    If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.    If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.    The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court. .

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.    Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.    Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.    References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:          FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:    FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

The parties agree that:

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR PLAINTIFF)

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR DEFENDANT)

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR DEFENDANT)

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR DEFENDANT)

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR _____ )

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR _____ )

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR _____ )

**THE COURT SO ORDERS.**

Date: _____        _____
                                                                                   JUDICIAL OFFICER

| SHORT TITLE: Tri Marine International, Inc., et al. v. Indemnity Insurance | CASE NUMBER BC508355 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 7 ___ ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> ### Applicable Reasons for Choosing Courthouse Location (see Column C below)
>
> 1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
> 2. May be filed in central (other county, or no bodily injury/property damage).
> 3. Location where cause of action arose.
> 4. Location where bodily injury, death or damage occurred.
> 5. Location where performance required or defendant resides.
> 6. Location of property or permanently garaged vehicle.
> 7. Location where petitioner resides.
> 8. Location wherein defendant/respondent functions wholly.
> 9. Location where one or more of the parties reside.
> 10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or tr…c/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

BY FAX

00/00/2013  12:19:27 FAX 2132██990        NATIONWIDE LEGAL                    3

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Clyde M. Hettrick (State Bar No. 137140)<br>HettrickLaw, P.C.<br>1801 Century Park East, 24th Floor<br>Los Angeles, CA 90067 | CONFORMED COPY<br>ORIGINAL FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES |
| TELEPHONE NO.: 310.491.7950     FAX NO.: 310.943.7952 | MAY 09 2013 |
| ATTORNEY FOR *(Name):* Plaintiffs Tri Marine International, Inc., et al. | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles | John A. Clarke, Executive Officer/Clerk |
| STREET ADDRESS: 111 North Hill Street | BY Cristina Grijalva, Deputy |
| MAILING ADDRESS: | Cristina Grijalva |
| CITY AND ZIP CODE: Los Angeles 90012 | |
| BRANCH NAME: Central | |

| CASE NAME:<br>Tri Marine International, Inc., et al. v. International Indemnity Ins. | |
|---|---|

| **CIVIL CASE COVER SHEET** | Complex Case Designation | CASE NUMBER |
|---|---|---|
| [✓] Unlimited   [ ] Limited<br>(Amount    (Amount<br>demanded   demanded is<br>exceeds $25,000) $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC 508355 |
| | | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [✓] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel
      issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts
      in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [✓] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):*  1) Declaratory Relief
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 9, 2013
Clyde M. Hettrick
_____
(TYPE OR PRINT NAME)    ▶ [signature]
                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
                                                                                                             Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |
|---|---|---|

**BY FAX**



CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

NOTICE SENT TO:

JUN 0 5 2013

Hettricklaw, P.C.
1801 Century Park East, 24th Floor
Los Angeles       CA  90067

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
Alisa Alba

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| TRI MARINE INTL INC ET AL<br>                    Plaintiff(s),<br>             VS.<br><br>INDEMNITY INS COMPANY OF NORTH<br>                    Defendant(s). | **CASE NUMBER**<br><br>BC508355<br><br>**NOTICE OF CASE**<br>**MANAGEMENT CONFERENCE** |

**TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:**

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/ attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for  September 9, 2013  at  8:45 am  in  Dept. 51  at 111 North Hill Street, Los Angeles, California  90012.

**NOTICE TO DEFENDANT:**     **THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, section 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 2.2 et seq.

Date:  June 5, 2013

ABRAHAM KHAN
_____
Judicial Officer

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the *cause herein,* *and that* on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[ √ ] by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[   ] by personally giving the party notice upon filing the complaint.
Date:  June 5, 2013

John A. Clarke, Executive Officer/Clerk

by _____, Deputy Clerk
A. L. ALBA

Cal. Rules of Court, rule 3.720-3.730
LASC Local Rules, Chapter Seven

LACIV 132 (Rev. 09/07)
LASC Approved 10-03

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 05/22/13 | | | DEPT. 71 |
|---|---|---|---|
| HONORABLE Suzanne G. Bruguera | JUDGE | K. TOLLACK | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| C. RANDLE, C.A. | Deputy Sheriff | NONE | Reporter |

| 11:00 am | BC508355 | Plaintiff Counsel | NO APPEARANCE |
|---|---|---|---|
| | TRI MARINE INTL INC ET AL VS INDEMNITY INS COMPANY OF NORTH AMERICA | Defendant Counsel | NO APPEARANCE |

**NATURE OF PROCEEDINGS:**

CERTIFICATE OF SERVICE/
NOTICE OF ENTRY OF ORDER

I, the below-named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served the Notice of Entry of the above minute
order upon each party or counsel named below by
placing the document for collection and mailing so
as to cause it to be deposited in the United States
mail at the courthouse in Los Angeles, California,
one copy of the original filed/entered herein in a
separate sealed envelope to each address as shown
below with the postage thereon fully prepaid, in
accordance with standard court practices.

Date: May 22, 2013

John A. Clarke, Executive Officer/Clerk

By: _____K. TOLLACK_____
            K. TOLLACK

HettrickLaw
Attn: Clyde M. Hettrick
1801 Century Park East, 24th Floor
Los Angeles, California 90067

Page   2 of   2   DEPT. 71

MINUTES ENTERED
05/22/13
COUNTY CLERK

00/00/2013  12:19:27 FAX 21⬤99990        NATIONWIDE LEGAL                                        3

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER |
|---|---|
| Clyde M. Hettrick, Esq.<br>HettrickLaw, P.C.<br>1801 Century Park East, 24th Floor<br>Los Angeles, CA 90067<br>310-491-7950 | 137140 |

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAY 20 2013

John A. Clarke, Executive Officer-Clerk
BY _____ Deputy
Cristina Grijalva

ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
Tri Marine International, Inc., et al.

DEFENDANT:
Indemnity Insurance Company of North America

**AFFIDAVIT OF PREJUDICE**
**PEREMPTORY CHALLENGE TO JUDICIAL OFFICER**
**(Code Civ. Proc., § 170.6)**

| CASE NUMBER: |
|---|
| BC508355 |

| Name of Judicial Officer | Dept./Div. Number |
|---|---|
| Soussan G. Bruguera | 71 |
| ✓ Judge          Commissioner          Referee | |

I am a party (or attorney for a party) to this action or special proceeding. The judicial officer named above, before whom the trial of, or a hearing in, this case is pending, or to whom it has been assigned, is prejudiced against the party (or his or her attorney) or the interest of the party (or his or her attorney), so that declarant cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judicial officer.

| I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. | | |
|---|---|---|
| Date:<br><br>May 20, 2013 | Signature of Declarant | Tri Marine International, Inc.<br>(Name of Party)<br>✓ Plaintiff          Cross Complainant<br>Defendant          Cross Defendant |

LACIV 015 (Rev. 01/07)
LASC Approved 04-04

**AFFIDAVIT OF PREJUDICE**
**PEREMPTORY CHALLENGE TO JUDICIAL OFFICER**

Code Civ. Proc., § 170.6

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 05/22/13

DEPT. 71

HONORABLE Suzanne G. Bruguera          JUDGE    K. TOLLACK          DEPUTY CLERK

HONORABLE                               JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR

        C. RANDLE, C.A.          Deputy Sheriff    NONE                    Reporter

| 11:00 am | BC508355 | Plaintiff Counsel | NO APPEARANCE |
| | TRI MARINE INTL INC ET AL VS INDEMNITY INS COMPANY OF NORTH AMERICA | Defendant Counsel | NO APPEARANCE |

NATURE OF PROCEEDINGS:

PLAINTIFF TRI MARINE INTERNATIONAL, INC.'S PEREMOTORY
CHALLENGE AGAINST THE HONORABLE SUZANNE G. BRUGUERA,
DEPARTMENT 71

The Court reviews plaintiff's
Peremptory Challenge filed with the Court on
May 20, 2013 pursuant to Section 170.6
of the Code of Civil Procedure and finds that the
document was filed timely.

All future dates in this department are advanced
and vacated.

Upon direction from Department 1, the above matter
is reassigned from Judge Suzanne G. Bruguera,
Department 71, to Judge Abraham Kahn,
Department 51.

If any appearing party has not yet exercised a
peremptory challenge under Section 170.6 CCP,
peremptory challenges by them to the newly assigned
judge must be timely filed within the 15 day period
specified in Section 170.6 CCP, with extensions of
time pursuant to Section 1013 CCP if service is by
mail.  Previously non-appearing parties, if any, have
a 15 day statutory period from first appearance to
file a peremptory challenge (68616(1) Govt. Code).

Moving party to give notice.

                    Page   1 of   2   DEPT. 71

MINUTES ENTERED
05/22/13
COUNTY CLERK

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY:<br>Clyde M. Hettrick, Esq.<br>HettrickLaw, P.C.<br>1801 Century Park East, 24th Floor<br>Los Angeles, CA 90067<br>310-491-7950 | STATE BAR NUMBER<br>137140 | Reserved for Clerk's File Stamp |
|---|---|---|

ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
Tri Marine International, Inc., et al.

DEFENDANT:
Indemnity Insurance Company of North America

| AFFIDAVIT OF PREJUDICE<br>PEREMPTORY CHALLENGE TO JUDICIAL OFFICER<br>(Code Civ. Proc., § 170.6) | CASE NUMBER:<br>BC508355 |
|---|---|

| Name of Judicial Officer<br>Soussan G. Bruguera | | Dept./Div. Number<br>71 |
|---|---|---|
| ✓ Judge | Commissioner | Referee |

I am a party (or attorney for a party) to this action or special proceeding. The judicial officer named above, before whom the trial of, or a hearing in, this case is pending, or to whom it has been assigned, is prejudiced against the party (or his or her attorney) or the interest of the party (or his or her attorney), so that declarant cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judicial officer.

| I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. | | |
|---|---|---|
| Date:<br><br>May 20, 2013 | Signature of Declarant | Tri Marine International, Inc.<br>(Name of Party)<br>✓ Plaintiff       Cross Complainant<br>Defendant       Cross Defendant |

**AFFIDAVIT OF PREJUDICE**
**PEREMPTORY CHALLENGE TO JUDICIAL OFFICER**

Code Civ. Proc., § 170.6

00/00/2013  12:19:27 FAX 21●99990        NATIONWIDE LEGAL          1

1 │ Clyde M. Hettrick, Esq. (SBN 137140)
  │ HETTRICKLAW, P.C.
2 │ 1801 Century Park East, 24th Floor
  │ Los Angeles, California 90067
3 │ Telephone (310) 491-7950
  │ Facsimile (310) 491-7950
4 │

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA

MAY 20 2013

John A. Clarke, Executive Officer/Clerk
BY _____ Deputy

5 │ Attorneys for Plaintiff TRI MARINE INTERNATIONAL, INC.; TRI
6 │ MARINE INTERNATIONAL (PTE) LTD. and TRI MARINE SPAIN, S.L.

7 │

8 │

9 │              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 │                   FOR THE COUNTY OF LOS ANGELES

11 │ TRI MARINE INTERNATIONAL, INC., a        CASE NO.: BC508355
   │ Washington corporation; TRI MARINE
12 │ INTERNATIONAL (PTE) LTD., a Singapore     [Complaint Filed:  May 9, 2013]
   │ corporation; and TRI MARINE SPAIN, S.L., a
13 │ Spain corporation;                        Assigned to:  Hon. Soussan G. Bruguera
   │                                           Department 71
14 │          Plaintiffs,
15 │     v.                                    MOTION FOR PEREMPTORY
   │                                           CHALLENGE
16 │ INDEMNITY INSURANCE COMPANY OF
   │ NORTH AMERICA, a Pennsylvania corporation;      BY FAX
17 │ and DOES 1 through 10,
18 │          Defendants.                      Trial Date:  TBD
19 │
20 │
21 │
22 │
23 │
24 │
25 │
26 │
27 │
28 │

HETTRICK
LAW, P.C.

MOTION FOR PEREMPTORY CHALLENGE

BY FAX

TO THE HONORABLE SOUSSAN G. BRUGUERA, JUDGE OF THE ABOVE ENTITLED COURT:

The Plaintiffs in the above entitled matter hereby moves that the trial or hearing, which involves a contested issue of law or fact, and which has been assigned to the Honorable Soussan G. Bruguera, Judge of the above entitled Court, be reassigned from that Judge, and that no matters hereinafter arising in this case be heard or assigned to the Honorable Soussan G. Bruguera on the grounds stated in the declaration attached hereto and filed herewith.

This motion is based on the matters contained herein, on California Code of Civil Procedure Section 170.6 and on the supporting Declaration of Clyde Hettrick.

WHEREFORE, Plaintiff requests that the relief herein be granted.

DATED: May 20, 2013

Respectfully submitted,

HETTRICK LAW, P.C.

By: _____
Clyde M. Hettrick, Esq.
Attorneys for Plaintiffs TRI MARINE
INTERNATIONAL, INC.; TRI
MARINE INTERNATIONAL (PTE) LTD. and
TRI MARINE SPAIN, S.L.

HETTRICK
LAW, P.C.

MOTION FOR PEREMPTORY CHALLENGE

00/00/2013  12:19:27 FAX 21●●9990      NATIONWIDE LEGAL

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAY 09 2013

John A. Clarke, Executive Officer/Clerk

BY _Cristina Grijalva_ Deputy
Cristina Grijalva

1  Clyde M. Hettrick (SBN 137140)
   HETTRICKLAW, P.C.
2  1801 Century Park East, 24th Floor
   Los Angeles, California 90067
3  Telephone (310) 491-7950
   Facsimile (310) 491-7950
4
   Attorneys for Plaintiff TRI MARINE INTERNATIONAL, INC.; TRI
5  MARINE INTERNATIONAL (PTE) LTD. and TRI MARINE SPAIN, S.L.
6
7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                 FOR THE COUNTY OF LOS ANGELES
10
11  TRI MARINE INTERNATIONAL, INC., a      CASE NO.: BC 508355
    Washington corporation; TRI MARINE
12  INTERNATIONAL (PTE) LTD., a Singapore   [Complaint Filed: May 9, 2013]
    corporation; and TRI MARINE SPAIN, S.L., a
13  Spain corporation;                      Assigned to: _____
                                            Department _____
14          Plaintiffs,
15      v.                                  COMPLAINT FOR DECLARATORY
                                            RELIEF
16  INDEMNITY INSURANCE COMPANY OF
    NORTH AMERICA, a Pennsylvania corporation;
17  and DOES 1 through 10,                  DEMAND FOR JURY TRIAL
18          Defendants.
19
20          Plaintiffs Tri Marine International, Inc., Tri Marine International (Pte), Ltd. And Tri Marine
21  Spain, S.L. (collectively, "Tri Marine") complain of defendants as follows:
22                          NATURE OF THE ACTION
23      1.      Tri Marine seeks a declaration that defendant Indemnity Insurance Company of North
24  America ("Indemnity Insurance") (one of the ACE Group of Insurers) is required to cover, under the
25  "open" Marine Policy it issued to Tri Marine, as well as other Tri Marine companies, the substantial
26  losses Tri Marine suffered when millions of Euros worth of its property was stolen by a dishonest Tri
27  Marine Spain, S.L. employee who improperly diverted that property away from transportation to its
28

BY FAX

HETTRICK
LAW, P.C.

          PLAINTIFF TRI MARINE'S COMPLAINT FOR DAMAGES

1 | final destination in Spain through fake "sales" to companies either owned by or directly or indirectly
2 | controlled by the dishonest employee.  The property was transferred to these companies dockside upon
3 | arrival in Spain, and the purported "sales" resulted in no payment to Tri Marine, causing it to suffer
4 | millions of Euros worth of losses.

5 | **THE PARTIES**

6 |       2.     Plaintiff Tri Marine International, Inc. is a Washington corporation, with its principal
7 | offices in Bellevue, Washington.  Among Tri Marine International, Inc.'s subsidiaries are Plaintiff Tri
8 | Tri Marine International (Pte), Ltd. a Singapore corporation, with its principal offices in Singapore,
9 | and Tri Marine Spain, S.L., a Spanish corporation, with its principal offices in Bilbao, Spain.  Tri
10 | Marine is in the business of, among other things, fishing, trading, processing, chartering, logistics,
11 | international finance and other activities used to provide a reliable and economical supply of tuna and
12 | tuna products to leading companies in the global tuna industry.  Tri Marine Spain, S.L. is the Tri
13 | Marine subsidiary that buys tuna from Tri Marine International (Pte), Ltd. (and sometimes from other
14 | vendors) and then sells the tuna to Tri Marine Spain, S.L.'s Spanish customers

15 |       3.     Defendant Indemnity Insurance is a Pennsylvania corporation, with its principal offices
16 | in Philadelphia, Pennsylvania, and is duly authorized to transact business in the State of California.
17 | Indemnity Insurance is or was in the business of providing insurance.  Tri Marine is informed and
18 | believes, and on that basis alleges, that Indemnity Insurance transacts business in the State of
19 | California and the County of Los Angeles.

20 |       4.     Tri Marine is ignorant of the true names and capacities, whether individual, associate,
21 | partnership, corporate, or otherwise, of the Defendants fictitiously designated herein as Does 1 through
22 | 10, and therefore sues those Defendants by such fictitious names.  Tri Marine will seek leave of Court
23 | to amend this Complaint when the true names and capabilities of these fictitiously-designated
24 | Defendants have been ascertained.  Tri Marine is informed and believes, and on that basis alleges, that
25 | Does 1 through 10, in some way unknown to Tri Marine, have caused or are otherwise responsible for
26 | the losses alleged herein, and that Does 1 through 10 are authorized to, and do, transact business in the
27 | State of California and the County of Los Angeles.

28 |

**PLAINTIFF TRI MARINE'S COMPLAINT FOR DAMAGES**

5.     Tri Marine is informed and believes, and on that basis alleges, that at all times pertinent herein, each defendant was an agent and/or employee of every other defendant.  In doing the things alleged in the causes of action stated herein, each defendant was acting within the course and scope of this agency and/or employment and was acting with the consent, permission and/or authorization of each of the remaining defendants.  All actions of each defendant alleged in the causes of action stated herein were ratified and/or approved by every other defendant and/or its officers or managing agents, and by agreeing actively to conceal the true facts regarding the wrongful practices alleged herein, each defendant engaged in conspiratorial conduct with every other defendant.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction of this matter because the amount in controversy exceeds the jurisdictional minimum of the Court, exclusive of costs and interest.  Moreover, this Court has jurisdiction over this matter because Indemnity has had contacts with the State of California regarding the matters alleged herein, and/or is doing business in the State of California.

7.     Venue is proper in Los Angeles County, California because the Marine Policy at issue was negotiated by Tri Marine's insurance broker with an ACE Group employee, who is located in this venue, and conducted their negotiations in California.  Further, the claim at issue was tendered to Indemnity Insurance by Tri Marine's Chief Risk Officer, who is located in this venue.  Coverage for the claim was pursued by Tri Marine's broker via its claim representative, who is also located in this venue.

## INDEMNITY INSURANCE BROAD COVERAGE FOR "BARRATRY"

8.     Indemnity Insurance issued "open" Marine Policy No. 494680 (a copy of which is attached as Exhibit A) to Tri Marine, and coverage under that Policy has been continuously in force from at least May of 1995 through the present (the "Marine Policy").  Tri Marine's insurance broker and an ACE GROUP representative, both located in California, negotiated the Marine Policy's terms in California.

9.     The Marine Policy, through its Ocean Cargo Section (Section I), provides coverage for Tri Marine goods against numerous Perils, including but not limited to "barratry of the masters and mariners, and all other like perils, losses and misfortunes ... that have or shall come to hurt, detriment,

HETTRICK
LAW, P.C.

3

PLAINTIFF TRI MARINE'S COMPLAINT FOR DAMAGES

1   or damage of the said goods and merchandise, or any pa.. thereof, as may be otherwise provided for

2   herein or endorsed hereon."

3         10.    Barratry covers a broad range of misconduct for breach of duty well beyond outright

4   theft.  Coverage is not limited to the misconduct of ships' masters and mariners, but extends to "other

5   like perils."  Indeed, coverage under the Ocean Cargo Section extends well beyond a ship, and attaches

6   upon the insured's assumption of the risk for the goods and continues until the goods reach their final

7   destination including, without limitation, Warehouse-to-Warehouse coverage "while goods insured are

8   in transit and/or awaiting transit until delivered to the final warehouse at the destination ... or until the

9   expiry of 15 days (or 30 days if the destination to which the goods are insured is outside the limits of

10   the port), whichever occurs first."

11         11.    The Ocean Cargo Section provides a $10 million limit of coverage per claim applicable

12   to "goods on any one vessel or connecting conveyance."

13         12.    The Ocean Cargo Section of the Marine Policy also covers the expenses and costs that

14   the insured incurs to mitigate losses it suffers, pursuant to the Ocean Cargo Section's Sue & Labor

15   clause providing that, "in the case of any loss or misfortune, it shall be lawful and necessary for [Tri

16   Marine] to sue, labor, and travel for, in and about the defense, safeguard and recovery of the goods and

17   merchandise[,]" with the insurer obligated to "contribute in proportion to the sum herein insured."

18                   **TRI MARINE AND ITS BUSINESS**

19         13.    Tri Marine Spain, S.L. is a subsidiary of Tri Marine International, Inc.  The various Tri

20   Marine subsidiaries (all of which are insured via the Marine Policy), such as Tri Marine Spain, engage

21   in fishing, trading, processing, chartering, logistics, international finance, etc. activities used  to

22   provide a reliable and economical supply of tuna and tuna products to leading companies in the global

23   tuna industry.  Tri Marine Spain, S.L., located in Bilbao Spain, is the Tri Marine subsidiary that buys

24   tuna from Tri Marine International, Inc.'s subsidiary Tri Marine International (PTE) Ltd. (and

25   sometimes from other vendors) and then sells the tuna to Tri Marine Spain, S.L.'s Spanish customers,

26   which are mainly canneries.  There is normally no intermediary company between Tri Marine Spain,

27   S.L. and its cannery customers in the sale of tuna.

28

14.     Tri Marine Spain, S.L. often arranges sales of tuna to its Spanish customers while the tuna is still being transported to Spain.  In that circumstance, either Tri Marine Spain, S.L. or its customers arrange for land transport to take the tuna to the customer's location upon its arrival at a Spanish port.

15.     If a sale has not already been arranged before the tuna's arrival at a Spanish port, then Tri Marine Spain, S.L. arranges land transport to take the tuna to one of the third-party cold storage facilities in Spain which Tri Marine Spain, S.L. contracts with to provide for the storage of tuna awaiting sale to one of Tri Marine Spain, S.L.'s Spanish customers.

16.     Once Tri Marine Spain, S.L. sells the tuna held in cold storage, and based on the terms of sale, either Tri Marine Spain, S.L. or its Spanish customers arrange for transport of the tuna from the cold storage facility to the customer's location.

## THE DISHONEST EMPLOYEE – ALFONSO BEITIA

17.     In the time period relevant to the losses suffered by Tri Marine, Mr. Alfonso Carlos Beitia Urizar ("Beitia"), was General Manager of Tri Marine Spain, S.L.  Beitia's power as General Manager of Tri Marine Spain, S.L. permitted him to set the terms on which Tri Marine Spain, S.L. sold its tuna.

18.     The transactions, discussed below, that Beitia used to cause losses to Tri Marine were decided and executed solely by Beitia and were not subj..ct to approval by anyone but Beitia.  The transactions were made on Beitia's autho.:ty which, as described below, he abused to the extreme detriment of Tri Marine Spain, S.L.  Beitia's misconduct constitutes a form of barratry under the broad meaning of barratry.

## BEITIA'S UNLAWFUL TAKING OF TRI MARINE SPAIN, S.L.'S PROPERTY

19.     Starting no later than 2011, Beitia used various companies that he either owned or directly or indirectly controlled  to steal millions of Euros worth of tuna from Tri Marine.  Many of the thefts involved fraudulent "sales" transactions (and deliveries) that occurred at the port and diverted tuna away from Tri Marine upon its arrival in Spain.

20.     These "sales" (and deliveries) that diverted tuna upon arrival at the Spanish port diverted tuna away from what should have its final destination, i.e., cold storage while awaiting a

HETTRICK
LAW, P.C.

1  legitimate sale, occurred before the tuna had been delivered to Tri Marine's cold storage warehouses in

2  Spain.  In these "sales," Beitia diverted tuna that otherwise would have been transported by Tri Marine

3  from the port to cold storage, the tuna's final destination, to be held there until a legitimate sale had

4  been arranged.  These "sales" thus occurred while the tuna was still in transit, and are therefore

5  covered under the Ocean Cargo Section of the Marine Policy.  Tri Marine suffered far more than €2

6  million from fraudulent dockside thefts of tuna that otherwise would have been transported by Tri

7  Marine Spain, S.L. to cold storage while awaiting a legitimate sale.

8      21.    Further, Tri Marine expended hundreds of thousands more Euros trying to recover its

9  lost property from Beitia and the companies he used to steal from Tri Marine Spain, S.L.  To date,

10  however, Tri Marine Spain, S.L. has recovered nothing from either Beitia, the companies he

11  improperly utilized, or coconspirators.  These additional mitigation losses are covered under the

12  Marine Policy as Sue & Labor costs.

13  **INDEMNITY INSURANCE'S FAILURE TO RESPOND TO TRI MARINE SPAIN, S.L.'S**

14  **CLAIM**

15      22.    Tri Marine's Chief Risk Officer, located in Los Angeles, provided extensive

16  documentation of its barratry losses to Indemnity Insurance, seeking coverage for thefts that Beitia

17  effected by diverting tuna from transportation to its final destination through fake sales to companies

18  he owned or directly or indirectly controlled.  Thereafter, Tri Marine's California insurance broker

19  pursued the claim with Indemnity Insurance, seeking coverage of the claim.  Tri Marine has complied

20  with all terms and conditions of the Marine Policy, except to the extent that its performance has been

21  or is excused or has been waived by Indemnity Insurance.

22      23.    Despite repeated requests over an extended period of months, Indemnity Insurance

23  failed to respond to Tri Marine's claim for barratry losses.  In the months that followed, Indemnity

24  Insurance did not ask even a single question of Tri Marine or its representatives.  As a result, Tri

25  Marine is informed and believes that an actual controversy exists as to the coverage for its losses under

26  Indemnity Insurance's broad coverage for barratry under the Cargo Coverage of its Marine Policy.

27

28

HETTRICK
LAW, P.C.

6

**PLAINTIFF TRI MARINE'S COMPLAINT FOR DAMAGES**

### FIRST CAUSE OF ACTION

#### (Declaratory Relief against Defendant Indemnity Insurance)

24.     Tri Marine realleges and incorporates herein by reference each allegation contained above.

25.     Indemnity Insurance has failed to accept or deny coverage for Tri Marine's barratry losses in a timely manner.  Despite repeated requests for coverage of the losses by Tri Marine's insurance broker, no acknowledgement of coverage has been made.  Indeed, no apparent investigation has been undertaken, as Indemnity Insurance has not asked a single question of Tri Marine or its representatives.

26.     As a result, Tri Marine is informed and believes, and on that basis alleges, that Indemnity Insurance disputes Tri Marine's contentions as alleged above.  Therefore, an actual and justiciable controversy exists between Tri Marine and Indemnity Insurance concerning the matters alleged herein.

27.     Tri Marine therefore seeks a judicial declaration as to Indemnity Insurance's duties and obligations, including its duty to cover Tri Marine under the Marine Policy for its barratry losses and the related Sue & Labor expenses, as follows:

(a)  confirming that Tri Marine's contentions, as stated above, are correct, and that Indemnity Insurance's failure to accept coverage for Tri Marine's losses is incorrect; and

(b)  confirming that Indemnity Insurance must pay Tri Marine the full amount of its barratry losses resulting from Beitia's diversion of Tri Marine tuna while still in transit, and Tri Marine's related Sue & Labor expenses.

28.     A declaration is necessary at this time in order that the parties' dispute can be resolved and that they can become aware of their respective rights and obligations.

### SECOND CAUSE OF ACTION

#### (Declaratory Relief against Does 1 through 10)

29.     Tri Marine realleges and incorporates herein by reference each allegation contained above.

30.    Tri Marine is informed and believes, and on that basis alleges, that Does 1 through 10 dispute Tri Marine's contentions as alleged above.  Therefore, an actual and justiciable controversy exists between Tri Marine and Does 1 through 10 concerning the matters alleged herein.

31.    Tri Marine therefore seeks a judicial declaration as to the duties and obligations of Does 1 through 10, including their duty to pay Tri Marine the full amount of its barratry and related Sue & Labor expenses.  A declaration is necessary at this time in order that the parties' dispute can be resolved and that they can become aware of their respective rights and obligations.

## PRAYER

WHEREFORE, Plaintiffs Tri Marine demand judgment against Defendant Indemnity Insurance as follows:

### ON THE FIRST CAUSE OF ACTION

1.    For a declaration confirming that (a) Tri Marine's contentions, as stated above, are correct, and that Indemnity Insurance's failure to accept coverage for Tri Marine's losses is incorrect; and (b) confirming that Indemnity Insurance must pay Tri Marine the full amount of its barratry and related Sue & Labor expenses;

### ON THE SECOND CAUSE OF ACTION

2.    For a declaration that Tri Marine's contentions as stated above are correct;

### ON ALL CAUSES OF ACTION

3.    For costs of suit incurred herein, and

4.    For such other further and/or different relief as may be just and proper.

DATED: May 9, 2013                    Respectfully submitted,

HETTRICK LAW, P.C.

By: _____
Clyde M. Hettrick, Esq.
For Plaintiffs TRI MARINE INTERNATIONAL, INC.; TRI MARINE INTERNATIONAL (PTE) LTD. and TRI MARINE SPAIN, S.L.

HETTRICK
LAW, P.C.

8

1

## DEMAND FOR JURY TRIAL

2

    Plaintiff Tri Marine hereby demands a trial by jury.

3

4

DATED: May 9, 2013

5

Respectfully submitted,

HETTRICK LAW, P.C.

6

7

By: _____

8

Clyde M. Hettrick, Esq.
For Plaintiff TRI MARINE INTERNATIONAL,
INC.; TRI MARINE INTERNATIONAL (PTE)
LTD. and TRI MARINE SPAIN, S.L.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HETTRICK
LAW, P.C.

PLAINTIFF TRI MARINE'S COMPLAINT FOR DAMAGES

# **EXHIBIT A**

# **EXHIBIT A**

MARINE POLICY 494680 (Re-write of 494680)

of the

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA**

SECTION I
OCEAN CARGO

**ASSURED**

1. Indemnity Insurance Company of North America, hereinafter referred to as the Company, in consideration of premiums to be paid at rates hereinafter stated, does insure, lost or not lost

   **Tri-Marine International, Inc. and/or Tri-Marine International (Pte) Ltd. and/or Tri-Oceanic Pte Ltd., Tri-Marine Europe SPA, Tri-Marine Spain SRL, Cape Fisheries Holdings LP, National Fisheries Developments Limited, Tri-Marine International SA de CV, Tri-Marine (FSM) Inc., Tri-Marine Fish Company LLC, Tri-Marine International SA, Tri-Oceanic Overseas Holdings LLC, Tri-Oceanic US Holdings LLC, Tri-Oceanic Overseas Holdings Ltd., Tri-Marine International SRL, Tri-Marine International Spain SRL, Renato Curto, an individual, and/or subsidiary companies or corporations, firms or organizations as may now exist or hereinafter be constituted for which the Assured has the responsibility of placing insurance and/or from whom they have instructions to insure.**

   (Hereinafter referred to as· The Assured).  For account of whom it may concern.

**MAILING ADDRESS**

Tri-Marine International (PTE) Ltd.            Copies to be sent to:
15 Fishery Port Road                          Tri-Marine International, Inc.
Singapore 619735                              10500 NE 8th Street #1888
                                              Bellevue WA 98004

**LOSS PAYABLE**

2. Loss, if any, payable to Assured or order.

**GOODS INSURED**

3. To attach upon all shipments of lawful goods and merchandise consisting principally of:

   A. **Lawful goods and/or merchandise** consisting principally of, but not limited to fresh, frozen and canned fish and seafood of every kind and description, and related merchandise incidental to the business of the Assured, properly packed for export, including all raw supplies, packaging goods and materials, and ship chandlery supplies. Business personal property, personal effects and household goods.  All other interests handled by the assured in the course of their business and/or in the care, custody and control of the Assured whether in transit or store or elsewhere anywhere in the world includ...g all loading and unloading risks, including prepaid freight and/or advanced freight and freight payable "vessel lost or not lost" under and/or o.. deck shipped by or consigned to the Assured and/or their agents and/or others, their own merchandise or that of others in which they may be interested. Also to cover all shipments made for the account of others which the Assured may agree or receive instructions to insure hereunder.

494680                                        1

**B. Liquids in Bulk**
Shipments of liquids in bulk are insured in accordance with the following clauses

1. Against all risks of physical loss or damage from any external cause, including loss or damage arising from contamination, however caused, irrespective of percentage.

2. This insurance is to pay claims for loss in weight and/or shortage and/or leakage and/or nondelivery and/or loss of contents, howsoever caused, but this company to be liable only for such loss in excess of one-half percent (1/2%) each tank separately insured, which one-half percent shall be deducted in all settlements.

3. This insurance is warranted free from any claims arising out of the inherent vice of the cargo or consequent upon delay, detention, loss of time and/or loss of market.

4. It is agreed that this insurance shall cover continuously from the time of leaving containers and/or shore tanks at initial point of shipment, during the entire course of transit (including hose lines, pipe lines, lighters, tank barges and/or tank cars and/or tank trucks) until safely delivered to containers and/or other vessels and/or shore tanks at destination.

5. It is expressly understood and agreed that all risks covered hereunder are accepted subject to satisfactory survey and loading certificate of approved surveyors.

6. Warranted by the Assured that ship's storage tanks be cleaned, tested and approved prior to loading of cargo and a certificate thereof be given by surveyors approved by this company.

   A careful check as to gauge, weights and temperature of cargo shall be taken by surveyor at port of loading and a certificate issued in accordance. It is understood and agreed tat the surveyor's actual determination of weight loaded into the vessel and/or craft shall be accepted as the amount shipped. The surveyor at port of loading shall obtain a certificate from a qualified chemist certifying that, prior to loading, the cargo insured hereu ..:der is free from any apparent indication of contamination. On completion of loading, samples are to be taken to dete..:mine the condition of the cargo.

7. In the event of cargo insured being intended for loading or discharge into tank barges, lighters or tank cars for conveyance to or from shore tanks, warranted by the Assured that prior to loading into such conveyance, a certificate that same has been approved shall be obtained from a surveyor approved by this Company.

8. In the event of contamination, a test or tests shall be made by approved chemists, and their reports shall be the basis for determining the measure of damage. Provided the damage be claimable under this policy, this Company shall be liable for the actual cost of reconditioning (including all expenses incident thereto, such as transportation, labor, insurance and storage), loss in weight resulting from reconditioning, and depreciation in quality arising from the contamination, less expenses which would have been incurred had there been no loss.

9. Should the surveyor issue a certificate stating loss has occurred, the amount of loss shall be determined by a comparison of the survey provided for in Paragraph 6 above, and the report of the surveyor as provided for in Paragraph 8 above. In case of total loss, the loss to be adjusted on the basis of shipped weight, less allowances, if any.

494680

2

10. All surveyors' fees to be at the expense of the Assured, except that in the event of a loss, this Company shall be liable for any survey fees or costs necessary to determine the amount of the claim.

11. In the event of non-compliance with any of the warranties and provisions above, the following insuring conditions shall apply to the shipment in question:

Against all risks of physical loss or damage from any external cause, excluding claims for shortage, leakage and/or contamination unless caused by or arising out of:

A. fire or explosion, howsoever or wheresoever occurring;
B. the vessel or craft being stranded, sunk, burnt or in collision or in contact with any substance or thing (ice included) other than water;
C. a forced discharge of cargo;

PROVIDED, however, that notwithstanding the foregoing, this company shall be liable for contamination resulting from heavy weather and loss of liquid insured from connecting pipe lines, flexible or otherwise, in loading, transhipment or discharge.

Claims are to be paid irrespective of percentage, except that claims for shortage are subject to a deduction of one-half percent (1/2%) of each tank separately insured.

## INSURABLE INTEREST

4. To cover all lawful shipments made by or to the Assured for their own account as Principals or as Agents for others and in which they have an insurable interest; or for the account of others from whom written instructions to insure have been received prior to any known or reported loss, damage, or accident, and prior to sailing of the vessel.

## VALUATION

5. Goods in Transit and Goods in Storage

For Goods Sold:
a. Insured shipments shall be valued at Assured's sales (selling) price.
b. Shipments to and from Italy only and/or for storage in Italy shall be valued at Assured's sales (selling) price plus 10%.

For Goods Not Sold (includes inter-company sales; also applies to Italy shipments/storage):
a. Insured shipments and/or goods in storage shall be valued at Assured's purchase price (including all charges in the invoice), plus cost of insurance, plus any prepaid or advanced or guaranteed freight not included in the invoice, plus 15% of the sum of the foregoing items.

Bunker Fuel
Bunker Fuel shall be valued at Assured's purchase price. Foreign currency to be converted into dollars at banker's sight rate of exchange applicable at date of loss to each invoice and/or credit and/or draft; unless superseding basis of valuation appears hereafter.

USFDA Rejection
USFDA Rejection valuation shall be CIF plus 20%.

494680                                    3

Business Personal Property
Business Personal Property shall be valued at Replacement Cost, of like kind and quality.

Household Goods and Personal Effects
Household Goods and Personal Effects shall be valued at Actual Cash Value.

## ATTACHMENT & TERMINATION

6.  To attach on each shipment made on and after **January 1, 2008** and to remain in force continuously thereafter until cancelled by either party giving the other 60 days written notice; such cancellation, however, shall not affect any transit risk on which this insurance has attached prior to the effective date of said cancellation. Notwithstanding the above, coverage provided hereunder on any risks insured on a time basis, or insured for coverage at any location, shall terminate as of the effective date of the cancellation.

    Attachment begins at the transfer point from the time the goods become the Assured's risk or the Assured assumes risk and continues whilst undergoing processing and/or storage and/or consolidation or until delivery to the final destination.

## GEOGRAPHICAL LIMITS

7.  From ports and/or places in the world to ports and/or places in the world directly or via ports and/or places in any order, including the risk of transshipment by land, air or water, including while in storage worldwide ashore or afloat.

    It is understood and agreed that the policy shall not apply to shipments to or from countries contrary to the laws of the United States of America or any subdivision thereof, or presidential decrees, or any other United States of America authority.

    The insurance attaches from the time the goods leave the warehouse at the place named in the certificate, special policy, or declaration for the commencement of transit and continues during the ordinary course of transit, including customary transshipment, if any, until the goods are delivered to the final warehouse at the destination named in the certificate, special policy, or declaration, or a substituted destination per description in the policy. Also covers goods prior to their arrival at the final destination while temporarily detained during the ordinary course of transit for purposes of consolidation, deconsolidation, containerization, decontainerization and forwarding, anywhere in the world whether prior to loading or after discharge from the overseas vessel for a period not exceeding thirty (30) days after arrival at the consolidation point. Also covers goods held in storage at locations specified in the policy.

## ECONOMIC SANCTIONS AND EMBARGO PROGRAMS OF THE UNITED STATES

8.  This policy excludes loss otherwise payable to an individual, organization, or authority that is the subject of any embargo or other trade sanction imposed by the United States Government; or that arises out of any trade in, or shipment of, any goods or merchandise prohibited by such embargo or sanction, whether or not deemed lawful under the laws of another nation.

494680                                    4

**CONVEYANCES**

9.  A.  Per Iron or Steel Steamers and/or vessels and connecting conveyances by land or otherwise, but excluding sailing vessels with or without auxiliary power except as connecting conveyances.
    B.  By Aircraft and connecting conveyances.
    C.  By first class or registered Mail, ordinary or registered or government insured parcel post, by air or otherwise.
    D.  By Land conveyance in accordance with a through bill of lading.

**CRAFT CLAUSE (February 1949)**

10. Including transit by craft and/or lighter to and from the vessel.  Each craft and/or Lighter to be deemed a separate insurance.  The Assured will not be prejudiced by any agreement exempting lightermen from liability.

**LIMIT OF LIABILITY**

11. This company shall not be liable for more than:

|     |        |     |
|-----|--------|-----|
| (a) | $10,000,000 | in respect of goods on any one vessel or connecting conveyance, or in any one place at any one time, NOR in the following cases for more than: |
| (b) | $ 1,000,000 | in respect of goods shipped ON DECK in any one vessel subject to ON DECK bills of lading; |
| (c) | $ 1,000,000 | in respect of goods shipped by any one aircraft or connecting conveyances; |
| (d) | $ 100,000 | in respect of goods in any one approved metal barge or by any one tow (other than as a connecting conveyance); |
| (e) | $ 100,000 | in respect of goods in any one package transported by mail or parcel post; |
| (f) | $ 750,000<br>$ 1,500,000 | in respect to bunker fuel in any one conveyance; except MV Frio Nikolyev |
| (g) | $ 50,000 | in respect to destruction of cargo in any one conveyance; |
| (h) | Per Schedule | in respect to goods in any named warehouse; |
| (i) | $ 1,000,000 | in respect to goods in any one unnamed warehouse; |
| (j) | $ 1,000,000 | in respect to goods transported via inland transit in any one conveyance; |
| (k) | $ 250,000 | in respect to Business Personal Property, Household Goods and Personal Effects. |

If the total value at risk exceeds the applicable limit of liability provided by this Policy, the Assured shall nevertheless report to this Company the full amount at risk and shall pay full premium thereon.  The acceptance by this Company of such reports and premium shall not alter or increase the limits of this Company's liability, but this Company shall be liable for the full amount of loss up to but not exceeding the applicable limit of liability.

**ACCUMULATION CLAUSE**

12. Should there be an accumulation of interests beyond the limits expressed in this Policy by reason of any interruption of transit and/or occurrence beyond the control of the Assured, or by reason of any casualty at a transshipping point and/or on any connecting conveyance, this policy shall attach for the full amount at risk, but in no event for more than twice the Policy limit as expressed in the

Limit of Liability Clause, provided notice be given this company as soon as practicable upon becoming known to the Assured.

## PERILS CLAUSE

13. Touching the adventures and perils which this company is contented to bear and takes upon itself, they are of the seas, fires, jettisons, assailing thieves, barratry of the masters and mariners, and all other like perils, losses and misfortunes (illicit or contraband trade excepted in all cases), that have or shall come to the hurt, detriment, or damage of the said goods and merchandise, or any part thereof, as may be otherwise provided for herein or endorsed hereon.

## AVERAGE TERMS

14. Warranted free from Particular Average unless the vessel or craft be stranded, sunk, or burnt, but notwithstanding this warranty, these Assurers are to pay any loss of or damage to the interest of the Assured which may reasonably be attributed to fire, collision or contact of the vessel and/or conveyance with any external substance (ice included) other than water, or to discharge of cargo at port of distress. Also to include the risk of jettison and washing overboard irrespective of percentage. The foregoing warranty, however, shall not apply where more limited or broader terms of Average are made applicable by this policy.

Subject to the Paramount Warranties of this Policy the terms of Average shall be as follows:

A.        (1)  Shipments ON DECK AND SUBJECT TO AN "ON DECK" BILL OF LADING: -(which must be so declared to this Company) are insured; F.P.A. (Free of Particular Average) including jettison and/or washing overboard.

(2)  Except while subject to an "ON DECK" BILL OF LADING

**Shipments of seafood of every kind and description, packaging supplies and related lawful goods and/or merchandise are insured:**

Against all risks of physical loss or damage from any external cause, including loss due to deterioration or spoilage as a result of improper temperature, irrespective of percentage, but excluding nevertheless

i.   The risks of war, strikes, riots, seizure, detention and other risks excluded by the Nuclear Exclusion Clause, the FC&S (Free of Capture and Seizure) Warranty and the SR&CC (Strikes, Riots & Civil Commotions) Warranty in this Policy, excepting to the extent that such risks are specifically covered by endorsement.
ii.  Bone taint and/or improper dressing;
iii. Claims for or consequent upon detainment, delay, loss of time or loss of market, whether arising from a peril insured against or otherwise.

This insurance is extended, notwithstanding the FC&S Warranty, and subject to all other insuring terms, conditions and warranties set forth elsewhere in this policy, to cover physical loss, damage or deterioration from any external cause, including delay, directly arising out of the

494680                                                6

performance of inspection duties and/or services by customs agents or other duly constituted governmental agencies.

**(3) Bunker Fuel:**

Bunker fuel is defined as marine diesel oil (MDO), intermediate fuel oil (IFO), and any other petroleum derivative or distillate used for the propulsion of the vessel aboard which it is carried.  It is insured:

> Warranted Free from particular Average unless the loss is as a direct consequence of the vessel or craft being stranded, sunk or burnt, but notwithstanding this warranty, these underwriters are to pay any loss or damage to the interest insured which may reasonably be attributed to fire, collision or contact of the vessel or craft with any external substance (ice included) other than water.

B.    Goods and/or merchandise shipped on board the ocean vessel in containers (Intermodal, Over the Road or similar type) are insured subject to the provisions of this Policy applying to Under Deck shipments, even though such containers be stowed On Deck, provided such goods are subject to an Under Deck or an optional Under Deck/On Deck Bill of Lading.

C.    Shipment by AIR, MAIL or EXPRESS:

(1) To cover against all risks of physical loss or damage from any external cause irrespective of percentage, but excluding those risks excluded by the Paramount Warranties of this Policy.

> ii.  Shipments made by AIR FREIGHT, AIR MAIL, or AIR EXPRESS are warranted free from claim for loss or damage due to cold or changes in atmospheric pressure.
>
> iii.  Warranted not less than 0% of the invoice value of the goods insured be declared to the airlines and connecting conveyances and so noted on all bills of lading.
>
> iv.  Warranted by the Assured that all packages mailed and insured under this Policy will be mailed in conformance with Parcel Post or Foreign Mail Regulations existing at the time of shipment in the country of exportation.

It is hereby understood and agreed that the Average Terms Clause, Section titled "Shipments by AIR, MAIL or EXPRESS" shall include the following:

Wherever the words "ship", "vessel", "seaworthiness", "ship or vessel owner" appear in this Policy, they are deemed to include also the words "aircraft", "airworthiness", "aircraft owner".

D.    DEDUCTIBLE:  Each claim for loss or damage occurring hereunder shall be adjusted separately and from the amount of each such adjusted claim the sum of **$20,000** shall be deducted per occurrence with respect to bulk shipments of fish, seafood and related goods only.  With respect to containerized shipments of fish, seafood and related goods only, the sum of **$5,000** shall be deducted per occurrence.  The deductible shall not apply to losses recoverable under the FPA, Explosion, and Shore Perils Clauses of this Policy, or to General Average contributions, Salvage charges, or Sue and Labor charges.

7

With respect to Ship Chandlery Supplies only the deductible shall be **$2,500** per occurrence.

With respect to Business Personal Property, Personal Effects and Household Goods only, the deductible shall be **$2,500** per occurrence.

## WAREHOUSE TO WAREHOUSE

15. This insurance attaches from the time the goods insured leave the Warehouse and/or Store, at the place named in the Policy for the commencement of the transit, and continue during the ordinary course of transit, including customary transshipment, if any, until the goods insured are discharged overside from the overseas vessel at the final port.

    Thereafter the insurance continues while goods insured are in transit and/or awaiting transit until delivered to the final warehouse at the destination named in the Policy or until the expiry of 15 days (or 30 days if the destination to which the goods are insured is outside the limits of the port), whichever occurs first. The time limits referred to are to be calculated from midnight of the day on which the discharge overside of the goods insured from the overseas vessel is completed. The goods insured are held covered at a premium to be arranged in the event of transshipment, if any, other than as above and/or in the event of delay in excess of the stated time limits arising from circumstances beyond the control of the Assured.

    Note:    It is necessary for the Assured to give prompt notice to these Assurers when they become aware of an event for which they are "held covered" under this Policy and the right to such coverage is dependent on compliance with this obligation.

## MARINE EXTENSION CLAUSE (May 1952)

16. This policy is extended to cover all shipments which become at risk hereunder in accordance with the following clauses, which supercede and override Clause 15 (Warehouse to Warehouse) wherever they may be contradictory or at a variance.

    (1)    This insurance attaches from the time the goods leave the warehouse at the place named in the policy for the commencement of the transit and continues until the goods are delivered to the final warehouse at the original destination named in the policy, or a substituted destination as provided in Clause III hereunder.

    (2)    This insurance to cover the goods during:
        (i)     deviation, delay, forced discharge, re-shipment and transshipment.
        (ii)    Any other variation of the adventure arising from the exercise of a liberty granted to the shipowner or charterer under the contract of affreightment.

    (3)    In the event of exercise of any liberty granted to the shipowner or charterer under the contract of affreightment whereby such contract is terminated at a port or place other than the originally insured destination, the insurance continues until the goods are sold and delivered at such port or place; or if the goods be not sold but are forwarded to the originally insured destination or to any other destination this insurance continues until the goods have arrived at final warehouse as provided in Clause I.

494680                                         8

(4)  If while this insurance is still in force and before the expiry of fifteen (15) days from midnight of the day on which the discharge is completed, the goods are resold (not being a sale within the terms of Clause III) and are to be forwarded to a destination other than that covered by this insurance, the goods are covered hereunder while deposited at such port of discharge until again in transit or until the expiry of the aforementioned fifteen (15) days, whichever shall occur first. If a sale is effected after the expiry of the aforementioned fifteen (15) days, while this insurance is still in force, the protection afforded hereunder shall cease as form the time of the sale.

(5)  Held covered at a premium to be arranged in case of change of voyage or of any omission or error in the description of the interest, vessel or voyage.

(6)  This insurance shall in no case be deemed to cover loss, damage or expense proximately caused by delay or inherit vice or nature of the subject matter insured.

(7)  It is a condition of this insurance that there shall be no interruption or suspension of transit unless due to circumstances beyond the control of the Assured.

Nothing in the foregoing shall be construed as overruling the F.C.& S. Clause or as extending this insurance to cover any risk of war or consequences of hostilities.

NOTE -  It is necessary for the Assured to give prompt notice to these Assurers when they become aware of an event for which they are "held covered" under this Policy and the right to such coverage is dependent on compliance with the obligation.

**SOUTH AMERICA CLAUSE**

17. With respect to all shipments to South America and notwithstanding anything Contained elsewhere herein to the contrary (particularly the Marine Extension Clauses) the insurance provided hereunder shall continue to cover for sixty (60) days (ninety (90) days in shipments via the Magdalena River) after completion of discharge of the overseas vessel at port of destination or until the goods are delivered to the final warehouse at destination, whichever may first occur, and shall then terminate.

The time limit referred to above to be reckoned from midnight of the day on which the discharge of the overseas vessel is completed.

**PARAMOUNT WARRANTIES (April 1980)**

18. THE FOLLOWING WARRANTIES SHALL BE PARAMOUNT AND SHALL NOT BE MODIFIED OR SUPERCEDED BY ANY OTHER PROVISION INCLUDED HEREIN OR STAMPED OR ENDORSED HEREON UNLESS SUCH OTHER PROVISION REFERS SPECIFICALLY TO THE RISKS EXCLUDED BY THESE WARRANTIES AND EXPRESSLY ASSUMES THE SAID RISKS:

F.C. & S. (a) NOTWITHSTANDING ANYTHING HEREIN CONTAINED TO THE CONTRARY THIS INSURANCE 'S WARRANTED FREE FROM:

(I)  capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise;

494680

9

(ii)     all loss damage or expense, whether in time of peace or war caused by (i) any weapon of war employing automatic or nuclear fission and/or fusion or other reaction or radioactive force or matter or (ii) any mine or torpedo;

(iii)    all consequences of hostilities or warlike operations (whether there be a declaration of war or not), but this warranty shall not exclude collision or contact with aircraft, or with rockets or similar missiles (other than weapons of war) or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion, unless caused directly (and independently of the nature of the voyage or service which the vessel is concerned or, in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purpose of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power;

(iv)    the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom; or from the consequences of the imposition of martial law, military or usurped power; or piracy.

**S.R. & C.C. (b)** Warranted free from loss, damage or expense caused by or resulting from:

(i)     strikes, lockouts, labor disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrences or disorders;

(ii)    vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terrorist or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional.

**NUCLEAR EXCLUSION CLAUSE (December 1990)**

(c ) THE FOLLOWING CLAUSE SHALL BE CONSIDERED PARAMOUNT AND SHALL NOT BE SUPERSEDED BY ANY OTHER PROVISION STAMPED OR ENDORSED HEREON:

Notwithstanding anything to the contrary herein, it is hereby understood and agreed that this policy shall not apply to any loss, damage, liability or expense due to or arising out of, whether directly or indirectly, nuclear reaction, radiation or radioactive contamination, regardless of how it was caused. However, subject to all provisions of this policy, if this policy insures against fire, then direct physical damage to the property insured within the United States, or any territory of the United States or Puerto Rico by fire directly caused by the above excluded perils, is insured, provided that the nuclear reaction, radiation or radioactive contamination was not caused, whether directly or indirectly, by way of the perils excluded by the F.C. & S. Warranty of this policy.

Nothing in this endorsement shall be construed to cover any loss, damage, liability or expense caused by nuclear reaction, radiation or radioactive contamination arising directly or indirectly from the fire mentioned above.

**SUE & LABOR**

19. In case of any loss or misfortune, it shall be lawful and necessary for the Assured, his or their factors, servants and assignee, to sue, labor and travel for, in and about the defense, safeguard and recovery of the goods and merchandise, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or this Company, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of abandonment; to the charges whereof, this Company will contribute in proportion to the sum herein insured.

**BOTH TO BLAME CLAUSE (February 1949)**

20. Where goods are shipped under a Bill of Lading containing the so-called "Both To Blame Collision" Clause, these Assurers agree as to all losses covered by this insurance to indemnify the Assured for this Policy's proportion of any amount (not exceeding the amount insured) which the Assured may be legally bound to pay to the shipowners under such clause. In the event that such liability is asserted the Assured agrees to notify these Assurers who shall have the right at their own cost and expense to defend the Assured against such claim.

**INCHMAREE CLAUSE (February 1949)**

21. This insurance is also specifically to cover any loss of or damage to the interest insured hereunder, through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation and/or management of the vessel by the master, mariners, mates, engineers or pilots.

**EXPLOSION CLAUSE (February 1949)**

22. Including the risk of explosion, howsoever or wheresoever occurring during the currency of this insurance, unless excluded by Paramount warranties set forth in this policy.

**MACHINERY CLAUSE (February 1949)**

23. When the property insured under this policy includes a machine consisting, when complete for sale or use, of several parts then in case of loss or damage covered by this insurance to any part of such machine, these Assurers shall be liable only for the proportion of the insured value of the part lost or damaged, or at the Assureds option for the cost and expense, including labor and forwarding charges, of replacing or repairing the lost or damaged part; but in no event shall these Assurers be liable for more than the insured value of the complete machine.

**FUMIGATION CLAUSE**

24. In the event of the vessel being fumigated and direct loss or damage to Assureds merchandise results therefrom, this Company agrees to indemnify the Assured for such loss or damage, and the Assured agrees to subrogate to this Company any recourse that they may have for recovery of such loss or damage from others.

494680

**SHORE CLAUSE (February 1949)**

25. Where this insurance by its terms covers while on docks, wharves, or elsewhere on shore, and/or during land transportation, it shall include the risks of collision, derailment, overturning or other accident to the conveyance, fire, lightning, sprinkler leakage, cyclones, hurricanes, earthquakes, floods (meaning the rising of navigable waters), and/or collapse or subsidence of docks or wharves, even though the insurance be otherwise F.P.A.

**WAREHOUSING & FORWARDING, PACKAGES LOST IN LOADING ETC. (February 1949)**

26. Notwithstanding any average warranty contained herein, this Company agrees to pay any landing, warehousing, forwarding and special charges for which this policy in the absence of such warranty would be liable. Also to pay the insured value of any package or packages which may be totally lost in loading, transshipment or discharge.

This insurance will also pay reasonable landing, warehousing, forwarding and special charges as a result of the insolvency or financial default of the owners, charterers, managers or operators of the vessel.

**DELIBERATE DAMAGE – POLLUTION HAZARD (July 1, 1974)**

27. This insurance also covers, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under the policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

This clause shall not increase the Limits of Liability provided for elsewhere herein.

**IMPORT DUTY**

28. This insurance also covers, subject to policy terms of  average, the risk of partial loss by reason of perils insured against on the duties imposed on goods imported into the United States or Canada and insured hereunder, it being understood and agreed, however, that when the risk upon the goods continues beyond the time of landing from the overseas vessel, the increased value, consequent upon the payment of such duties, shall attach as an additional insurance upon the goods from the time such duty is paid or becomes due, to the extent of the amounts thereof actually paid or payable.

Any limit of liability expressed in the policy shall be applied separately to such increased value.

The Assured warrants that on all risks insured hereunder a separate amount shall be reported sufficient to cover the said duty, upon which the rate of premium shall be a named a percentage of the merchandise rate.

The Assured will, in all cases, use reasonable efforts to obtain abatement or refund of duties paid or reclaimed in respect of goods lost, damaged or destroyed.  It is further agreed that the Assured shall, when this Company so elects, surrender the merchandise to the Customs authorities and recover duties

494680

12

thereon as provided by law, in which event claim under this policy shall be only for a total loss of the merchandise so surrendered and expenses.

This insurance on duty and/or increased value shall terminate at the end of the import movement covered under this policy (including the Warehouse to Warehouse and Marine Extension Clauses incorporated herein), but nothing contained in these clauses shall alter or affect any coverage granted elsewhere in the policy during the shortage or transit subsequent thereto.

## CONTINGENT COVERAGE

29. This policy is extended to cover shipments sold on terms whereby the Assured is not obliged to furnish ocean marine insurance but only as follows:

(1) This Company will guarantee to the Assured the prompt collection of any loss or damage covered by the terms of this policy to merchandise shipped, but for which payment has been refused or withheld by the consignee. This Company will advance to a Assured the amount of the loss as a loan without interest, which shall be repayable upon remittance of the purchase price by the consignee or to the extent of any recovery received by the Assured from insurance effected by the consignee or otherwise.

(2) This coverage is a special agreement ᴗetween the Assured and this Company and the Assured agrees that no knowledge of this coverage shall be made available to ᴗuyer or consignee in any invoice, Certificate of Insurance, or otherwise.

(3) As soon as is practicable the Assured shall report to the Company (in accordance with the Valuation Clause contained herein) shipments covered by this endorsement and pay premium thereon at the rate of **Included in Deposit** at the applicable rates.

## FOB/FAS

30. It is hereby understood and agreed that this policy is extended to cover, subject to its terms and conditions, goods and/or merchandise sold on F.O.B., F.A.S., or similar terms whereby marine insurance is effected by the buyer. This insurance attaches from commencement of transit at the Assured's plant or other place of shipment and terminates when the Assured's interest ceases but not later than the time the goods and/or merchandise are laden on board the overseas vessel, or at time of transfer of title, whichever shall first occur.

This insurance includes any lighterage, and for not exceeding thirty days while held at terminals, on wharves, piers, docks, quays, storage barges, boats and lighters while awaiting loading on board the overseas vessel or held covered at an additional premium if required, provided prompt notice is given the Company.

This insurance, however, is not to attach as respects any goods and/or merchandise if, at the time of loss or damage, there is any other insurance which would attach if the coverage provided under the endorsement had not been effected, except that this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted. Nevertheless, any direct loss sustained by the Assured otherwise recoverable hereunder shall be advanced as a loan without interest repayable out of any recovery the Assured may receive out of such other insurance.

**CONSOLIDATION AND CONTAINERIZATION CLAUSE**

31. It is hereby understood and agreed that notwithstanding anything contained elsewhere to the contrary (particularly the Warehouse to Warehouse and Marine Extension Clauses), and subject to the Limit of Liability herein, the insurance provided hereunder shall cover while on premises of freight forwarders, consolidators, truckers, warehousemen or others for the purpose of consolidation, deconsolidation, containerization, decontainerization, distribution or redistribution anywhere in the U.S. prior to loading on overseas vessel or at any transshipment point for a period not exceeding ten (10) days after the arrival at such premises. Held covered in the event of a delay in excess of the above time limit at a premium **Included in the Deposit**. The Assured agrees to report all held "covered" exposures and pay premium thereon at this Company's rate.

**RETURN SHIPMENTS CLAUSE**

32. In the event of refusal or inability of the Assured or other consignee to accept delivery of goods or merchandise insured hereunder, this insurance is extended to cover such shipments, subject to the original insured value and insured conditions, during delay and/or return or until otherwise disposed of. The Assured agrees to report the facts of such situations as soon as practicable after they have knowledge of them and pay premium, if required at rates to be agreed.

**FRAUDULENT BILL OF LADING CLAUSE**

33. This policy covers physical loss or damage to merchandise insured under this Policy occasioned through the acceptance by the Assured and/or their agents or shippers of fraudulent Bills of Lading and/or shipping receipts and/or messenger receipt.

   This policy also covers loss or damage caused by the utilization of legitimate bills of lading and/or other shipping documents without the authorization and/or consent of the Assured or its agents.

   In no event, however, does this Policy cover loss or damage arising from the shipper's fraud or misstatement.

**CONCEALED DAMAGE CLAUSE**

34. Should delay occur in the opening of any package after the arrival of goods at the final destination, or should the goods be placed in bond or warehouse or any other place of deposit by the Assured or ultimate consignee prior to unpacking; if loss or damage is found when such packages are eventually opened, such loss shall be paid or adjusted by the Underwriters in the same manner as though the packages had been opened immediately upon their arrival, provided that:

   1. It is no later than 30 days after arrival at final destination and which can be reasonably shown to have occurred prior to delivery into such places of deposit.

   2. Such loss or damage is recoverable under the terms of the policy.

   Packages showing external damage are to be opened immediately upon arrival.

**DEBRIS REMOVAL CLAUSE**

35. This policy covers expenses incurred for the removal of all debris of the property covered hereunder which may be occasioned by loss caused by any of the perils insured except that the Assurers shall not be liable under this clause for more than $250,000 or 25% of the insured value of the Merchandise, whichever is greater.  This extension, however, shall not cover any liability or expense for which the Assured may be liable under any pollution statute.

**SHORTAGE FROM INTERMODAL CONTAINERS CLAUSE**

36. This Policy is also to pay shortage of contents from intermodal containers, meaning; (a) the difference between the number of packages as per shipper's and/or supplier's invoice and/or packing list which were loaded and (b) the count of packages removed taken by the Assured and/or their agent at time of container emptying, however, wherever and whenever occurring but excluding liability for any such loss which can be attributed to the forcible entry of the container which occurred following its delivery to store, warehouse or factory of the consignee at the destination to which the insured goods are insured unless covered elsewhere in this Policy.

It is understood and agreed that this is a private agreement between this Company and the Assured which the Assured will not mention in certificates of insurance, sales contracts, or otherwise.

**CONTAINER DUMURRAGE CHARGES CLAUSE**

37. This Policy shall cover demurrage charges and/or penalties assessed against, and paid by the Assured for late return of containers when said containers are retained by the Assured at the instruction of the Company for inspection by the Company's Surveyor in the investigation of loss or damage recoverable under this Policy.  The time period for which the Company shall be liable for said charges and/or penalties shall begin at the time the Company instructs the Assured to retain the containers for inspection and shall cease at the time the Company's Surveyor instructs the Assured to return the containers.

It is understood and agreed that this is a private agreement between this Company and the Assured which the Assured will not mention in certificates of insurance, sales contracts, or otherwise.

**CHANGE OF DESTINATION CLAUSE**

38. In case of change of destination, as set forth in the original report of insurance, the goods insured are held covered at a premium, if any, to be agreed upon, the Assured agreeing to report promptly all such changes to the Assurer.

**CONTROL OF DAMAGED GOODS CLAUSE**

39. It is agreed that in the event of damage to goods insured under this policy, the Assured shall retain control of all damaged goods.  The Assured, however, agrees whenever practicable to recondition and sell such goods after removal of all brands and trademarks, the Company being entitled to the proceeds from such sale.

494680

15

It is further agreed the Company will be consulted and allowed to inspect any damaged goods prior to any disposal or sales of such property.

Where it is agreed by both the Assured and the Company that the disposal or sale of such damaged goods is detrimental to the Assured's interest (or which the Assured will be unable to sell or dispose of under their agreement with any trade associations) such damage will be treated as a constructive total loss, and the goods shall be destroyed in the presence of a representative of the Company.

## EXPEDITING EXPENSE CLAUSE

40. Where, in the event of loss or damage recoverable hereunder, the Assured considers it necessary to forward replacements and/or replacement parts by airfreight or other means, this Company will pay the expediting cost in addition to the underlying claim.

## DESTRUCTION OF CARGO ORDERED BY GOVERNMENTAL AUTHORITY

41. In consideration of the premium already charged, this policy is extended to cover the Assured's expense of destroying insured cargo when required by a duly authorized governmental authority, subject to a maximum limit of $10,000. any one occurrence.

## GENERAL AVERAGE (February 1949)

42. General Average and Salvage and Special Charges payable according to United States law and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

These Assurers agree to pay General Average, Salvage and Special Charges in full, irrespective of insured and contributory values, but in no event for more than the limits of liability found elsewhere in this policy.

## CONTRIBUTORY CLAUSE

43. This Company shall be liable for only such proportion of General Average and Salvage Charges as the amount declared for insurance purposes (less Particular Average for which this Company is liable hereunder, if any) bears to the Contributory Value of the property hereby insured, but in no event to exceed the applicable Limit of Liability.

## BILL OF LADING CLAUSE (February 1949)

44. The Assureds are not to be prejudiced by the presence of the negligence clause and/or latent defect clause in the Bills of Lading and/or Charter Party. The seaworthiness of the vessel as between the Assured and this Company is hereby admitted and the wrongful act or misconduct of the shipowner or his servants causing a loss is not to defeat the recovery by an innocent Assured if the loss in the absence of such wrongful act or misconduct would have been a loss recoverable on the policy. With leave to sail with or without pilots, and to tow and assist vessels or crafts in all situations, and to be towed.

16

**PAYMENT OF LOSS**

45. In the event of loss which may give rise to a claim under this policy, prompt notice must be given to this Company. In case of loss, such loss to be paid in thirty days after proof of loss, proof of interest, and adjustment, thereof (the amount of the premium, if unpaid, and all sums due to the Company from the Assured when such loss becomes due being first deducted, and all sums coming due being first paid or secured to the satisfaction of this Company). Proof of loss to be authenticated by the Agent of this Company, if there be one, where such proofs are taken; otherwise by a Correspondent of the American Institute of Marine Underwriters, if there be one, where such proofs are taken, but if neither is represented then by some other recognized Insurance Authority.

**PARTIAL LOSS**

46. In case of partial loss by perils insured against, the proportion of loss shall be determined by a separation of the damaged portion of the insured property from the sound and by an agreed estimate (by survey) of the percentage of damage of such portion; or if such agreement is not practicable, then by public sale of such damaged portion for the account of the owner of the property, and by comparison of the amount so realized with the sound market value, but in no event to exceed the applicable Limit of Liability.

**CONSTRUCTIVE TOTAL LOSS (February 1949)**

47. No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value when the expenditure had been incurred.

**LABELS CLAUSE (February 1949)**

48. In case of damage affecting labels, capsules or wrappers, this Company, if liable therefore under the terms of this policy, shall not be liable for more than an amount sufficient to pay the cost of new labels, capsules or wrappers and the cost of reconditioning the goods, but in no event shall this Company be liable for more than the insured value of the damaged merchandise.

**BRAND CLAUSE**

49. In case of damage to property bearing a brand, trademark or label, the sale of which in any way carries or implies a guarantee of the supplier or the Assured, the salvage value of such damaged property shall be determined after the removal in the customary manner of all brands, trademarks or labels. The cost of such removal to be borne by this Company.

**OTHER INSURANCE CLAUSE**

50. A.   If an interest insured hereunder is covered by other insurance which Attached prior to the coverage provided by this policy, then this Company shall be liable only for the amount in excess of such prior insurance; the Assured to receive return premium charged hereunder equivalent to the cost of such prior insurance at the rate of this Company.

494680                                        17

B.   If an interest insured hereunder is covered by other insurance which attached subsequent to the coverage provided by this policy then this Company shall nevertheless pay to the full extent of liability under this insurance without right to claim contribution from said subsequent insurance.

C.   Other insurance upon the property of same attaching date as the coverage provided by this policy shall be deemed simultaneous and this Company shall be liable only for a ratable contribution to the loss or damage as the amount insured hereunder bears to the aggregate of such simultaneous insurance, the Assured to receive return premium proportionate to such reduction in liability.

## MISREPRESENTATION AND FRAUD

51.  This Policy shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

## CARRIER CLAUSE (February 1949)

52.  Warranted that this insurance shall not inure, directly or indirectly, to the benefit of any carrier or bailee.

## ASSIGNMENT & IMPAIRMENT OF RECOVERY

53.  Warranted by the Assured that any assignment of this policy or insurable interest therein or subrogation rights hereunder to any party, without consent of this Company, shall void the insurance so affected. It is further warranted that this Company shall not be bound to pay any loss which, by agreement or act of the Assured, prior or subsequent hereto, the right of recovery of the Assured for loss of or damage to any property insured hereunder, against any Carrier or Bailee, is released, impaired or lost.

Notwithstanding the forgoing and without prejudice to this insurance, the Assured may accept from carriers only such bill of lading, receipts or contracts of transportation containing a release or limitation of liability as to the value of the goods as are customarily issued by such carriers.

Further, in the event of loss or damage to property covered hereunder the Assured shall immediately make claim in writing against the carriers, bailees, or others involved.

## MULTIPLE RECOVERY

54.  No loss shall be paid hereunder if the Assured has collected the same from others.

## DECLARATION OF RISK

55.  Authority is hereby given the Assured and/or their duly authorized representatives to issue special marine policies and/or endorsements thereto on any risks applying hereunder. Such special marine policies and endorsements are to be issued in accordance with the terms and conditions of this insurance

494680

18

and are not to be valid unless countersigned by a duly authorized representative of the Assured.

When the Company supplies copies of Special Policies or Certificates of Insurance of this Company to the Assured, such action authorizes the Assured to utilize such Special Policies or Certificates of Insurance to provide evidence of insurance to third parties, subject to the following restrictions:

a) Special Policies or Certificates of Insurance may be sued only in connection with shipments to which this Open Cargo Policy attaches.

b) Terms, conditions and values entered on the Special Policies or Certificates of Insurance must conform to Open Cargo Policy terms applicable to the shipment for which the Special Policies or Certificates of Insurance are used unless the Company's written agreement to other terms is obtained.

c) Copies of all Special Policies or Certificates of Insurance used by the Assured must be sent to the Company in accordance with the reporting provisions of this Policy.

d) In the event Special Policies or Certificates of Insurance are spoiled, voided, or this Policy is cancelled, the original and duplicate certificates are to be returned promptly to the Company.

By using Special Policies or Certificates of Insurance the Assured agrees to reimburse the Company if, by reason of any omission or insertions made by the Assured upon such Special Policies or Certificates of Insurance, the Company is obliged to pay a claim not covered by this Open Cargo Policy or an amount in excess of what this Open Cargo Policy undertakes to pay.

In the event special marine policies are not required, the Assured may report such risks by any method mutually acceptable to the Assured and this Company. The Assured agrees to forward copies of all special marine policies, endorsements and declarations to the Assured's Broker of Record for transmittal to this Company.  This insurance shall not be vitiated, however, by an unintentional error, omission or oversight in making reports, provided the same be communicated to this Company as soon as known or discovered by the Assured and an additional premium paid, if required, or deficiency of premium made good.

**INSPECTION OF RECORDS**

56. This Company, or its Representative, shall have the privilege at any time during business hours to inspect the records of the Assured as respects shipments coming within the terms of this policy both during the term of this policy and for 12 months after its termination.

**BROKERS**

57. a) It is understood that for the purposes of this insurance the Assured's Broker of Record is:

**Shorepoint Insurance Services**
**1120 Bristol Street**
**Costa Mesa, CA 92626**

b) It is a condition of this policy that the above brokers, or any substituted brokers, shall be deemed to be exclusively the agents of the Assured and not of this company in any and all matters related to, connected with,

494680                                    19

or affecting this insurance. Any notice given or mailed by or on behalf of this Company to the above brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to the Assured.

## NOTICE OF SUIT

58. No suit, action or proceeding against this Company for the recovery of any claim shall be sustainable unless commenced within one year from the date of the happening of the accident out of which the claim arises, provided that if such limitation is invalid by the laws of the state within which the policy is issued that such suit, action or proceeding shall be barred unless commenced within the shortest limit of time permitted by the laws of such state.

## PROCESS CLAUSE

59. Notwithstanding anything to the contrary contained herein, it is understood and agreed that coverage provided does not insure against loss, damage, claim or expense sustained while the goods and/or merchandise insured hereunder are being worked upon and directly resulting therefrom.

## PACKING CLAUSE

60. In the event of a claim being made for loss or damage which is alleged to be caused by insufficiency or unsuitability of packing or preparation of the subject matter insured, Underwriters hereby agree that they will not use such alleged insufficiency or unsuitability as a defense against the claim in any case where the packing or preparation was carried out by a party other than the Named Insured hereunder, and the insufficiency or unsuitability arose entirely without the Named Insured's privity or knowledge. For the purpose of this clause "packing" shall be deemed to include stowage in a Container and/or other similar Intermodal methods of unit load.

The Insured agrees to assist Underwriters in all respects to pursue rights of recovery against sellers and/or other responsible third parties.

## STEAMER PENALTIES

61. As a condition of this insurance, the Assured agrees to keep accurate records of the vessels used to transport their goods, and will pay such additional premium as may be required for vessels that do not meet the criteria set forth on the rate schedule attached to this policy.

Penalty Rates:

| Vessel Ages | Rate per $100 |
|---|---|
| 21 to 25 years | .10 |
| 26 years and older | .15 |

## EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION ENDORSEMENT
### (U.S.A. ENDORSEMENT)
### (March 1, 2003)

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

1.    In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

    1.1    ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    1.2    The radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3    Any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

    1.4 The radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE
### (U.S.A. ENDORSEMENT)

This insurance is subject to the Institute Extended Radioactive Contamination Exclusion Clause (November 1, 2002) provided that:

    if fire is an insured peril

    and

    where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

    and

    a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Institute Extended Radioactive Contamination Exclusion Clause 1st November, 2002 any loss or damage arising directly from that fire shall, subject to the provisions of this insurance (reinsurance), be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

## CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, ELECTROMAGNETIC WEAPONS AND CYBER ATTACK EXCLUSION ENDORSEMENT (U.S.A.)
### (March 1, 2003)

**With respect to the peril of Terrorism as defined in the Terrorism Exclusion Clause, this clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

1.    In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

    1.1    Any chemical, biological, bio-chemical or electromagnetic weapon or device.

1.2    the use or operation, as a means for inflicting harm, of any computer, computer system, computer software program, computer virus or process or any other similar electronic system.

IN WITNESS WHEREOF, the Company has caused these presents to be signed by its President and attested by its Secretary in the City of Philadelphia, Pennsylvania, but this Policy shall not be valid unless countersigned by an authorized representative of this Company.

George D. Mulligan, Secretary                        Dennis B. Reding, President

Countersigned at ____Los Angeles, CA____ this day of ____June 4, 2008____

_____
Indemnity Insurance Company of North America

494680                                      22

**SECTION II**
**INLAND TRANSPORTATION**

**ATTACHMENT AND GEOGRAPHICAL LIMITS**

1. In consideration of premiums to be paid as provided elsewhere herein and subject to all terms and conditions of Section I not in conflict with the following, this policy is extended to cover the goods insured while in due course of transit within the limits of the United States and Canada, unless a superseding statement of territorial limits appear hereafter:

   **Including Worldwide**

   This section specifically excludes waterborne shipments between Alaska or Hawaii and the other United States or Canada and United States and/or Canadian coastwise or intercoastal shipments.

**VALUATION AND LIMIT OF LIABILITY**

2. Goods shall be valued at invoice plus 10%; or if no invoice, this Company shall not be liable beyond the actual cash value of the property insured at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality, unless a superseding basis of valuation appears hereafter.

   This Company shall not be liable hereunder for more than **$1,000,000.** via any one conveyance or in any one place at any one time.

**PERILS INSURED**

3. Section II insures against all risk of physical loss or damage from any external cause, unless superseding conditions appear hereafter:

   **Subject to terms and conditions in Section I Clause 14 (Average Terms).**

**PERILS EXCLUDED**

4. In addition to the Nuclear Exclusion clause and the Paramount Warranties contained in Section I, this section does not insure against loss or damage caused by:
   a. Delay, loss of market, loss or use, or any consequential loss;
   b. Theft by any person in the Assured's service or employment, whether the theft occurred during the hours of such service or employment or not.

**PROPERTY EXCLUDED**

5. This section does not insure against loss or damage to property consisting of:
   a. Accounts, bills, jewelry, precious stone, currency, deeds, evidence of debt, money, notes or securities;
   b. Goods or merchandise shipped by mail or parcel post unless endorsed hereon;
   c. Shipments which have been refused or returned by the receiver thereof.

494680

23

**NATURE OF COVERAGE**

6. To attach only while the insured property is in or on motor vehicles owned, leased or operated by the Assured, or while in the custody of any common or contract carrier including while on docks, wharves, piers, terminals, bulkheads, in depots, stations, on platforms and/or at other locations.

**DURATION OF INSURANCE**

7. Attaching on all shipments as described herein made during the term of this policy, from the time the goods leave the factory, store, warehouse, or other initial point of shipment, and covers continuously thereafter, in due course of transportation until the same are delivered at store, warehouse or other point of destination.

**F.O.B. SHIPMENTS**

8. As respects to such shipments that are at the risk of the consignee or other party, it is agreed that if by reason of loss or damage from a peril insured against the Assured cannot collect from the Consignee or other party because of refusal or inability to pay, this Company shall advance to Assured the amount of the loss as a loan, upon receipt of an assignment of the Insured's Right of Action against the consignee or other party.

**APPRAISAL**

9. If the Assured and the Company fail to agree as to the amount of loss, each, on their written demand of the other, made within sixty (60) days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen (15) days to agree, then, on the request of the Assured or the company, such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Assured and the company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

**OTHER INSURANCE**

10. It is expressly agreed that this insurance shall not cover to the extent of any other valid and collectible insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property, and this Company shall be liable for loss or damage only for the excess value beyond the amount of such other insurance.

**SUIT AGAINST COMPANY**

11. No suit, action or proceeding for the recovery of any claim hereunder shall be sustainable in any court of Law or equity unless the same be commenced within twelve (12) months after discovery by the Assured of the occurrence which gives rise to the claim. Provided, however, that if by the Laws of the State within which this policy section is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State.

494680

24

**PREMIUM ADJUSTMENT AND REPORT OF SHIPMENTS**

12. The premium charged for this section has been calculated at a rate of **Included in Deposit** based on annual shipments having an estimated value of **as attached.** On or before the 30th day following the anniversary of this policy, the Assured agrees to submit to the Company, or its Agent, a true report of the total value of shipments made during the policy period, it being agreed that the value of such shipments shall be determined in accordance with the valuation clause contained herein. If the total value of such shipments exceeds the above estimate, the Assured agrees to pay additional premium on the excess amount at the policy rate, such additional premium to become due and payable to the Company immediately upon the furnishing of the aforesaid report. In the event the total value of shipments falls short of the said estimate, the Company agrees to return premium at the same rate on the deficiency, but no return premium shall become due or payable until the expiration date of the policy. It is further agreed that on each anniversary date there shall become due and payable to the Company a new deposit premium which shall be based on the estimated value of shipments for the ensuing year.

**DEDUCTIBLE**

13. With respect to Domestic Shipments of fish, seafood and related goods, the deductible shall be **$5,000** per occurrence.

With respect to Business Personal Property, Personal Effects and Household Goods, the deductible shall be **$2,500** per occurrence.

**SECTION III**
**WAREHOUSE COVERAGE**

1.  In consideration of premiums to be paid as set forth below, this policy, subject to all terms and conditions not in conflict with this section, is hereby extended to cover the goods insured while temporarily situated at the locations listed herein.  This includes goods purchased domestically and/or goods not insured for the import voyage while situated at the locations listed herein.

2.  This Company shall be liable for no more than the limit of liability shown opposite each location.  However, if the total value at risk in any one location exceeds the limit of liability provided, the Assured will nevertheless report to this Company the full amount at risk in such location and will pay premium calculated thereon will not alter or increase the limits of this Company's liability, but this Company shall be liable for the full amount of loss up to but not exceeding the limits of liability in force at time of loss under this section or its amendments.

3.  If, in the event of loss or damage to property hereby insured, any other valid insurance effected by or for the Assured exists covering the same property, this insurance shall be considered as excess insurance and this Company shall be liable only for the amount which cannot be collected under such other insurance, subject however to the limit or limits of liability applying to the location or locations involved.

4.  An accurate record shall be kept by the Assured of all property covered by this section and such record shall be open to the inspection of ̲n authorized representative of this Company.

5.  Goods and/or merchandise insured hereunder shall be valued in accordance with the Valuation Clause appearing in this policy, plus the actual amount of duty paid or payable, if any, it being understood and agreed that loss, if any, shall be adjusted on the same basis subject to the limits of liability applying to the respective locations.

6.  Coverage under this endorsement also excludes:
    a.  Loss resulting from any dishonest act or acts, committed alone or in collusion with others, by any employees of the Assured whether or not such acts are committed during regular business hours.
    b.  Any unexplained loss, mysterious disappearance, or loss or shortage disclosed upon taking inventory EXCEPT when in the custody of a bailee.
    c.  Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the perils insured against in this policy; however, subject to the foregoing and all provision of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

7.  The Assured shall as soon as practicable report to this Company or its agent every loss or damage which may become a claim under this section and shall also file with the Company or its agent within ninety (90) days from the date of loss a detailed sworn proof of loss.  Failure by the Assured to report the said loss or damage and to file such sworn proof of loss as hereinbefore provided shall invalidate any claim under this policy for such loss.

494680                                    26

8.    No suit, action or proceeding for the recovery of any claim under this section shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Assured of the occurrence which gives rise to the claim.  Provided, however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit, or proceeding be commenced within the shortest limit of time permitted by the laws of such State to be fixed herein.

9.    DEDUCTIBLE: Each claim for loss or damage occurring hereunder whether goods are in transit or storage, except for the perils of Earthquake or USFDA Rejection, shall be adjusted separately and from the amount of each such adjusted claim the sum of **$20,000** shall be deducted per occurrence.

While goods are in storage, each claim for loss or damage due to the peril of earthquake shall be subject to a deductible of **$100,000** per location per occurrence.

Each claim for loss resulting from any one USFDA Rejection (Refusal) per Bill of Lading or Entry is subject to a deductible of Nil.

10.   IT IS HEREBY UNDERSTOOD AND AGREED THAT IN THE EVENT THE POLICY TO WHICH THIS SECTION IS ATTACHED IS CANCELED, COVERAGE UNDER THIS SECTION IS AUTOMATICALLY TERMINATED AS OF THE DATE OF SUCH CANCELLATION.

It is hereby understood and agreed that the following are scheduled warehouses under the subject policy:

| Number | Address | Limit of Liability | Rate per $100 |
|---|---|---|---|
| 1 | Tri-Marine Fish Company<br>220 Cannery Street<br>Terminal Island, CA USA | $1,000,000 | Included in Deposit |
| 2 | Tri-Marine International  (office)<br>10500 NE 8th Street<br>Bellevue, WA 98004 USA | $50,000 | Included in Deposit |
| 3 | Inland Cold Storage<br>4100 Bandini Ave.<br>Los Angeles, CA USA | $100,000 | Included in Deposit |
| 4 | Union Ice<br>901 East E Street<br>Wilmington CA USA | $400,000 | Included in Deposit |
| 5 | Soltai Fishing & Processing Ltd.<br>Noro Base,<br>Noro, Western Province,<br>Solomon Islands | $4,000,000 | Included in Deposit |
| 6 | Wanainchi Marine Products (K) Ltd.<br>Liwatoni Fisheries Complex<br>Liwatoni Road, Mombasa<br>Kenya | $4,000,000 | Included in Deposit |

494680

27

| Number | Address | Limit of Liability | Rate per $100 |
|---|---|---|---|
| 7 | Magazzini Generali E Frigoriferi Sodele S.R.L. Via XXV Aprile Ovest, 10 42049 Sant' Ilarrio d'Enza Reggio Emilia Italy . | $8,000,000 | Included in Deposit |
| 8 | Fridocks-Maggazzini Generali E Frigoriferi S.P.A. S.S. 211 Della Limellina Km 15068 Pozzolo Formigaro Alessandria Italy | $12,000,000 | Included in Deposit |
| 9 | Seafman C.A. – Sociedad Ecuatoriana de Alimentos y Frogorificos Manta C.A. Calle 124 y Ave. 102 Los Esteros, Manta Ecuador | $8,000,000 | Included in Deposit |
| 10 | GRALCO S.A. Calle 1 era. 38-121 Zona Indus<sup>t</sup>rial Barranquilla, Colombia | $4,000,000 | Included in Deposit |
| 11 | ATUNEC S.A. Zona Franca de Barranquilla, Lote 13 Barranquilla, Colombia | $4,000,000 | Included in Deposit |
| 12 | Eurofish S.A. Urbanizacion Arroyo Azul, Manta Ecuador | $2,000,000 | Included in Deposit |
| 13 | Austral Group S.A.A. Av. Victor Andres Belaunde 147, Torre 7, Lima 27, Peru | $2,000,000 | Included in Deposit |
| 14 | Yi Yang Cold Storage Zhejiang E.C.S. Foods Co., Ltd. JiangKou, Fenghua, Ningbo Zhejiang Province, 315504 China [1] | $1,000,000 | Included in Deposit |
| 15 | Todayfood Cold Storage Ningbo today Food Co., Ltd. No. 38 Zhongxing East Road, Xikou, Ningbo China | $2,000,000 | Included in Deposit |
| 16 | Any one unnamed warehouse [2] | $1,000,000 | Included in Deposit |

494680

28

**11.     Difference in Conditions**
Coverage is extended to cover the difference in conditions between Huatai Insurance Company of China, LTD and this policy for goods insured by Hautai Insurance Company of China, LTD while temporarily stored at the following locations.

This Company shall be liable for no more than the limit of liability shown opposite each location.

| Address | Limit of Liability |
|---|---|
| 1.  Yi Yang Cold Storage<br>Zhejiang E.C.S. Foods Co., Ltd.<br>JiangKou, Fenhua, Ningbo Zhejiang Province,<br>315504 China | $2,000,000 |
| 2.  Todayfood Cold Storage<br>Ningbo Today Food Co., Ltd.<br>No. 38 Zhongxing East Road, Xikou, Ningbo<br>China | $2,000,000 |

---

[1] China warehouses are lawfully required to be insured by a Chinese insurance company.  ACE has ownership in Huatai Insurance Company of China Ltd. which insures the storage risk.  This policy extends with DIC to match  the balance of the Cargo program.

[2] For the catastrophic perils of Earthquake, Flood and Named Windstorm, Unnamed locations are capped at $2,000,000 in the annual aggregate.

494680                                                          29

IN WITNESS WHEREOF, the Company has caused these presents to be signed by its President and attested by its Secretary in the City of Philadelphia, Pennsylvania, but this Policy shall not be valid unless countersigned by an authorized representative of this Company

George D. Mulligan, Secretary                    Dennis B. Reding, President

Countersigned at   Los Angeles, CA _____   this day of   June 4, 2008 _____

Indemnity Insurance Company of North America

494680                                    30

## REJECTION INSURANCE ENDORSEMENT

It is hereby understood and agreed that effective January 1, 2008 this policy is extended to cover the risks of USFDA rejection (hereinafter referred to as "rejection") of Seafood, but specifically excluding Frog Legs and Live Seafood, per the attached clauses.

The Limit for this insurance for rejection risks is **$200,000** per any one Bill of Lading and/or entry.

### *WARRANTIES:*

No shipments will be insured for Rejection Risks unless the insured product's supplier(s) is/are approved by Underwriters and the specific name and address of the insured product's supplier(s) is/are on file with the Company prior to shipment.

Rejection insurance does not apply to "block" listed interests, countries, or causes of detention unless specifically agreed to prior to shipment.

A.  1.  Subject always to the following conditions and exclusions this policy is extended to cover the risks of rejection or condemnation by the government of the country of import or their agencies or departments during the period of this insurance.

This Rejection insurance shall cease at the Warehouse and/or cold store, or the port of discharge from overseas conveyance either:
(a) when the goods have been passed by the government of the country of import or their agencies or departments, o
(b) on the expiry of 60 days after discharge from overseas conveyances, whichever event shall first occur.
(c) Provided USFDA requests sampling within 15 days of discharge of the vessel and/or land bridge conveyance, unlimited time is granted for USFDA results, warranted no rejection claim for accident after goods are placed in the first warehouse.

2.  This insurance may be extended to cover transit to inland destination but shall cease:
(a) when the goods have been passed by the government of the country of import or their agencies or departments at such destination, or
(b) on the expiry of 60 days after discharge from overseas conveyances, whichever event shall first occur.

**PROVIDED ALWAYS THAT:**
(1) the goods have not been inspected at the port of discharge
(2) the goods have been forwarded under cord and seal.

B.  It is a condition of this insurance that:
1.  The interest insured is produced, prepared and packed in accordance with regulations of the Government or Country of Origin and it is fit for export to the importing country.
2.  Shipments are direct or held covered at a premium to be arranged.

494680

31

C.     In particular, this insurance does not cover claims arising from:

1. Non-compliance with any of the conditions in Clause B. above.
2. Loss of market.
3. Misdescription of the interest insured including short weight.
4. Non-compliance with any regulations in the country of origin as to fumigation or similar process.
5. Non-compliance with labeling regulations in force in the country of destination at time interest attached thereto.
6. Any omission or error in the contract of sale or other document.
7. Non-compliance with or breach of any of the provisions or Warranties set out in the Marine Policy attached to this Rejection Endorsement.
8. Any USFDA unapproved drugs, family of drugs and substances, including specifically Chloramphenicol.

D.     In the event of any embargo or prohibition being declared or in being by the importing country, no claim shall attach hereto in respect of such embargo or prohibition on any shipment sailing after the announcement or enforcement of such an embargo or prohibition. In respect of shipments which have sailed prior to such announcement or enforcement, this insurance is only to pay the cost of return freight to the country of export or up to that amount in event of re-export to any substitute destination.

E.     In the event of rejection or condemnation that would lead thereto, as provided for in Clause A. above, this Company, entirely without prejudice to Underwriters' liability, is:

1. To be notified <u>immediately</u> and any requirements or instructions they may issue are to be complied with. Fees in this are payable by Underwriters, but only in the event of the claim (rejection or condemnation) being paid hereunder. In cases of detention or potential detention of the product, sue and labor expenses are to be considered as per regular marine policy terms and practices.

2. Authorized by claimants and underwriters to dispose of the rejected or condemned interest and to obtain and hold salvage on account of those concerned but such action shall not be deemed to waive any conditions of this insurance.

3. To pay adjusted loss based upon the Cost and Freight (C&F) value of the merchandise plus 10%, less any salvage proceeds.

4. In addition to the adjusted loss, normal claim expenses to minimize and establish the loss shall also be covered. However, in no event shall the payable claim expenses to minimize and establish the loss exceed 15% of the C&F value of the entire shipment detained, rejected, or condemned, but not to exceed $15,000. Claim reduction expenses to be included under this coverage extension are:

(a) Round-trip freight charges
(b) Additional landing, storage and handling charges
(c) Customs and lab fees, and
(d) Interest accrued under the Letter of Credit, up to $5,000 maximum, associated with a USFDA rejection loss on imported seafood.

**USFDA REJECTION APPROVED SUPPLIERS/PACKERS**

It is hereby understood and agreed that effective January 1, 2008 the following suppliers/packers
are approved for USFDA Rejection (Refusal):

> GRALCO S.A. (Ex Frigogan) (Columbia)
> Eurofish S.A. (Ecuador)
> Seafman (Ecuador)
> ATUNEC (Columbia) (Ecuador)
> Hiersa (Ecuador)
> Austral Pita Plant (Peru)
> Austral Coishco (Peru)
> Thai Union Frozen Products (Thailand)
> ISA Value Co. (Thailand)
> Philbest Canning Corp. (Philippines)
> Miramar Fish Co. (Philippines)

**ALL OTHER TERMS, CONDITION AND VALUATIONS REMAIN UNCHANGED.**

494680

**S.R. & C.C. ENDORSEMENT (Form No. 11)**

THIS INSURANCE ALSO COVERS:

(1)   Physical loss of or damage to the property insured directly caused by strikers, locked-out workmen, or persons taking part in labor disturbances or riots or civil commotions; and,

(2)   Physical loss of or damage to the property insured directly caused by vandalism, sabotage or malicious acts; and

(3)   Physical loss of or damage to the property insured directly caused by the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional; PROVIDED that any claim to be recoverable under this sub-section (3) be not excluded by the F.C. &S. Warranty in the Policy to which this endorsement is attached.   Notwithstanding the foregoing, coverage under this subsection (3) is conditional upon the property insured being in the ordinary course of transit and, in any event, shall terminate:

    (a)   As per the Warehouse to Warehouse Clause, Marine Extension Clause, 60 Day South American Clause and any other clauses relating to duration of transit contained in or endorsed onto the Policy; or,

    (b)   on delivery to the consignee's or other final warehouse or place of storage at the destination named herein; or,

    (c)   on delivery to any warehouse or place of storage, whether prior to or at the destination named herein, which the Assured elects to use either for storage other than in the ordinary course of transit or for allocation or distribution; or,

    (d)   in respect of marine transits, on the expiry of 60 days after completion of discharge overside of the property insured from the vessel at the port of discharge; or,

    (e)   in respect of air transits, on the expiry of 30 days after unloading the property insured from the aircraft at the place of discharge;

**whichever shall first occur.**

While the property insured is at risk under the terms and conditions of this insurance within the United States of America, the Commonwealth of Puerto Rico, the U.S. Virgin Islands and Canada, this insurance is extended to cover physical loss of or damage to the property insured directly caused by acts committed by an agent of any government, party or faction engaged in war, hostilities or other warlike operations, provided such agent is acting secretly and not in connection with any operation of military or naval armed forces in the country where the described property is situated.

Nothing in this endorsement shall be construed to cover any loss, damage or expense directly or indirectly arising from, contributed to or caused by any of the following, whether due to a peril insured against or otherwise:

    a.   change in temperature or humidity;

    b.   the absence, shortage, or withholding of power, fuel, or labor of any description whatsoever during any strike, lockout, labor disturbance, riot or civil commotion;

    c.   loss of market or loss, damage or deterioration arising from delay;

    d.   hostilities, warlike operations, civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, except to the limited extent that the acts of certain agents acting secretly have been expressly covered above; or,

    e.   nuclear reaction, radiation or radioactive contamination.

494680                           34

The Assured agrees to report all shipments attaching under this cover and to pay premiums therefore at the rates established by the Assurer from time to time.

This endorsement may be cancelled by either party upon forty-eight hours written, telegraphic or telefaxed notice to the other party, but such cancellation shall not affect any risks which have already attached hereunder.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

494680

## TERRORISM EXCLUSION ENDORSEMENT

**The following warranty shall be paramount and shall not be superseded by any other provision stamped or endorsed on this insurance unless such other provision refers specifically to the risks excluded by this warranty and expressly assumes the said risks.**

1.  Any other provision of this policy notwithstanding, this insurance is warranted free from loss, damage, injury, expense, cost, or legal obligation directly or indirectly resulting from or arising out of or in any way related to:

     a. An "Act of Terrorism"; or

     b. Any actions taken by or on behalf of any government or any branch or division thereof (including, without limitation, the uniformed armed forces, militia, police, state security, and anti-terrorism agencies) in responding to, preventing, combating, defending or retaliating against any "Act of Terrorism."

This exclusion applies regardless of any other cause or event that in any way contributes concurrently or in sequence to the loss, injury, damage, expense, cost, or legal obligation.

This exclusion applies whether or not the perpetrator(s) of the "Act of Terrorism" are acting in concert with or on behalf of any organization or government.

### DEFINITIONS

"Act of Terrorism" means:

     1) the use or threatened use of violence or force causing damage to property, and/or

     2) the infliction or threatened infliction of bodily injury to persons,

for which there is a reasonable belief that the perpetrator(s) undertook such act or acts for political, religious and/or ideological reasons in order to:

     (1)  engender fear for safety among the public or segments of the public;

     (2)  disrupt any segment of a country's economy; and/or

     (3)  influence governmental action or policy.

An "Act of Terrorism" shall also include any incident determined to be such by an official that has been specifically authorized by federal statute to make such a determination.

2.  Notwithstanding this Paramount Warranty, it is agreed that insofar as this Policy would otherwise not exclude physical loss of, or damage to, the property insured directly caused by:

     a.  an "Act of Terrorism" undertaken for political reasons or ideological reasons; or

     b.  any action described in paragraph 1.a. that is taken in responding to, preventing, combating, defending or retaliating to an "Act of Terrorism" undertaken for political or ideological reasons;

this Paramount Warranty shall not apply while the property insured is in the ordinary course of transit.  Such cover in any event, **SHALL TERMINATE:**

     **either**

     2.1     As per the transit clauses contained within the Policy,

     **or**

     2.2     on delivery to:

          (a)   the Consignee's or other final warehouse or place of storage at the destination named herein, or

          (b)  to any other warehouse or place of storage, whether prior to or at the destination named herein, which the Assured elect to use either for

494680

36

storage other than in the ordinary course of transit or for allocation or distribution,

**or**

2.3      in respect to marine transits, on the expiry of 60 days after completion of discharge overside of the goods hereby insured from the oversea vessel at the final port of discharge,

2.4      in respect to air transits, on the expiry of 30 days after unloading the subject-matter insured from the aircraft at the final place of discharge, **whichever shall first occur.**

3.   If this policy, its endorsements, or the clauses referred to therein specifically provide cover for inland or other further transits following on from storage, or termination as provided for above, cover will re-attach, and continues during the ordinary course of that transit terminating again in accordance with clause 1 above.

4.   This clause is subject to English law and customs, except in the United States and its possessions where the law and customs of the United States will prevail.

       **ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAIN UNCHANGED.**

## PROFIT SHARING ENDORSEMENT

It is hereby understood and agreed that effective from January 1, 2008 and annually thereafter, the Assured shall participate in profits (if any) as described below on the following basis:

1.  Gross cargo premium less all returns (but excluding premiums for Terrorism Reinsurance Act, War, Strikes, Riots and Civil Commotions) billed and collected by the Company during each policy year.  If the policy is written on a Deposit / Adjustment basis, gross cargo premium shall be defined as all premiums owed the Company for the policy year after the final adjustment is applied.

2.  Less 50% of the gross cargo premiums (for insurance company expenses) and,

3.  Less all paid and outstanding claims (including loss adjustment expense) occurring on shipments made during the policy year (such claims to be reduced by the amount of recoveries made if any).  In the event of claims exceeding 50% of the annual gross cargo premium during any one policy year, such excess loss shall be included in the next year's Profit Sharing calculation - but in no event shall it be carried forward more than one year.

4.  The balance remaining after No. 3 above is deemed to be the profit for the purposes of this plan and the Assured shall be entitled to participate in this profit proportionately (50/50) with the Company.

At the end of six months following the end of each policy year, an adjustment of the Assured's Profit Share shall be paid by the Company.  Should there be premiums, losses or recoveries that are recorded after the end of the policy year and Profit Sharing calculations have been deemed final, then such premiums, losses and recoveries shall be applied to the next year's Profit Sharing calculation.

In event of cancellation of this policy by the Assured, this endorsement shall not apply to the premiums for the last policy year or part thereof.  Further, no Profit Sharing shall be paid under this agreement unless the policy is in force at the time when the determination of the profit is made in accordance with the provisions above.

Profit Sharing will only apply when the marine premium as defined herein is in excess of **$100,000** during the policy year.

Profit Sharing payments will not be issued until all premium payments due the Company have been received.

All premiums, losses, recoveries and adjustments shall be calculated using the Company's figures.

## ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAIN UNCHANGED

494680

**WAR RISK ONLY**

**Policy No. WR494680**

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA**

**Philadelphia**

**ASSURED**

1.   In consideration of premiums as agreed to be paid, this Company does insure, lost or not lost:

    **Tri-Marine International, Inc. and/or Tri-Marine International (Pte) Ltd. and/or Tri-Oceanic Pte Ltd., Tri-Marine Europe SPA, Tri-Marine Spain SRL, Cape Fisheries Holdings LP, National Fisheries Developments Limited, Tri-Marine International SA de CV, Tri-Marine (FSM) Inc., Tri-Marine Fish Company LLC, Tri-Marine International SA, Tri-Oceanic Overseas Holdings LLC, Tri-Oceanic US Holdings LLC, Tri-Oceanic Overseas Holdings Ltd., Tri-Marine International SRL, Tri-Marine International Spain SRL, Renato Curto, an individual, and/or subsidiary companies or corporations, firms or organizations as may now exist or hereinafter be constituted for which the Assured has the responsibility of placing insurance and/or from whom they have instructions to insure.**

    (Hereinafter referred to as: The Assured).  For account of whom it may concern, against **WAR RISKS ONLY,** in accordance with the terms and conditions hereinafter set forth.

**LOSS PAYABLE**

2.   Loss, if any, payable to Assured or order thirty days after full proofs of loss and proofs of interest have been filed with this Company.

**LIMIT OF LIABILITY**

3.*   This Company shall not be liable hereunder for more than **$10,000,000.00** by any one vessel

    In cases where the total value(s) at risk on any one vessel exceed(s) the limit of liability as set forth in this Policy, the Assured agrees, nevertheless, to report to the Assurer full values(s) at risk and to pay premium thereon at the agreed rates. The Assured further agrees that acceptance of such reports and premium by the Assurer shall not serve to revoke or to overrule the limit of liability set forth in this Policy; however, subject to the limit of liability, the Assurer in accepting these reports does agree to pay partial losses covered by this Policy without reduction by reason of any coinsurance which otherwise may have existed in the absence of this special agreement.

**ACCUMULATION**

4.*   Subject · to the provisions of Section 13 of this Policy, should there be an accumulation of interests exceeding the above limit of liability by reason of any interruption of transit beyond the control of the Assured or by reason of any casualty, and/or after the interests have been discharged from the incoming overseas Vessel at an intermediate port or place for on-carriage from that or any other port or place

494680

by another overseas Vessel, and/or on the on-carrying overseas Vessel, this Policy shall attach for the full amount at risk (but in no event for more than twice the Policy limit which would be applicable to any one Vessel) provided written notice be given to this Company as soon as known to the Assured.

**SHIPMENTS COVERED**

5.* This Policy shall cover only those shipments which are insured against marine risks under Policy No. 494680 of this Company, it being agreed that the description of such shipments, the valuations thereof, the voyage, the designation of the overseas Vessel (which shall be construed to include aircraft if included under the Marine Policy) on which the goods are to be carried and the ports and/or places of loading and discharge, as reported under the said Policy against marine risks, shall be deemed incorporated herein. Notwithstanding the foregoing, this Policy shall not cover purely domestic shipments by air between points in the United States of America (excluding Alaska and Hawaii).

**ATTACHMENT**

6. Effective as to risks attaching on and after January 1, 2008.

**DECLARATIONS**

7. Warranted by the Assured that all shipments covered by this Policy will be reported to the Company as soon as practicable and amounts declared as soon as known. Unintentional failure by the Assured to report shipments to the Company shall not void this Policy, and such shipments are held covered subject to Policy conditions.

The Company is entitled to premiums, at rates of this Company, on all shipments covered by this Policy, whether reported or not.

Should the Assured willfully fail to report shipments covered by this Policy, then the Policy as to all subsequent shipments shall, at the Company's option, become null and void.

**INSPECTION OF RECORDS**

8. This Company, or its agent, shall have the privilege, at any time during business hours and for 12 months after cancellation to inspect the records of the Assured as respects shipments coming within the terms of this Policy.

9.* (a) This insurance is only against the risks of capture, seizure, destruction or damage by men-of-war, piracy, takings at sea, arrests, restraints, detainments and other warlike operations and acts c. kings, princes and peoples in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, or civil strife arising therefrom; the imposition of martial law, military or usurped power, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes. Warranted not to abandon (on any ground other than physical damage to ship or cargo) until after condemnation of the property insured.

(b) This insurance also covers, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a

pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under this Policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

10.* Warranted free from any claim based upon loss of, or frustration of, the insured voyage or adventure caused by arrests, restraints or detainments.

11.* This insurance does not cover any loss, damage or expense directly or indirectly arising from, contributed to, or caused by any of the following, whether due to a peril insured against or otherwise:

    (a) Commandeering, preemption, requisition or nationalization by the government (defacto or otherwise) of the country to or from which the goods are insured.

    (b) Seizure or destruction under quarantine, environmental or customs regulations.

    (c) Delay, deterioration and/or loss of market.

    (d) Nuclear reaction, radiation or radioactive contamination, regardless of how it was caused.

12.* Notwithstanding anything to the contrary herein, it is hereby understood and agreed that this policy shall not apply to any loss, damage or expense due to or arising out of, directly or indirectly, nuclear reaction, radiation or radioactive contamination, regardless of how it was caused.

13.* (a) The insurance against the risks enumerated in Clause 9, except the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged referred to in (b) below, shall not attach to the interest hereby insured or to any part thereof

        (i) prior to being on board an overseas Vessel (For the purpose of this Clause 13 an overseas Vessel shall be deemed to mean a Vessel carrying the interest from one port or place to another where such voyage involves a sea passage by that Vessel);

        (ii) after being discharged overside from an overseas Vessel at the intended port or place of discharge,
                or
after the expiry of 15 days from midnight of the day of arrival of the overseas Vessel at the intended port or place of discharge, whichever shall first occur;

        (iii) after expiry of 15 days from midnight of the day of arrival of the overseas Vessel at an intermediate port or place to discharge the interest for on-carriage from that or any other port or place by another overseas Vessel, but shall reattach as the interest is loaded on the on-carrying overseas Vessel. During the said period of 15 days the insurance remains in force whether the interest is awaiting transit or in transit between the overseas Vessels.

        (iv) For the purpose of this Clause 13 arrival at the intended port or place of discharge shall be deemed to mean that time when the overseas

Vessel first berths, anchors, moors or is secured in an area subject to regulation by the authorities of such port or place.

(b) The insurance against the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged, attaches as the interest hereby insured is first loaded on a lighter, craft or vessel after leaving the warehouse at point of shipment in transit for the destination declared hereunder, and ceases to attach as the interest is finally landed from the vessel, craft or lighter prior to delivery to warehouse at such destination.

(c) If the contract of affreightment is terminated at a port or place other than the destination named therein such port or place shall be deemed the intended port or place of discharge for the purpose of this Clause 13.

(d) Shipments by mail, if covered by this Policy, are insured continuously from the time of leaving the sender's premises until delivered to the place of address.

(e) Shipments by air (other than by air mail), if covered by this Policy are insured subject to the same terms and conditions as shipments by overseas Vessel.

(f) It is a condition of this insurance that the Assured shall act with reasonable dispatch in all circumstances within their control.

(g) If anything contained in this Policy shall be inconsistent with this Clause 13 it shall to the extent of such inconsistency be null and void.

14.* This insurance shall not be vitiated by deviation, overcarriage, change of voyage, or by any error or unintentional omission in the description of interest, Vessel or voyage, provided the same be communicated to the Assurer as soon as known to the Assured and an additional premium paid if required.

15.* And in case of any loss or misfortune, it shall be lawful and necessary to and for the Assured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said goods, and merchandises, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or Assurers, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of an abandonment; and to the charges whereof, the said Assurers will contribute according to the rate and quantity of the sum hereby insured.

16.* General Average and Salvage Charges payable according to United States laws and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

17.* It is agreed that the reports of shipments made under the Policy against marine risks mentioned above shall be deemed to be reports under this Policy also, and the Assured agrees to pay premiums on all shipments insured under this Policy at the war risk rates of the Assurer as fixed from time to time.

18.* No claim shall be payable hereunder which arises from collision, contact with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather or fire unless caused directly (and independently of the nature of the voyage or service which the Vessel concerned or, in the case of a collision, any other Vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purpose of this paragraph "power" includes any authority maintaining naval, military or air forces in association with a power.

494680

42

19.* No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value if the expenditure had been incurred.

20.* It is agreed that this Policy is a separate and wholly independent contract and is not subject to any terms or conditions of the Policy against marine risks above mentioned (whether physically attached thereto or not) except as such terms or conditions shall have been expressly incorporated herein by reference.

21.* This insurance may be cancelled by either party upon forty-eight hours written, telegraphic or telefaxed notice to the other party, but such cancellation shall not affect any shipment on which this insurance has attached under the terms of Clause 13 hereof prior to the effective date of such notice. Shipments on which this insurance has not so attached but for which, prior to the effective date of such notice, bills of lading have been issued and (in the case of exports) Certificates or Special Policies have been issued and negotiated, shall be covered from the time of loading on the overseas Vessel, as provided in Clause 12, at the rates of the Assurer, provided that, prior to said effective date, such shipments were at the risk of the Assured and were covered under the said Policy against marine risks.

In the event of loss which may give rise to a claim under this Policy, prompt notice shall be given to this Company.

* American Institute Clauses (December 2, 1993)

IN WITNESS WHEREOF, the Company has caused these presents to be signed by its President and attested by its Secretary in the City of Philadelphia, Pennsylvania, but this Policy shall not be valid unless countersigned by an authorized representative of this Company.

George D. Mulligan, Secretary

Dennis B. Reding, President

Countersigned at  Los Angeles, CA                          this day of  June 4, 2008

Indemnity Insurance Company of North America

43

| Named Assured **TRI-MARINE INTERNATIONAL, INC.** | | | End't Number **1** |
|---|---|---|---|
| Insurance Company **Indemnity Insurance Company of North America** | Policy No. **494680/ WR494680** | Sec. | End't Eff. Date **01/01/2008** |

### DEPOSIT PREMIUM ENDORSEMENT

It is hereby understood and agreed that effective **January 1, 2008** these policies are written in consideration of an annual deposit premium of **$571,620.00**. This deposit is calculated at rates of **.08%** (Marine Policy) and **.015%** (War Policy) on estimated insured values of **$600,000,000.00** plus $1,620.00 TRIA.

This deposit premium shall be due and payable in quarterly installments at the beginning of each period in the amount of **$142,905.00 each**. On or before the 30th day following the anniversary date of this endorsement, the Assured agrees to submit to this Company or its agent the total insured values coming within the terms of this policy during the policy year.

If the total values are greater than **105%** of the estimated values the total difference shall be paid to the Company by the Assured. If the total values are less than **95%** of the total difference shall be returned to the Assured by this Company. For the purposes of the premium adjustment, it is understood and agreed that the gross annual insured transit volume shall be deemed to be no more than US $650,000,000.00. This premium cap shall be null and void if the loss ratio (loss and loss adjustment expenses divided by gross premium) for the term exceeds 70%. Irrespective of earned premium falling short of the deposit, no portion of such minimum premium is refundable in the event of cancellation.

The annual deposit premium hereunder will be applied as follows:

|  | Annual | Quarterly |
|---|---|---|
| **Marine** | $480,000.00 | $120,000.00 |
| **Warehouse** | Included | Included |
| **TRIA** | $    1,620 | $      405 |
| **Inland Transit** | Included | Included |
| **War** | $ 90,000.00 | $ 22,500.00 |
| **TOTAL** | $571,620.00 | $142,905.00 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAIN UNCHANGED.**

| Named Insured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>2 |
|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680 | Sec. | End't Eff. Date<br>01/01/2008 |

## BANK ENDORSEMENT

It is hereby understood and agreed that

**Rabobank Singapore Branch**
**77 Robinson Road**
**#09-00 SIA Building**
**Singapore 068896**

Hereinafter called the Bank, now has or will have delivered to it from time to time title to or control of certain merchandise insured under this policy; or otherwise has or will have an insurable interest therein and that the Bank will be recognized as an insured under this policy in connection with any loss of or damage to such merchandise for which it shall hold warehouse receipts, bills of lading or other evidence of title or control or in the case of property not represented by such documents in which it shall have an insurable interest evidenced by written entry on the records of the Bank, and that payment for any loss of or damage to such merchandise shall be made jointly to both the Bank and the Assured, to the extent of the Bank's insurable interest therein.

This policy shall not be canceled nor materially changed as to the interest of the Bank unless ten (10) days' written notice of such change or cancellation shall have been given to the Bank, except with respect to War, Strikes, Riots and Civil Commotions which are subject to cancellation upon forty-eight (48) hours' notice.

This agreement shall not extend the said policy to cover any additional risks, it being especially agreed that the policy does not insure against conversion, misappropriation or other dishonest acts committed by or on behalf of the named insured.  Also, this agreement is subject to the limits of liability named in the policy and to the conditions of any Value Reporting, Full Reporting, Total Insurance clauses incorporated therein or attached thereto, it being understood and agreed nevertheless that unintentional error or omission in the making of reports required of the named insured under this policy shall not prejudice the rights of the Bank to collect hereunder.

The underwriters further agree that nothing contained herein shall impose any liability on the Bank for the payment of premiums.

494680

45

| Named Assured | | | End't Number |
|---|---|---|---|
| TRI-MARINE INTERNATIONAL, INC. | | | 3 |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| Indemnity Insurance Company of North America | 494680 | | 01/01/2008 |

**BANK ENDORSEMENT**

It is hereby understood and agreed that

        Fortis Bank S.A./N.V. Singapore Branch
        63 Market Street
        #19-01
        Singapore 048942

Hereinafter called the Bank, now has or will have delivered to it from time to time title to or control of certain merchandise insured under this policy; or otherwise has or will have an insurable interest therein and that the Bank will be recognized as an insured under this policy in connection with any loss of or damage to such merchandise for which it shall hold warehouse receipts, bills of lading or other evidence of title or control or in the case of property not represented by such documents in which it shall have an insurable interest evidenced by written entry on the records of the Bank, and that payment for any loss of or damage to such merchandise shall be made jointly to both the Bank and the Assured, to the extent of the Bank's insurable interest therein.

This policy shall not be canceled nor materially changed as to the interest of the Bank unless ten (10) days' written notice of such change or cancellation shall have been given to the Bank, except with respect to War, Strikes, Riots and Civil Commotions which are subject to cancellation upon forty-eight (48) hours' notice.

This agreement shall not extend the said policy to cover any additional risks, it being especially agreed that the policy does not insure against conversion, misappropriation or other dishonest acts committed by or on behalf of the named insured. Also, this agreement is subject to the limits of liability named in the policy and to the conditions of any Value Reporting, Full Reporting, Total Insurance clauses incorporated therein or attached thereto, it being understood and agreed nevertheless that unintentional error or omission in the making of reports required of the named insured under this policy shall not prejudice the rights of the Bank to collect hereunder.

The underwriters further agree that nothing contained herein shall impose any liability on the Bank for the payment of premiums.

494680

46

| Named Assured | | | End't Number |
|---|---|---|---|
| **TRI-MARINE INTERNATIONAL, INC.** | | | 4 |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| **Indemnity Insurance Company of North America** | **494680** | | **01/01/2008** |

**BANK ENDORSEMENT**

It is hereby understood and agreed that

      **First Commercial Bank Singapore Branch**
      **76 Shenton Way**
      **#01-02**
      **Singapore 079119**

Hereinafter called the Bank, now has or will have delivered to it from time to time title to or control of certain merchandise insured under this policy; or otherwise has or will have an insurable interest therein and that the Bank will be recognized as an insured under this policy in connection with any loss of or damage to such merchandise for which it shall hold warehouse receipts, bills of lading or other evidence of title or control or in the case of property not represented by such documents in which it shall have an insurable interest evidenced by written entry on the records of the Bank, and that payment for any loss of or damage to such merchandise shall be made jointly to both the Bank and the Assured, to the extent of the Bank's insurable interest therein.

This policy shall not be canceled nor materially changed as to the interest of the Bank unless ten (10) days' written notice of such change or cancellation shall have been given to the Bank, except with respect to War, Strikes, Riots and Civil Commotions which are subject to cancellation upon forty-eight (48) hours' notice.

This agreement shall not extend the said policy to cover any additional risks, it being especially agreed that the policy does not insure against conversion, misappropriation or other dishonest acts committed by or on behalf of the named insured.  Also, this agreement is subject to the limits of liability named in the policy and to the conditions of any Value Reporting, Full Reporting, Total Insurance clauses incorporated therein or attached thereto, it being understood and agreed nevertheless that unintentional error or omission in the making of reports required of the named insured under this policy shall not prejudice the rights of the Bank to collect hereunder.

The underwriters further agree that nothing contained herein shall impose any liability on the  Bank for the payment of premiums.

494680

47

| Named Assured | | | End't Number |
|---|---|---|---|
| **TRI-MARINE INTERNATIONAL, INC.** | | | **5** |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| **Indemnity Insurance Company of North America** | **494680** | | **01/01/2008** |

## BANK ENDORSEMENT

It is hereby understood and agreed that

     **Standard Chartered Bank**
     **6 Battery Road**
     **#07-00**
     **Singapore 049909**

Hereinafter called the Bank, now has or will have delivered to it from time to time title to or control of certain merchandise insured under this policy; or otherwise has or will have an insurable interest therein and that the Bank will be recognized as an insured under this policy in connection with any loss of or damage to such merchandise for which it shall hold warehouse receipts, bills of lading or other evidence of title or control or in the case of property not represented by such documents in which it shall have an insurable interest evidenced by written entry on the records of the Bank, and that payment for any loss of or damage to such merchandise shall be made jointly to both the Bank and the Assured, to the extent of the Bank's insurable interest therein.

This policy shall not be canceled nor materially changed as to the interest of the Bank unless ten (10) days' written notice of such change or cancellation shall have been given to the Bank, except with respect to War, Strikes, Riots and Civil Commotions which are subject to cancellation upon forty-eight (48) hours' notice.

This agreement shall not extend the said policy to cover any additional risks, it being especially agreed that the policy does not insure against conversion, misappropriation or other dishonest acts committed by or on behalf of the named insured.  Also, this agreement is subject to the limits of liability named in the policy and to the conditions of any Value Reporting, Full Reporting, Total Insurance clauses incorporated therein or attached thereto, it being understood and agreed nevertheless that unintentional error or omission in the making of reports required of the named insured under this policy shall not prejudice the rights of the Bank to collect hereunder.

The underwriters further agree that nothing contained herein shall impose any liability on the  Bank for the payment of premiums.

| Named Assured **TRI-MARINE INTERNATIONAL, INC.** | | | End't Number **6** |
|---|---|---|---|
| Insurance Company **Indemnity Insurance Company of North America** | Policy No. **494680** | Sec. | End't Eff. Date **02/06/2008** |

### REVISED WAREHOUSE SCHEDULE

In consideration of an additional premium of __$4,433__ it is hereby understood and agreed that the following are scheduled warehouses under the subject policy:

| Number | Address | Limit of Liability | Rate per $100 |
|---|---|---|---|
| 1 | Tri-Marine Fish Company 220 Cannery Street Terminal Island, CA USA | $1,000,000 | Included in Deposit |
| 2 | Tri-Marine International (office) 10500 NE 8th Street Bellevue, WA 98004 USA | $50,000 | Included in Deposit |
| 3 | Inland Cold Storage 4100 Bandini Ave. Los Angeles, CA USA | $100,000 | Included in Deposit |
| 4 | Union Ice 901 East E Street Wilmington CA USA | $400,000 | Included in Deposit |
| 5 | Soltai Fishing & Processing Ltd. Noro Base, Noro, Western Province, Solomon Islands | $4,000,000 | Included in Deposit |
| 6 | Wanainchi Marine Products (K) Ltd. Liwatoni Fisheries Complex Liwatoni Road, Mombasa Kenya | $4,000,000 | Included in Deposit |
| 7 | Magazzini Generali E Frigoriferi Sodele S.R.L. Via XXV Aprile Ovest, 10 42049 Sant' Ilarrio d'Enza– Reggio Emilia – Italy | $8,000,000 | Included in Deposit |
| 8 | Fridocks-Maggazzini Generali E Frigoriferi S.P.A. S.S. 211 Della Limellina Km 15068 Pozzolo Formigaro-Alessandria – Italy | $16,000,000 increased from $12,000,000 02/06/2008 | Included in Deposit |
| 9 | Seafman C.A. – Sociedad Ecuatoriana de Alimentos y Frogorificos Manta C.A. Calle 124 y Ave. 102 Los Esteros, Manta – Ecuador | $8,000,000 | Included in Deposit |

494680

49

| Number | Address | Limit of Liability | Rate per $100 |
|--------|---------|-------------------|---------------|
| 10 | GRALCO S.A.<br>Calle 1 era. 38-121 Zona Industrial<br>Barranquilla,<br>Colombia | $4,000,000 | Included in Deposit |
| 11 | ATUNEC S.A.<br>Zona Franca de Barranquilla,<br>Lote 13,<br>Barranquilla,<br>Colombia | $4,000,000 | Included in Deposit |
| 12 | Eurofish S.A.<br>Urbanizacion Arroyo Azul,<br>Manta,<br>Ecuador | $2,000,000 | Included in Deposit |
| 13 | Austral Group S.A.A.<br>Av. Victor Andres Belaunde 147,<br>Torre 7,<br>Lima 27,<br>Peru | $2,000,000 | Included in Deposit |
| 14 | Yi Yang Cold Storage<br>Zhejiang E.C.S. Foods Co., Ltd.<br>JiangKou, Fenghua, Ningbo<br>Zhejiang Province, 315504<br>China [3] | $1,000,000 | Included in Deposit |
| 15 | Todayfood Cold Storage<br>Ningbo today Food Co., Ltd.<br>No. 38 Zhongxing East Road, Xikou,<br>Ningbo,<br>China [1] | $2,000,000 | Included in Deposit |
| 16 | Any one unnamed warehouse [4] | $1,000,000 | Included in Deposit |

End't Number 6, Effective 02/06/2008          TRI-MARINE INTERNATIONAL, INC.

*Alma F. Bailey*

_____

**Authorized Signature**

---

[3] China warehouses are lawfully required to be insured by a Chinese insurance company.  ACE has ownership in Huatai Insurance Company of China Ltd. which insures the storage risk.  This policy extends with DIC to match  the balance of the Cargo program.
[4] For the catastrophic perils of Earthquake, Flood and Named Windstorm, Unnamed locations are capped at $2,000,000 in the annual aggregate.

494680

| Named Assured | | | End't Number |
|---|---|---|---|
| **TRI-MARINE INTERNATIONAL, INC.** | | | 7 |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| **Indemnity Insurance Company of North America** | **494680** | | **05/13/2008** |

### REVISED WAREHOUSE SCHEDULE

In consideration of an additional premium of ___$50,000___ it is hereby understood and agreed that the following are scheduled warehouses under the subject policy:

| Number | Address | Limit of Liability | Rate per $100 |
|---|---|---|---|
| 1 | Tri-Marine Fish Company<br>220 Cannery Street<br>Terminal Island, CA USA | $1,000,000 | Included in Deposit |
| 2 | Tri-Marine International (office)<br>10500 NE 8th Street<br>Bellevue, WA 98004 USA | $50,000 | Included in Deposit |
| 3 | Inland Cold Storage<br>4100 Bandini Ave.<br>Los Angeles, CA USA | $100,000 | Included in Deposit |
| 4 | Union Ice<br>901 East E Street<br>Wilmington CA USA | $400,000 | Included in Deposit |
| 5 | Soltai Fishing & Processing Ltd.<br>Noro Base,<br>Noro, Western Province,<br>Solomon Islands | $4,000,000 | Included in Deposit |
| 6 | Wanainchi Marine Products (K) Ltd.<br>Liwatoni Fisheries Complex<br>Liwatoni Road, Mombasa<br>Kenya | $4,000,000 | Included in Deposit |
| 7 | Magazzini Generali E Frigoriferi<br>Sodele S.R.L.<br>Via XXV Aprile Ovest, 10<br>42049 Sant' Ilarrio d'Enza-<br>Reggio Emilia – Italy | $8,000,000 | Included in Deposit |
| 8 | Fridocks-Maggazzini Conerali E<br>Frigoriferi S.P.A.<br>S.S. 211 Della Limellina Km<br>15068 Pozzolo Formigaro-<br>Alessandria – Italy | $16,000,000<br>increased from<br>$12,000,000<br>02/06/2008 | Included in Deposit |
| 9 | Seafman C.A. – Sociedad<br>Ecuatoriana de Alimentos y<br>Frogorificos Manta C.A.<br>Calle 124 y Ave. 102 Los Esteros,<br>Manta – Ecuador | $8,000,000 | Included in Deposit |

494680

51

End't Number 7, Effective 05/13/2008                    TRI-MARINE INTERNATIONAL, INC.

| Number | Address | Limit of Liability | Rate per $100 |
|---|---|---|---|
| 10 | GRALCO S.A.<br>Calle 1 era. 38-121 Zona Industrial<br>Barranquilla,<br>Colombia | $4,000,000 | Included in Deposit |
| 11 | ATUNEC S.A.<br>Zona Franca de Barranquilla,<br>Lote 13,<br>Barranquilla,<br>Colombia | $4,000,000 | Included in Deposit |
| 12 | Eurofish S.A.<br>Urbanizacion Arroyo Azul,<br>Manta,<br>Ecuador | $2,000,000 | Included in Deposit |
| 13 | Austral Group S.A.A.<br>Av. Victor Andres Belaunde 147,<br>Torre 7,<br>Lima 27,<br>Peru | $2,000,000 | Included in Deposit |
| 14 | Yi Yang Cold Storage<br>Zhejiang E.C.S. Foods Co., Ltd.<br>JiangKou, Fenghua, Ningbo<br>Zhejiang Province, 315504<br>China [5] | $1,000,000 | Included in Deposit |
| 15 | Todayfood Cold Storage<br>Ningbo today Food Co., Ltd.<br>No. 38 Zhongxing East Road, Xikou,<br>Ningbo,<br>China | $2,000,000 | Included in Deposit |
| 16 | Froid des Mascareignes ltd<br>Freeport Zone No. 8<br>Quay D Road<br>Port Louis<br>Mauritius | $14,000,000<br>added 04/21/2008 | |
| 17 | Mauritius Freeport Development Company Ltd.<br>Freeport Zone 5<br>Mer Rouge<br>Port Louis<br>Mauritius | $14,000,000<br>added 04/21/2008 | |

---

[5] China warehouses are lawfully required to be insured by a Chinese insurance company.  ACE has ownership in Huatai Insurance Company of China Ltd. which insures the storage risk.  This policy extends with DIC to match  the balance of the Cargo program.

494680                                          52

End't Number 7, Effective 05/13/2008                TRI-MARINE INTERNATIONAL, INC.

| Number | Address | Limit of Liability | Rate per $100 |
|--------|---------|--------------------|----------------|
|        | Any one unnamed warehouse [6] | $1,000,000 | Included in Deposit |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

*Alma F. Bailey*

_____
**Authorized Signature**

---

[6] For the catastrophic perils of Earthquake, Flood and Named Windstorm, Unnamed locations are capped at $2,000,000 in the annual aggregate.

494680                                        53

| Named Assured | | | End't Number |
|---|---|---|---|
| **TRI-MARINE INTERNATIONAL, INC.** | | | **8** |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| **Indemnity Insurance Company of North America** | **494680** | | **07/01/2008** |

### REVISED WAREHOUSE SCHEDULE

In consideration of a return premium of ___$25,000___ it is hereby understood and agreed that the following are scheduled warehouses under the subject policy:

| Number | Address | Limit of Liability | Rate per $100 |
|---|---|---|---|
| 1 | Tri-Marine Fish Company<br>220 Cannery Street<br>Terminal Island, CA USA | $1,000,000 | Included in Deposit |
| 2 | Tri-Marine International (office)<br>10500 NE 8th Street<br>Bellevue, WA 98004 USA | $50,000 | Included in Deposit |
| 3 | Inland Cold Storage<br>4100 Bandini Ave.<br>Los Angeles, CA USA | $100,000 | Included in Deposit |
| 4 | Union Ice<br>901 East E Street<br>Wilmington CA USA | $400,000 | Included in Deposit |
| 5 | Soltai Fishing & Processing Ltd.<br>Noro Base,<br>Noro, Western Province,<br>Solomon Islands | $4,000,000 | Included in Deposit |
| 6 | Wanainchi Marine Products (K) Ltd.<br>Liwatoni Fisheries Complex<br>Liwatoni Road, Mombasa<br>Kenya | $4,000,000 | Included in Deposit |
| 7 | Magazzini Generali E Frigoriferi<br>Sodele S.R.L.<br>Via XXV Aprile Ovest, 10<br>42049 Sant' Ilarrio d'Enza-<br>Reggio Emilia – Italy | $8,000,000 | Included in Deposit |
| 8 | Fridocks-Maggazzini Generali E<br>Frigoriferi S.P.A.<br>S.S. 211 Della Limellina Km<br>15068 Pozzolo Formigaro-<br>Alessandria – Italy | $16,000,000<br>increased from<br>$12,000,000<br>02/06/2008 | Included in Deposit |
| 9 | Seafman C.A. – Sociedad<br>Ecuatoriana de Alimentos y<br>Frogorificos Manta C.A.<br>Calle 124 y Ave. 102 Los Esteros,<br>Manta – Ecuador | $8,000,000 | Included in Deposit |

494680

End't Number 8, Effective 07/01/2008                 TRI-MARINE INTERNATIONAL, INC.

| Number | Address | Limit of Liability | Rate per $100 |
|--------|---------|--------------------|---------------|
| 10 | GRALCO S.A.<br>Calle 1 era. 38-121 Zona Industrial<br>Barranquilla,<br>Colombia | $4,000,000 | Included in Deposit |
| 11 | ATUNEC S.A.<br>Zona Franca de Barranquilla,<br>Lote 13,<br>Barranquilla,<br>Colombia | $4,000,000 | Included in Deposit |
| 12 | Eurofish S.A.<br>Urbanizacion Arroyo Azul,<br>Manta,<br>Ecuador | $2,000,000 | Included in Deposit |
| 13 | Austral Group S.A.A.<br>Av. Victor Andres Belaunde 147,<br>Torre 7,<br>Lima 27,<br>Peru | $2,000,000 | Included in Deposit |
| 14 | Yi Yang Cold Storage<br>Zhejiang E.C.S. Foods Co., Ltd.<br>JiangKou, Fenghua, Ningbo<br>Zhejiang Province, 315504<br>China [7] | $1,000,000 | Included in Deposit |
| 15 | Todayfood Cold Storage<br>Ningbo today Food Co., Ltd.<br>No. 38 Zhongxing East Road, Xikou,<br>Ningbo,<br>China | $2,000,000 | Included in Deposit |
| 16 | Froid des Mascareignes ltd<br>Freeport Zone No. 8<br>Quay D Road<br>Port Louis<br>Mauritius | $4,000,000<br>amended<br>07/01/2008<br>$14,000,000<br>added 04/21/2008 | |
| 17 | Mauritius Freeport Development Company Ltd.<br>Freeport Zone 5<br>Mer Rouge<br>Port Louis<br>Mauritius | $4,000,000<br>amended<br>07/01/2008<br>$14,000,000<br>added 04/21/2008 | |

[7] China warehouses are lawfully required to be insured by a Chinese insurance company.  ACE has ownership in Huatai Insurance Company of China Ltd. which insures the storage risk.  This policy extends with DIC to match the balance of the Cargo program.

494680                                          55

**End't Number 8, Effective 07/01/2008**                    **TRI-MARINE INTERNATIONAL, INC.**

| Number | Address | Limit of Liability | Rate per $100 |
|--------|---------|--------------------|---------------|
|        | Any one unnamed warehouse [8] | $1,000,000 | Included in Deposit |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____

**Authorized Signature**

---

[8] For the catastrophic perils of Earthquake, Flood and Named Windstorm, Unnamed locations are capped at $2,000,000 in the annual aggregate.

494680                                    56

| Named Assured | | | End't Number |
|---|---|---|---|
| **TRI-MARINE INTERNATIONAL, INC.** | | | **9** |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| **Indemnity Insurance Company of North America** | **494680** | | **01/01/2008** |

Effective with respect to all shipments made on or after January 1, 2008, the following Vessel Classification Clause is added to the policy hereunder and cancels and replaces all previously issued Classification Clauses:

### VESSEL CLASSIFICATION CLAUSE

Per regular line steamers or motor vessels operating in their regular trade as per this company's vessel classification, also per metal-hulled, self-propelled vessels not over 20 years of age nor less than 1,000 net registered tons and classed A-1 American Record or 100 A-1 Lloyds' Register or equivalent; or

Vessels over 20 years of age which are approved by this Company and are not less than 1,000 net registered tons, and only while operating in their regular trade.

But in either case excluding:

(A)     Vessels built for service on the Great Lakes;

(B)     Vessels built for military or naval service;

(C)     Vessels engaged in the carriage of dry bulk or liquid bulk cargos, and which are over 20 years of age, unless specifically approved by this Company.


**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**


_____
**Authorized Signature**

| Named Assured | | | | End't Number |
|---|---|---|---|---|
| **TRI-MARINE INTERNATIONAL, INC.** | | | | **10** |
| Insurance Company | | Policy No. | Sec. | End't Eff. Date |
| **Indemnity Insurance Company of North America** | | **494680** | | **08/14/2008** |

Effective August 14, 2008 Clause 61. is amended to read:

**STEAMER PENALTIES**

61. As a condition of this insurance, the Assured agrees to keep accurate records of the vessels used to transport their goods, and will pay such additional premium as may be required for vessels that do not meet the criteria set forth on the rate schedule attached to this policy.

**Penalty Rates:**

| Vessel Ages | Rate per $100 |
|---|---|
| 21 to 25 years | .10 |
| 26 years and older | .15 |
| M/V "Kai Yuan" | .30 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____
**Authorized Signature**

494680

58

| Named Assured<br>**TRI-MARINE INTERNATIONAL, INC.** | | | End't Number<br>**11** |
|---|---|---|---|
| Insurance Company<br>**Indemnity Insurance Company of North America** | Policy No.<br>**494680** | Sec. | End't Eff. Date<br>**10/01/2008** |

## ASSURED

Effective October 1, 2008 the following is added as an Assured:

Tri-Marine Management Company LLC

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____
**Authorized Signature**

494680                                       59

| Named Assured | | | End't Number |
|---|---|---|---|
| **TRI-MARINE INTERNATIONAL, INC.** | | | **12** |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| **Indemnity Insurance Company of North America** | **494680** | | **10/24/2008** |

### REVISED WAREHOUSE SCHEDULE

In consideration of an additional premium of **$2,790** it is hereby understood and agreed that the following are scheduled warehouses under the subject policy:

| Number | Address | Limit of Liability | Rate per $100 |
|---|---|---|---|
| 1 | Tri-Marine Fish Company<br>220 Cannery Street<br>Terminal Island, CA USA | $1,000,000 | Included in Deposit |
| 2 | Tri-Marine International (office)<br>10500 NE 8th Street<br>Bellevue, WA 98004 USA | $50,000 | Included in Deposit |
| 3 | Inland Cold Storage<br>4100 Bandini Ave.<br>Los Angeles, CA USA | $100,000 | Included in Deposit |
| 4 | Union Ice<br>901 East E Street<br>Wilmington CA USA | $400,000 | Included in Deposit |
| 5 | Soltai Fishing & Processing Ltd.<br>Noro Base,<br>Noro, Western Province,<br>Solomon Islands | $4,000,000 | Included in Deposit |
| 6 | Wanainchi Marine Products (K) Ltd.<br>Liwatoni Fisheries Complex<br>Liwatoni Road, Mombasa<br>Kenya | $4,000,000 | Included in Deposit |
| 7 | Magazzini Generali E Frigoriferi<br>Sodele S.R.L.<br>Via XXV Aprile Ovest, 10<br>42049 Sant' Ilarrio d'Enza-<br>Reggio Emilia – Italy | $8,000,000 | Included in Deposit |
| 8 | Fridocks-Maggazzini Generali E<br>Frigoriferi S.P.A.<br>S.S. 211 Della Limellina Km<br>15068 Pozzolo Formigaro-<br>Alessandria – Italy | $16,000,000<br>increased from<br>$12,000,000<br>02/06/2008 | Included in Deposit |
| 9 | Seafman C.A. – Sociedad<br>Ecuatoriana de Alimentos y<br>Frogorificos Manta C.A.<br>Calle 124 y Ave. 102 Los Esteros,<br>Manta – Ecuador | $8,000,000 | Included in Deposit |

494680

End't Number 12, Effective 11/01/2008                    **TRI-MARINE INTERNATIONAL, INC.**

| Number | Address | Limit of Liability | Rate per $100 |
|---|---|---|---|
| 10 | GRALCO S.A.<br>Calle 1 era. 38-121 Zona Industrial<br>Barranquilla,<br>Colombia | $4,000,000 | Included in Deposit |
| 11 | ATUNEC S.A.<br>Zona Franca de Barranquilla,<br>Lote 13,<br>Barranquilla,<br>Colombia | $4,000,000 | Included in Deposit |
| 12 | Eurofish S.A.<br>Urbanizacion Arroyo Azul,<br>Manta,<br>Ecuador | $2,000,000 | Included in Deposit |
| 13 | Austral Group S.A.A.<br>Av. Victor Andres Belaunde 147,<br>Torre 7,<br>Lima 27,<br>Peru | $2,000,000 | Included in Deposit |
| 14 | Yi Yang Cold Storage<br>Zhejiang E.C.S. Foods Co., Ltd.<br>JiangKou, Fenghua, Ningbo<br>Zhejiang Province, 315504<br>China [9] | $1,000,000 | Included in Deposit |
| 15 | Todayfood Cold Storage<br>Ningbo today Food Co., Ltd.<br>No. 38 Zhongxing East Road, Xikou,<br>Ningbo,<br>China | $2,000,000 | Included in Deposit |
| 16 | Froid des Mascareignes ltd<br>Freeport Zone No. 8<br>Quay D Road<br>Port Louis<br>Mauritius | $4,000,000 amended 07/01/2008 $14,000,000 added 04/21/2008 | |
| 17 | Mauritius Freeport Development Company Ltd.<br>Freeport Zone 5<br>Mer Rouge<br>Port Louis<br>Mauritius | $4,000,000 amended 07/01/2008 $14,000,000 added 04/21/2008 | |

---

[9] China warehouses are lawfully required to be insured by a Chinese insurance company.  ACE has ownership in Huatai Insurance Company of China Ltd. which insures the storage risk.  This policy extends with DIC to match  the balance of the Cargo program.

494680                                                       61

End't Number 12, Effective 11/01/2008                    TRI-MARINE INTERNATIONAL, INC.

| Number | Address | Limit of Liability | Rate per $100 |
|--------|---------|--------------------|----------------|
| 18 | Fridocks, Frigoriferi di Castelventro Piacentino S.R.L. Via Mascherpa, 10 Localita' Vallone 29010 Castelventro Piacentino | **$12,000,000 added 10/24/2008** | |
| | | | |
| | Any one unnamed warehouse [10] | $1,000,000 | Included in Deposit |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____

Authorized Signature

----

[10] For the catastrophic perils of Earthquake, Flood and Named Windstorm, Unnamed locations are capped at $2,000,000 in the annual aggregate.

494680                                    62

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>13 |
|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680 | Sec. | End't Eff. Date<br>11/17/2008 |

### REVISED WAREHOUSE SCHEDULE

In consideration of an return premium of __$363__ it is hereby understood and agreed that the following are scheduled warehouses under the subject policy:

| Number | Address | Limit of Liability |
|---|---|---|
| 1 | Tri-Marine Fish Company<br>220 Cannery Street<br>Terminal Island, CA USA | $1,000,000 |
| 2 | Tri-Marine International  (office)<br>10500 NE 8th Street<br>Bellevue, WA 98004 USA | $50,000 |
| 3 | Inland Cold Storage<br>4100 Bandini Ave.<br>Los Angeles, CA USA | $100,000 |
| 4 | Union Ice<br>901 East E Street<br>Wilmington CA USA | $400,000 |
| 5 | Soltai Fishing & Processing Ltd.<br>Noro Base,<br>Noro, Western Province,<br>Solomon Islands | $4,000,000 |
| 6 | Wanainchi Marine Products (K) Ltd.<br>Liwatoni Fisheries Complex<br>Liwatoni Road, Mombasa<br>Kenya | $4,000,000 |
| 7 | Magazzini Generali E Frigoriferi Sodele S.R.L.<br>Via XXV Aprile Ovest, 10, 42049 Sant' Ilarrio d'Enza<br>Reggio Emilia, Italy | $8,000,000 |
| 8 | Fridocks-Maggazzini Generali E Frigoriferi S.P.A.<br>S.S. 211 Della Limellina Km, 15068 Pozzolo Formigaro<br>Alessandria, Italy | $16,000,000<br>increased from<br>$12,000,000<br>02/06/2008 |
| 9 | Seafman C.A. – Sociedad Ecuatoriana de Alimentos y<br>Frogorificos Manta C.A.<br>Calle 124 y Ave. 102 Los Esteros,, Manta, Ecuador | $8,000,000 |
| 10 | GRALCO S.A.<br>Calle 1 era. 38-121 Zona Industrial, Barranquilla,Colombia | $4,000,000 |
| 11 | ATUNEC S.A.<br>Zona Franca de Barranquilla, Lote 13, Barranquilla,<br>Colombia | $1,000,000<br>decreased from<br>$4,000,000<br>11/17/2008 |
| 12 | Eurofish S.A.<br>Urbanizacion Arroyo Azul,<br>Manta,<br>Ecuador | $2,000,000 |

End't Number 13, Effective 11/17/2008                    TRI-MARINE INTERNATIONAL, INC.

| 13 | Austral Group S.A.A.<br>Av. Victor Andres Belaunde 147, Torre 7, Lima 27, Peru | $1,000,000<br>decreased from<br>$2,000,000<br>11/17/2008 |
|----|---|---|
| 14 | Yi Yang Cold Storage<br>Zhejiang E.C.S. Foods Co., Ltd.<br>JiangKou, Fenghua, Ningbo, Zhejiang Province, 315504<br>China [11] | Deleted 11/17/2008<br>$1,000,000 |
| 15 | Todayfood Cold Storage<br>Ningbo today Food Co., Ltd.<br>No. 38 Zhongxing East Road, Xikou,, Ningbo,<br>China | $2,000,000 |
| 16 | Froid des Mascareignes ltd<br>Freeport Zone No. 8, Quay D Road, Port Louis<br>Mauritius | $4,000,000<br>amended<br>07/01/2008<br>$14,000,000<br>added 04/21/2008 |
| 17 | Mauritius Freeport Development Company Ltd.<br>Freeport Zone 5, Mer Rouge, Port Louis<br>Mauritius | $4,000,000<br>amended 07/01/2008<br>$14,000,000<br>added 04/21/2008 |
| 18 | Fridocks, Frigoriferi di Castelventro Piacentin.. S.R.L.<br>Via Mascherpa, 10, Localita' Vallone<br>29010 Castelventro Piacentir.⌐ | $12,000,000<br>added<br>11/01/2008 |
| 19 | Ningbo FengSheng Food Co<br>#10 Xingye Road, Free Trade East Zone, Ningbo, China | $2,500,000<br>added 11/17/2008 |
|    | Any one unnamed warehouse [12] | $1,000,000 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____

**Authorized Signature**

_____

[11] China warehouses are lawfully required to be insured by a Chinese insurance company. ACE has ownership in Huatai Insurance Company of China Ltd. which insures the storage risk. This policy extends with DIC to match the balance of the Cargo program.
[12] For the catastrophic perils of Earthquake, Flood and Named Windstorm, Unnamed locations are capped at $2,000,000 in the annual aggregate.

494680                                                  64

| Named Assured | | | | End't Number |
|---|---|---|---|---|
| **TRI-MARINE INTERNATIONAL, INC.** | | | | **14** |
| Insurance Company | | Policy No. | Sec. | End't Eff. Date |
| **Indemnity Insurance Company of North America** | | **494680/<br>WR494680** | | **01/01/2009** |

### DEPOSIT PREMIUM ENDORSEMENT

It is hereby understood and agreed that effective **January 1, 2009** these policies are continued in consideration of an annual deposit premium of **$552,620.00**.  This deposit is calculated at rates of **.085%** (Marine Policy) and **.015%** (War Policy) on estimated marine volume of **$530,000,000.00** plus $1,620.00 TRIA.

This deposit premium shall be due and payable as follows:
First Installment due January 1, 2009 is **$155,120** including:
       $132,500 Cargo premium installment
       $ 15,000 Capital Charges and Singapore Fees
       $  6,000 Admitted and Fronting Policies
       $  1,620 TRIA terrorism
Remaining quarterly installments in the amount of **$132,500.00 each** are due April 1, 2009, July 1, 2009 and October 1, 2009. On or before the 30th day following the anniversary date of this endorsement, the Assured agrees to submit to this Company or its agent the total marine volume coming within the terms of this policy during the policy year.

If the total net sales are greater than **105%** of the estimated values the total difference shall be paid to the Company by the Assured.  If the total net sales are less than **95%** of the estimated values the total difference shall be returned to the Assured by this Company.  For the purposes of the premium adjustment, it is understood and agreed that the gross annual insured net sales shall be deemed to be no more than US **$650,000,000.00**.  This premium cap shall be null and void if the loss ratio (loss and loss adjustment expenses divided by gross premium) for the term exceeds 70%.  Irrespective of earned premium falling short of the deposit, no portion of such minimum premium is refundable in the event of cancellation.

The annual deposit premium hereunder will be applied as follows:

| | Annual | 1st Installment<br>01/01/2009 | 2nd, 3rd & 4th<br>Installments<br>04/01/09, 07/01/09<br>& 10/01/09 |
|---|---|---|---|
| **Marine** | $450,500.00 | $112,625.00 | $112,625.00 |
| **Warehouse** | Included | Included | Included |
| **TRIA** | $ 1,620.00 | $1,620.00 | |
| **Inland Transit** | Included | Included | Included |
| **War** | $ 79,500.00 | $19,875.00 | $ 19,875.00 |
| **Admitted Policies &<br>Fronting Fees** | $21,000.00 | $21,000.00 | |
| **TOTAL** | **$552,620.00** | **$155,120.00** | **$132,500.00** |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAIN UNCHANGED.**

_____
**Authorized Signature**

494680

65

| Named Assured | | | End't Number |
|---|---|---|---|
| **TRI-MARINE INTERNATIONAL, INC.** | | | **15** |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| **Indemnity Insurance Company of North America** | **494680** | | **01/01/2009** |

### CHANGE ENDORSEMENT

Effective January 1, 2009 the following policy clauses are hereby amended:

### LIMIT OF LIABILITY

It is hereby understood and agreed that **Section I, Ocean Cargo, 11. Limit of Liability** is hereby amended:

      (f)     $750,000 in respect to bunker fuel in any once conveyance; except $1,000,000 MV Kai Yuan

### REJECTION INSURANCE ENDORSEMENT

It is hereby understood and agreed that **USFDA REJECTION APPROVED SUPPLIERS/ PACKERS** are per the schedule on file with the Company.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____

**Authorized Signature**

494680

66

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | | End't Number<br>16 |
|---|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | | Policy No.<br>4^4680 | Sec. | End't Eff. Date<br>01/01/2009 |

### REVISED WAREHOUSE SCHEDULE

It is hereby understood and agreed that, effective January 1, 2009, the following are scheduled warehouses under the subject policy:

| Number | Address | Limit of Liability |
|---|---|---|
| 1 | Tri-Marine Fish Company<br>220 Cannery Street<br>Terminal Island, CA USA | $ 1,000,000 |
| 2 | Tri-Marine International  (office)<br>10500 NE 8th Street<br>Bellevue, WA 98004 USA | $     50,000 |
| 3 | Inland Cold Storage<br>4100 Bandini Ave.<br>Los Angeles, CA USA | $    100,000 |
| 4 | Union Ice<br>901 East E Street<br>Wilmington CA USA | $    400,000 |
| 5 | Soltai Fishing & Processing Ltd.<br>Noro Base,<br>Noro, Western Province,<br>Solomon Islands | $ 4,000,000 |
| 6 | Wanainchi Marine Products (K) Ltd.<br>Liwatoni Fisheries Complex<br>Liwatoni Road, Mombasa<br>Kenya | $ 4,000,000 |
| 7 | Magazzini Generali E Frigoriferi Sodele S.R.L.<br>Via XXV Aprile Ovest, 10, 42049 Sant' Ilarrio d'Enza<br>Reggio Emilia, Italy | $ 6,000,000 |
| 8 | Fridocks-Maggazzini Generali E Frigoriferi S.P.A.<br>S.S. 211 Della Limellina Km, 15068 Pozzolo Formigaro<br>Alessandria, Italy | $12,000,000 |
| 9 | Seafman C.A. – Sociedad Ecuatoriana de Alimentos y<br>Frogorificos Manta C.A.<br>Calle 124 y Ave. 102 Los Esteros,, Manta, Ecuador | $ 6,000,000 |
| 10 | GRALCO S.A.<br>Calle 1 era. 38-121 Zona Industrial, Barranquilla,Colombia | $ 4,000,000 |
| 11· | ATUNEC S.A.<br>Zona Franca de Barranquilla, Lote 13, Barranquilla,<br>Colombia | $ 1,000,000 |
| 12 | Eurofish S.A.<br>Urbanizacion Arroyo Azul,<br>Manta,<br>Ecuador | $ 1,000,000 |

494680

67

**End't Number 16, Effective 01/01/2009**                    **TRI-MARINE INTERNATIONAL, INC.**

| Number | Address | Limit of Liability |
|--------|---------|--------------------|
| 13 | Ningbo FengSheng Food Co<br>#10 Xingye Road, Free Trade East Zone,<br>Ningbo, China | $ 2,500,000 |
| 14 | Todayfood Cold Storage<br>Ningbo today Food Co., Ltd.<br>No. 38 Zhongxing East Road, Xikou,, Ningbo,<br>China | $ 2,000,000 |
| 15 | Froid des Mascareignes ltd<br>Freeport Zone No. 8, Quay D Road, Port Louis<br>Mauritius | $ 5,000,000 |
| 16 | Mauritius Freeport Development Company Ltd.<br>Freeport Zone 5, Mer Rouge, Port Louis<br>Mauritius | $ 2,000,000 |
| 17 | Fridocks, Frigoriferi di Castelventro Piacentino S.R.L.<br>Via Mascherpa, 10, Localita' Vallone<br>29010 Castelventro Piacentino | $ 9,000,000 |
|  |  |  |
|  | Any one unnamed warehouse [13] | $1,000,000 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____
**Authorized Signature**

---

[13] For the catastrophic perils of Earthquake, Flood and Named Windstorm, Unnamed locations are capped at $2,000,000 in the annual aggregate.

494680                                    68

| Named Assured<br>**TRI-MARINE INTERNATIONAL, INC.** | | | End't Number<br>**17** |
|---|---|---|---|
| Insurance Company<br>**Indemnity Insurance Company of North America** | Policy No.<br>**494680/<br>WR494680** | Sec. | End't Eff. Date<br>**01/01/09** |

### STEAMER ADDITIONALS FOR OVER-AGE AND UNDER-TONNAGE VESSELS

In accordance with the Provisions of Clause 61. (endorsement 10) hereunder the Steamer Additionals for the over-age and under tonnage vessels for the Policy year 2008-2009 are as follows and an additional premium of **$107,332.29** is due and payable.

| Insured Values | Rate per $100 | Premium |
|---|---|---|
| $ 46,815,190.68 | .10 | $ 46,815.19 |
| $ 15,048,055.11 | .15 | $ 32,106.42 |
| $ 9,470,227.70 | .30 | $ 28,410.68 |
| | **Total Additional Premium** | **$107,332.29** |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____

**Authorized Signature**

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>18 |
|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680/<br>WR494680 | Sec. | End't Eff. Date<br>01/01/2009 |

## AUDIT ENDORSEMENT

In consideration of a Total Additional Premium of **$47,500** the audit adjustment for January 1, 2008 to January 1, 2009 is:

|  | Marine | War | Total |
|---|---|---|---|
| Sales | $650,000,000* | $650,000,000* | $650,000,000* |
| Rate | .08% | .015% | .095% |
| Premium | $    520,000 | $    97,500 | $617,500 |
| Deposit | $    480,000 | $    90,000 | $570,000 |
|  |  |  |  |
| **Additional Premium Due** | $    40,000 | $    7,500 | **$47,500** |

*Actual Sales $732,487,315 subject to $650,000,000 premium cap per endorsement 1 dated 01/01/2008

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____
**Per Indemnity Insurance Company of North America**

494680

70

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>19 |
|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680 | Sec. | End't Eff. Date<br>01/01/2008 |

## BANK ENDORSEMENT

It is hereby understood and agreed that endorsement 4 of this policy is amended as follows:

> **First Commercial Bank Singapore Branch**
> **77 Robinson Road**
> **#01-01**
> **Singapore 068896**

Hereinafter called the Bank, now has or will have delivered to it from time to time title to or control of certain merchandise insured under this policy; or otherwise has or will have an insurable interest therein and that the Bank will be recognized as an insured under this policy in connection with any loss of or damage to such merchandise for which it shall hold warehouse receipts, bills of lading or other evidence of title or control or in the case of property not represented by such documents in which it shall have an insurable interest evidenced by written entry on the records of the Bank, and that payment for any loss of or damage to such merchandise shall be made jointly to both the Bank and the Assured, to the extent of the Bank's insurable interest therein.

This policy shall not be canceled nor materially changed as to the interest of the Bank unless ten (10) days' written notice of such change or cancellation shall have been given to the Bank, except with respect to War, Strikes, Riots and Civil Commotions which are subject to cancellation upon forty-eight (48) hours' notice.

This agreement shall not extend the said policy to cover any additional risks, it being especially agreed that the policy does not insure against conversion, misappropriation or other dishonest acts committed by or on behalf of the named insured. Also, this agreement is subject to the limits of liability named in the policy and to the conditions of any Value Reporting, Full Reporting, Total Insurance clauses incorporated therein or attached thereto, it being understood and agreed nevertheless that unintentional error or omission in the making of reports required of the named insured under this policy shall not prejudice the rights of the Bank to collect hereunder.

The underwriters further agree that nothing contained herein shall impose any liability on the  Bank for the payment of premiums.

## ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.

_____
**Authorized Signature**

494680                                             71

| Named Assured<br>**TRI-MARINE INTERNATIONAL, INC.** | | | End't Number<br>**20** |
|---|---|---|---|
| Insurance Company<br>**Indemnity Insurance Company of North America** | Policy No.<br>**49 ˙580** | Sec. | End't Eff. Date<br>**01/01/2008** |

## BANK ENDORSEMENT

It is hereby understood and agreed that

> **Comerica Bank**
> **75 East Trimble Road**
> **MC4776**
> **San Jose CA 95131**

Hereinafter called the Bank, now has or will have delivered to it from time to time title to or control of certain merchandise insured under this policy; or otherwise has or will have an insurable interest therein and that the Bank will be recognized as an insured under this policy in connection with any loss of or damage to such merchandise for which it shall hold warehouse receipts, bills of lading or other evidence of title or control or in the case of property not represented by such documents in which it shall have an insurable interest evidenced by written entry on the records of the Bank, and that payment for any loss of or damage to such merchandise shall be made jointly to both the Bank and the Assured, to the extent of the Bank's insurable interest therein.

This policy shall not be canceled nor materially changed as to the interest of the Bank unless ten (10) days' written notice of such change or cancellation shall have been given to the Bank, except with respect to War, Strikes, Riots and Civil Commotions which are subject to cancellation upon forty-eight (48) hours' notice.

This agreement shall not extend the said policy to cover any additional risks, it being especially agreed that the policy does not insure against conversion, misappropriation or other dishonest acts committed by or on behalf of the named insured.  Also, this agreement is subject to the limits of liability named in the policy and to the conditions of any Value Reporting, Full Reporting, Total Insurance clauses incorporated therein or attached thereto, it being understood and agreed nevertheless that unintentional error or omission in the making of reports required of the named insured under this policy shall not prejudice the rights of the Bank to collect hereunder.

The underwriters further agree that nothing contained herein shall impose any liability on the  Bank for the payment of premiums.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

---

**Authorized Signature**

72

| Named Assured | | | End't Number |
|---|---|---|---|
| **TRI-MARINE INTERNATIONAL, INC.** | | | **21** |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| **Indemnity Insurance Company of North America** | **494680/ WR494680** | | **01/01/2009** |

### ADJUSTMENT ENDORSEMENT

It is hereby understood and agreed that the Profit Share calculation effective for the policy term January 1, 2008 to January 1, 2009 is:

| | | |
|---|---|---|
| Gross Premium: | $ | 617,500.00 |
| Less War Premium: | $ | 97,500.00 |
| Less TRIA Premium: | $ | 1,755.00 |
| Gross Marine Premium | $ | 518,245.00 |
| Less 50% of Gross Marine Premium: | $ | 259,122.50 |
| Net Marine Premium: | $ | 259,122.50 |
| Less Paid & Outstanding Losses: | $ | 411,608.00 |
| Balance: | $ | 0.00 |
| Less 50% for Assurer's Account: | $ | 0.00 |
| Balance for Assured's Account: | $ | 0.00 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____
**Per Indemnity Insurance Company of North America**

494680

73

| Named Assured<br>**TRI-MARINE INTERNATIONAL, INC.** | | | End't Number<br>**22** |
|---|---|---|---|
| Insurance Company<br>**Indemnity Insurance Company of North America** | Policy No.<br>**494680/**<br>**WR494680** | Sec. | End't Eff. Date<br>**01/01/2009** |

### ADJUSTMENT ENDORSEMENT

It is hereby understood and agreed that the Profit Share calculation effective for the policy term January 1, 2008 to January 1, 2009 is amended. Endorsement # 21 is deleted and replaced by this Endorsement 22:

| | |
|---|---|
| Gross Premium: | $   758,312.29 |
| Less War Premium: | $     90,000.00 |
| Less TRIA Premium: | $       1,620.00 |
| | |
| Gross Marine Premium | $   666,692.29 |
| | |
| Less 50% of Gross Marine Premium: | $   333,346.15 |
| | |
| Net Marine Premium: | $   333,346.14 |
| Less Paid & Outstanding Losses: | $     89,829.00 |
| | |
| Balance: | $   243,517.14 |
| Less 50% for Assurer's Account: | $   121,758.57 |
| | |
| Balance for Assured's Account: | $   121,758.57 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____

**Per Indemnity Insurance Company of North America**

| Named Assured<br>**TRI-MARINE INTERNATIONAL, INC.** | | | End't Number<br>**23** |
|---|---|---|---|
| Insurance Company<br>**Indemnity Insurance Company of North America** | Policy No.<br>**494680** | Sec. | End't Eff. Date<br>**10/12/2009** |

### REVISED WAREHOUSE SCHEDULE

In consideration of **$263  additional premium**, it is hereby understood and agreed that, effective October 12, 2009, the following are scheduled warehouses under the subject policy:

| Number | Address | Limit of Liability |
|---|---|---|
| 1 | Tri-Marine Fish Company<br>220 Cannery Street<br>Terminal Island, CA USA | $ 1,000,000 |
| 2 | Tri-Marine International  (office)<br>10500 NE 8th Street<br>Bellevue, WA 98004 USA | $     50,000 |
| 3 | Inland Cold Storage<br>4100 Bandini Ave.<br>Los Angeles, CA USA | $    100,000 |
| 4 | Union Ice<br>901 East E Street<br>Wilmington CA USA | $    400,000 |
| 5 | Soltai Fishing & Processing Ltd.<br>Noro Base,<br>Noro, Western Province,<br>Solomon Islands | $ 4,000,000 |
| 6 | Wanainchi Marine Products (K) Ltd.<br>Liwatoni Fisheries Complex<br>Liwatoni Road, Mombasa<br>Kenya | $ 4,000,000 |
| 7 | Magazzini Generali E Frigoriferi Sodele S.R.L.<br>Via XXV Aprile Ovest, 10, 42049 Sant' Ilarrio o'Enza<br>Reggio Emilia, Italy | $ 6,000,000 |
| 8 | Fridocks-Maggazzini Generali E Frigoriferi S.P.A.<br>S.S. 211 Della Limellina Km, 15068 Pozzolo Formigaro<br>Alessandria, Italy | $12,000,000 |
| 9 | Seafman C.A. – Sociedad Ecuatoriana de Alimentos y<br>Frogorificos Manta C.A.<br>Calle 124 y Ave. 102 Los Esteros,, Manta, Ecuador | $ 6,000,000 |
| 10 | GRALCO S.A.<br>Calle 1 era. 38-121 Zona Industrial, Barranquilla,Colombia | $ 4,000,000 |
| 11 | ATUNEC S.A.<br>Zona Franca de Barranquilla, Lote 13, Barranquilla,<br>Colombia | $ 1,000,000 |
| 12 | Eurofish S.A.<br>Urbanizacion Arroyo Azul,<br>Manta,<br>Ecuador | $ 1,000,000 |

494680

**End't Number 23, Effective 10/12/2009**                    **TRI-MARINE INTERNATIONAL, INC.**

| Number | Address | Limit of Liability |
|--------|---------|--------------------|
| 13 | Ningbo FengSheng Food Co<br>#10 Xingye Road, Free Trade East Zone,<br>Ningbo, China | $ 2,500,000 |
| 14 | Todayfood Cold Storage<br>Ningbo today Food Co., Ltd.<br>No. 38 Zhongxing East Road, Xikou,, Ningbo,<br>China | $ 2,000,000 |
| 15 | Froid des Mascareignes ltd<br>Freeport Zone No. 8, Quay D Road, Port Louis<br>Mauritius | $ 5,000,000 |
| 16 | Mauritius Freeport Development Company Ltd.<br>Freeport Zone 5, Mer Rouge, Port Louis<br>Mauritius | $ 2,000,000 |
| 17 | Fridocks, Frigoriferi di Castelventro Piacentino S.R.L.<br>Via Mascherpa, 10, Localita' Vallone<br>29010 Castelventro Piacentino | $ 9,000,000 |
| 18 | Bellingham Cold Storage Company<br>2825 Roeder Ave<br>Bellingham WA 98227, USA | $    500,000<br>Added 10/12/2009 |
| 19 | International Juice Concentrates Inc.<br>625 W. Anaheim St.<br>Long Beach CA 90813, USA | $    500,000<br>Added 10/12/2009 |
|  | Any one unnamed warehouse [14] | $1,000,000 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____
**Authorized Signature**

---

[14] For the catastrophic perils of Earthquake, Flood and Named Windstorm, Unnamed locations
are capped at $2,000,000 in the annual aggregate.

494680                                      76

| Named Assured<br>**TRI-MARINE INTERNATIONAL, INC.** | | | End't Number<br>**24** |
|---|---|---|---|
| Insurance Company<br>**Indemnity Insurance Company of North America** | Policy No.<br>**494680** | Sec. | End't Eff. Date<br>**10/12/2009** |

### REVISED WAREHOUSE SCHEDULE

In consideration of **$717  additional premium**, it is hereby understood and agreed that, effective October 12, 2009, the following are scheduled warehouses under the subject policy:

| Number | Address | Limit of Liability |
|---|---|---|
| 1 | Tri-Marine Fish Company<br>220 Cannery Street<br>Terminal Island, CA USA | $ 1,000,000 |
| 2 | Tri-Marine International  (office)<br>10500 NE 8th Street<br>Bellevue, WA 98004 USA | $      50,000 |
| 3 | Inland Cold Storage<br>4100 Bandini Ave.<br>Los Angeles, CA USA | $     100,000 |
| 4 | Union Ice<br>901 East E Street<br>Wilmington CA USA | $     400,000 |
| 5 | Soltai Fishing & Processing Ltd.<br>Noro Base,<br>Noro, Western Province,<br>Solomon Islands | $ 4,000,000 |
| 6 | Wanainchi Marine Products (K) Ltd.<br>Liwatoni Fisheries Complex<br>Liwatoni Road, Mombasa<br>Kenya | $ 4,000,000 |
| 7 | Magazzini Generali E Frigoriferi Sodele S.R.L.<br>Via XXV Aprile Ovest, 10, 42049 Sant' Ilarrio d'Enza<br>Reggio Emilia, Italy | $ 6,000,000 |
| 8 | Fridocks-Maggazzini Generali E Frigoriferi S.P.A.<br>S.S. 211 Della Limellina Km, 15068 Pozzolo Formigaro<br>Alessandria, Italy | $12,000,000 |
| 9 | Seafman C.A. – Sociedad Ecuatoriana de Alimentos y<br>Frogorificos Manta C.A.<br>Calle 124 y Ave. 102 Los Esteros,, Manta, Ecuador | $ 6,000,000 |
| 10 | GRALCO S.A.<br>Calle 1 era. 38-121 Zona Industrial, Barranquilla,Colombia | $ 4,000,000 |
| 11 | ATUNEC S.A.<br>Zona Franca de Barranquilla, Lote 13, Barranquilla,<br>Colombia | $ 1,000,000 |
| 12 | Eurofish S.A.<br>Urbanizacion Arroyo Azul,<br>Manta,<br>Ecuador | $ 1,000,000 |

**End't Number 24, Effective 10/12/2009**          **TRI-MARINE INTERNATIONAL, INC.**

| Number | Address | Limit of Liability |
|--------|---------|--------------------|
| 13 | Ningbo FengSheng Food Co<br>#10 Xingye Road, Free Trade East Zone,<br>Ningbo, China | $ 2,500,000 |
| 14 | Todayfood Cold Storage<br>Ningbo today Food Co., Ltd.<br>No. 38 Zhongxing East Road, Xikou,, Ningbo,<br>China | $ 2,000,000 |
| 15 | Froid des Mascareignes ltd<br>Freeport Zone No. 8, Quay D Road, Port Louis<br>Mauritius | $ 5,000,000 |
| 16 | Mauritius Freeport Development Company Ltd.<br>Freeport Zone 5, Mer Rouge, Port Louis<br>Mauritius | $ 2,000,000 |
| 17 | Fridocks, Frigoriferi di Castelventro Piacentino S.R.L.<br>Via Mascherpa, 10, Localita' Vallone<br>29010 Castelventro Piacentino | $ 9,000,000 |
| 18 | Bellingham Cold Storage Company<br>2825 Roeder Ave<br>Bellingham WA 98227, USA | $ 500,000<br>Added 10/12/2009 |
| 19 | International Juice Concentrates Inc.<br>625 W. Anaheim St.<br>Long Beach CA 90813, USA | $ 500,000<br>Added 10/12/2009 |
| 20 | Tri-Union Samoa Packing Corporation<br>P.O. Box 597<br>Pago Pago, American Samoa 96799 | $ 2,400,000<br>Added 10/01/2009 |
| | Any one unnamed warehouse [15] | $ 1,000,000 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

---

**Authorized Signature**

---

[15] For the catastrophic perils of Earthquake, Flood and Named Windstorm, Unnamed locations are capped at $2,000,000 in the annual aggregate.

494680                      78

| Named Assured<br>**TRI-MARINE INTERNATIONAL, INC.** | | | End't Number<br>**25** |
|---|---|---|---|
| Insurance Company<br>**Indemnity Insurance Company of North America** | Policy No.<br>**494680/<br>WR494680** | Sec. | End't Eff. Date<br>**01/01/2010** |

### DEPOSIT PREMIUM ENDORSEMENT

It is hereby understood and agreed that effective **January 1, 2010** these policies are continued in consideration of a deposit premium of **$643,177.00**. This deposit is calculated at rates of **.093725%** (Marine Policy) and **.0125%** (War Policy) on estimated net sales of **$530,500,000.00** plus **$1,549.00** Transit TRIA.

This deposit premium shall be due and payable in quarterly installments as follows:

|  | Total | To Singapore | To Italy | To Spain |
|---|---|---|---|---|
| January 1, 2010 | $160,794.25 | $96,196.25 | $61,551.75 | $3,046.25 |
| April 1, 2010 | $160,794.25 | $96,196.25 | $61,551.75 | $3,046.25 |
| July 1, 2010 | $160,794.25 | $96,196.25 | $61,551.75 | $3,046.25 |
| October 1, 2010 | $160,794.25 | $96,196.25 | $61,551.75 | $3,046.25 |

**Premium Allocation:**

|  | *Singapore Master Policy* | *Italy* | *Spain* |
|---|---|---|---|
| Premium | $362,236.00 Cargo (Including War) | $246,207.00 | $12,185.00 |
| TRIA | $   1,549.00 Transit TRIA terrorism | - | - |
| Fees | $  21,000.00 Includes 2.5% Capital Charge | - | - |
| Annual Total | **$384,785.00** | **$246,207.00** | **$12,185.00** |
| Each Installment | $  96,196.25 | $  61,551.75 | $  3,046.25 |

On or before the 30th day following the anniversary date of this endorsement, the Assured agrees to submit to this Company or its agent the total net sales coming within the terms of this policy during the policy year.

If the total net sales are greater than **105%** of the estimated net sales the total difference shall be paid to the Company by the Assured. If the total net sales are less than **95%** of the estimated net sales, the total difference shall be returned to the Assured by this Company. For the purposes of the premium adjustment, it is understood and agreed that the thirteen month insured net sales shall be deemed to be no more than US **$650,400,000.00**. This premium cap shall be null and void if the loss ratio (loss and loss adjustment expenses divided by gross premium) for the term exceeds 70%. However, this Company shall retain a minimum premium of **$170,600.00**. Irrespective of earned premium falling short of the deposit, no portion of such minimum premium is refundable in the event of cancellation.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAIN UNCHANGED.**

_____
Authorized Signature

| Named Assured | | | End't Number |
|---|---|---|---|
| TRI-MARINE INTERNATIONAL, INC. | | | 26 |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| Indemnity Insurance Company of North America | 494680 | | 01/01/2010 |

### REVISED WAREHOUSE SCHEDULE

Effective January 1, 2010, it is hereby understood and agreed that the following are scheduled warehouses under the subject policy:

| Number | Address | Limit of Liability |
|---|---|---|
| 1 | Tri-Marine Fish Company<br>220 Cannery Street<br>Terminal Island, CA USA | $ 2,000,000 |
| 2 | Tri-Marine International  (office)<br>10500 NE 8th Street<br>Bellevue, WA 98004 USA | $      50,000 |
| 3 | Inland Cold Storage<br>4100 Bandini Ave.<br>Los Angeles, CA USA | $    100,000 |
| 4 | Soltai Fishing & Processing Ltd.<br>Noro Base,<br>Noro, Western Province, Solomon Islands | $ 4,000,000 |
| 5 | Wanainchi Marine Products (K) Ltd.<br>Liwatoni Fisheries Complex<br>Liwatoni Road, Mombasa, Kenya | $ 4,000,000 |
| 6 | Magazzini Generali E Frigoriferi Sodele S.R.L.<br>Via XXV Aprile Ovest, 10, 42049 Sant' Ilarrio d'Enza<br>Reggio Emilia, Italy | $ 6,000,000 |
| 7 | Fridocks-Maggazzini Generali E Frigoriferi S.P.A.<br>S.S. 211 Della Limellina Km, 15068 Pozzolo Formigaro<br>Alessandria, Italy | $36,000,000 |
| 8 | Seafman C.A. – Sociedad Ecuatoriana de Alimentos y<br>Frogorificos Manta C.A.<br>Calle 124 y Ave. 102 Los Esteros,, Manta, Ecuador | $ 6,000,000 |
| 9 | GRALCO S.A.<br>Calle 1 era. 38-121 Zona Industrial<br>Barranquilla,Colombia | $ 4,000,000 |
| 10 | ATUNEC S.A.<br>Zona Franca de Barranquilla, Lote 13<br>Barranquilla, Colombia | $ 1,000,000 |
| 11 | Eurofish S.A.<br>Urbanizacion Arroyo Azul<br>Manta, Ecuador | $ 1,000,000 |
| 12 | Ningbo FengSheng Food Co<br>#10 Xingye Road, Free Trade East Zone,<br>Ningbo, China | $ 2,500,000 |
| 13 | Todayfood Cold Storage<br>Ningbo today Food Co., Ltd.<br>No. 38 Zhongxing East Road, Xikou<br>Ningbo, China | $ 2,000,000 |
| 14 | Froid des Mascareignes ltd<br>Freeport Zone No. 8, Quay D Road, Port Louis<br>Mauritius | $ 5,000,000 |

**Continued**

End't Number 26, Policy No. 494680                    TRI-MARINE INTERNATIONAL, INC
Effective 01/01/2010

| Number | Address | Limit of Liability |
|--------|---------|--------------------|
| 15 | Mauritius Freeport Development Company Ltd.<br>Freeport Zone 5, Mer Rouge<br>Port Louis, Mauritius | $ 2,000,000 |
| 16 | Fridocks, Frigoriferi di Castelve..tro Piacentino S.R.L.<br>Via Mascherpa, 10, Localita' Vallone, 29010 Castelventro<br>Piacentino, Italy | $ 9,000,000 |
| 17 | Bellingham Cold Storage Company<br>2825 Roeder Ave<br>Bellingham WA 98227 USA | $ 1,000,000 |
| 18 | International Juice Concentrates Inc.<br>625 W. Anaheim St.<br>Long Beach CA 90813 USA | $ 1,000,000 |
| 19 | Tri-Union Samoa Packing Corporation<br>P.O. Box 597<br>Pago Pago, American Samoa 96799 | $ 2,400,000 |
| 20 | Preferred Freezer Services<br>900 East M Street<br>Wilmington CA 90748 USA | $ 1,000,000 |
| 21 | Jiangsu Hongze Lake Food Co., Ltd.<br>No. 16 Dong Wu Dao, Hongze Industrial Park<br>Jiangsu Province, Nanjing, China | $ 1,650,000 |
| 22 | Nanjing Yuan Heng Cold Storage<br>No. 3 HuangMa Road, Ma Qun Ke Ji Yuan<br>Jiangsu Province, Nanjing, China | $ 3,300,000 |
| 23 | Tianchang Hai Wang Food Co., Ltd.<br>No. 28 TianCha West Road, TianChang Develo..pment Zone<br>Anhui Province, TianChang, China | $ 1,320,000 |
| 24 | Yangzhou Hua Ding Agricultura.. Product Storage Co., Ltd.<br>No. 1 Ke Yan Wu Road, YiZhen Economic Development Zone<br>Jiangsu Province, Yangzhou, China | $ 3,300,000 |
| 25 | Shandong Ai Tong Hai Feng International Logistics Co., Ltd.<br>No. 378 LongGangShan Road<br>Qingdao Economic Technology Development Zone<br>Shandong Province, Qingdao, China | $ 2,750,000 |
| 26 | Commercial Cold Storage (Ports) (PTY) Ltd.<br>Duncan Docks Branch, Duncan Road<br>Port of Cape Town 8001, South Africa | $ 1,500,000 |
| 27 | Frigorificos de Galicia S.A. (Frigalsa)<br>La Rioux-Twis s/n Aptdo 973<br>36216 Vigo, Spain | $ 2,200,000 |
| 28 | Friotels<br>Camino de Laranxo, 27 (A Riouxa-Twis)<br>36216 Vigo, Spain | $ 1,400,000 |
| 29 | Triton Congelados<br>Pescados y Mariscos Triton, S.L.U.<br>Poligono Sete Pias, Parcela 75-78<br>36630 Cambados (Pontevedra), Spain | $ 2,200,000 |
| 30 | Alimentos Cruz Del Sur<br>Serafin Avendano 6-bajo<br>36201 Vigo, Spain | $ 1,000,000 |

Continued

**End't Number 26, Policy No. 494680**
**Effective 01/01/2010**

**TRI-MARINE INTERNATIONAL, INC**

| | | |
|---|---|---|
| | Any one unnamed warehouse Earthquake, Flood & Named Windstorm $2,000,000 Annual Aggregate | $1,000,000 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

Authorized Signature

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>27 |
|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680 | Sec. | End't Eff. Date<br>01/01/2010 |

Effective January 1, 2010 Clause 61. is amended to read:

**STEAMER PENALTIES**

61. As a condition of this insurance, the Assured agrees to keep accurate records of the vessels used to transport their goods, and will pay such additional premium as may be required for vessels that do not meet the criteria set forth on the rate schedule attached to this policy.

**Penalty Rates:**

| Vessel Ages | Rate per $100 |
|---|---|
| 21 to 25 years | .10 |
| 26 years and older | .15 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

**Authorized Signature**

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>28 |
|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680 | Sec. | End't Eff. Date<br>01/01/2010 |

**EFFECTIVE JANUARY 1, 2010 THIS ENDORSEMENT SUPERCEDES AND REPLACES S.R. &C.C. ENDORSEMENT (Form No. 11) ATTACHED TO THIS POLICY**

**S.R. &C. C. Endorsement (Form No. 12A)**

**THIS INSURANCE ALSO COVERS:**

(1) Physical loss of or damage to property insured directly caused by strikers, locked-out workmen, or persons taking part in labor disturbances or riots or civil commotions;

(2) Physical loss of or damage to the property insured directly caused by vandalism, sabotage or malicious acts; and,

(3) Physical loss of or damage to the property insured directly caused by the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional; PROVIDED that any claim to be recoverable under this subsection (3) be not excluded by the Free of Capture & Seizure Warranty, Extended Radioactive Contamination Exclusion Clause (Extended RACE Clause) or Chemical, Biological, Bio-Chemical and Electromagnetic Exclusion Clause (CBE Clause) in the Policy to which this endorsement is attached. Notwithstanding the foregoing, coverage under this subsection (3) is conditional upon the property insured being in the ordinary course of transit and, in any event, shall terminate:

   (a) As per the Warehouse to Warehouse Clause, Marine Extension Clause, 60 Day South American Clause and any other clauses relating to duration of transit contained in or endorsed onto the Policy; or,
   (b) on delivery to the consignee's or other final warehouse or place of storage at the destination named herein; or,
   (c) on delivery to any warehouse or place of storage whether prior to or at the destination named herein, which the Assured elects to use either for storage other than in the ordinary course of transit or for allocation or distribution; or,
   (d) in respect of marine transits, on the expiry of 60 days after completion of discharge overside of the property insured from the vessel at the port of discharge; or,
   (e) in respect of air transits, on the expiry of 30 days after unloading the property insured from the aircraft at the place of discharge;
   whichever shall first occur.

Notwithstanding the foregoing, nothing in this clause excludes coverage for insured losses, which are otherwise covered by this insurance, caused by certified acts of terrorism, as defined in the Terrorism Risk Insurance Act (P.L. #107-297), or any subsequent amendments or endorsements to the Act.

While the property insured is at risk under the terms and conditions of this insurance within the United States of America, the Commonwealth of Puerto Rico, the U.S. Virgin Islands and Canada, this insurance is extended to cover physical loss of or damage to the property insured directly caused by acts committed by an agent of any government, party or faction engaged in war, hostilities or other warlike operations, provided such agent is acting secretly and not in connection with any operation of military or naval armed forces in the country where the described property is situated.

Nothing in this endorsement shall be construed to cover any loss, damage or expense directly or indirectly arising from, contributed to or caused by any of the following, whether due to a peril insured against or otherwise:

   (a) change in temperature or humidity;
   (b) the absence, shortage, or withholding of power, fuel, or labor of any description whatsoever during any strike, lockout, labor disturbance, riot or civil commotion;

(c) loss of market or loss, damage or deterioration arising from delay;
(d) hostilities, warlike operations, civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, except to the limited extent that the acts of certain agents acting secretly have been expressly covered above; or,
(e) nuclear reaction, radiation or radioactive contamination, as per Extended RACE Clause;
(f) chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material, as per CBE Clause.

The Assured agrees to report all shipments attaching under this cover and to pay premiums therefore at the rates established by the Assurer from time to time.

This endorsement may be canceled by either party upon forty-eight hours written, telegraphic, telefaxed, or electronic notice to the other party, but such cancellation shall not affect any risks which have already attached hereunder.

Effective with respect to shipments made on or after January 1, 2010.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

494680

Authorized Signature

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>29 |
|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680 | Sec. | End't Eff. Date<br>02/22/2010 |

## BANK ENDORSEMENT

It is hereby understood and agreed that effective February 22, 2010 Endorsement No. 20 is deleted in its entirety and replaced by this Endorsement No. 29

> **U.S. Bank National Association**
> **P.O. Box 5308**
> **Portland, OR 97228**

Hereinafter called the Bank, now has or will have delivered to it from time to time title to or control of certain merchandise insured under this policy; or otherwise has or will have an insurable interest therein and that the Bank will be recognized as an insured under this policy in connection with any loss of or damage to such merchandise for which it shall hold warehouse receipts, bills of lading or other evidence of title or control or in the case of property not represented by such documents in which it shall have an insurable interest evidenced by written entry on the records of the Bank, and that payment for any loss of or damage to such merchandise shall be made jointly to both the Bank and the Assured, to the extent of the Bank's insurable interest therein.

This policy shall not be canceled nor materially changed as to the interest of the Bank unless ten (10) days' written notice of such change or cancellation shall have been given to the Bank, except with respect to War, Strikes, Riots and Civil Commotions which are subject to cancellation upon forty-eight (48) hours' notice.

This agreement shall not extend the said policy to cover any additional risks, it being especially agreed that the policy does not insure against conversion, misappropriation or other dishonest acts committed by or on behalf of the named insured. Also, this agreement is subject to the limits of liability named in the policy and to the conditions of any Value Reporting, Full Reporting, Total Insurance clauses incorporated therein or attached thereto, it being understood and agreed nevertheless that unintentional error or omission in the making of reports required of the named insured under this policy shall not prejudice the rights of the Bank to collect hereunder.

The underwriters further agree that nothing contained herein shall impose any liability on the Bank for the payment of premiums.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

Authorized Signature

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>32 |
|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680/<br>WR494680 | Sec. | End't Eff. Date<br>01/01/2010 |

### AUDIT ENDORSEMENT

In consideration of a total additional premium of **$12,142** the audit adjustment for January 1, 2009 to January 1, 2010 is:

| | Marine | War | Total |
|---|---|---|---|
| Sales | $542,142,554* | $542,142,554* | $542,142,554* |
| Rate | .086% | .015% | .1% |
| Premium | $     460,821 | $     81,321 | $     542,142 |
| Deposit | $     450,500 | $     79,500 | $     530,000 |
| | | | |
| **Additional Premium Due** | $     10,321 | $     1,821 | $     12,142 |

*Actual Sales: $542,142,554.  Per endorsement 14 dated 01/0..2009 the premium cap is null and void if the loss ratio (loss and loss adjustment expenses divided by gross premium) for the term exceeds 70%.  The loss ratio for 2009 is 162%  ($880,388 / $542,142).

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

Per Indemnity Insurance Company of North America

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>31 |
|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680 | Sec. | End't Eff. Date<br>06/10/2010 |

### ASSURED

Effective June 10, 2010 in consideration of an additional premium of **$2,163** the following is added as an Assured:

Baja Marine Foods SAPI de DV

Estimated annual sales $3,500,000

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

Authorized Signature

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>30 |
|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680 | Sec. | End't Eff. Date<br>06/10/2010 |

### REVISED WAREHOUSE SCHEDULE

In consideration of **$776. additional premium** , it is hereby understood and agreed that effective June 10, 2010, the following are scheduled warehouses under the subject policy:

| Number | Address | Limit of Liability |
|---|---|---|
| 1 | Tri-Marine Fish Company<br>220 Cannery Street<br>Terminal Island, CA USA | $ 2,000,000 |
| 2 | Tri-Marine International  (office)<br>10500 NE 8th Street<br>Bellevue, WA 98004 USA | $     50,000 |
| 3 | Inland Cold Storage<br>4100 Bandini Ave.<br>Los Angeles, CA USA | $    100,000 |
| 4 | Soltai Fishing & Processing Ltd.<br>Noro Base,<br>Noro, Western Province, Solomon Islands | $ 4,000,000 |
| 5 | Wanainchi Marine Products (K) Ltd.<br>Liwatoni Fisheries Complex<br>Liwatoni Road, Mombasa, Kenya | $ 4,000,000 |
| 6 | Magazzini Generali E Frigoriferi Sodele S.R.L.<br>Via XXV Aprile Ovest, 10, 42040 Sant' Ilarrio d'Enza<br>Reggio Emilia, Italy | $ 6,000,000 |
| 7 | Fridocks-Maggazzini Generali E Frigoriferi S.P.A.<br>S.S. 211 Della Limellina Km, 15068 Pozzolo Formigaro<br>Alessandria, Italy | $36,000,000 |
| 8 | Seafman C.A. – Sociedad Ecuatoriana de Alimentos y<br>Frogorificos Manta C.A.<br>Calle 124 y Ave. 102 Los Esteros,, Manta, Ecuador | $ 6,000,000 |
| 9 | GRALCO S.A.<br>Calle 1 era. 38-121 Zona Industrial<br>Barranquilla,Colombia | $ 4,000,000 |
| 10 | ATUNEC S.A.<br>Zona Franca de Barranquilla, Lote 13<br>Barranquilla, Colombia | $ 1,000,000 |
| 11 | Eurofish S.A.<br>Urbanizacion Arroyo Azul<br>Manta, Ecuador | $ 1,000,000 |
| 12 | Ningbo FengSheng Food Co<br>#10 Xingye Road, Free Trade East Zone,<br>Ningbo, China | $ 2,500,000 |
| 13 | Todayfood Cold Storage<br>Ningbo today Food Co., Ltd.<br>No. 38 Zhongxing East Road, Xikou<br>Ningbo, China | $ 2,000,000 |
| 14 | Froid des Mascareignes ltd<br>Freeport Zone No. 8, Quay D Road, Port Louis<br>Mauritius | $ 5,000,000 |

Continued

End't Number 30, Policy No. 494680
Effective 06/10/2010

TRI-MARINE INTERNATIONAL, INC

| Number | Address | Limit of Liability |
|---|---|---|
| 15 | Mauritius Freeport Development Company Ltd.<br>Freeport Zone 5, Mer Rouge<br>Port Louis, Mauritius | $ 2,000,000 |
| 16 | Fridocks, Frigoriferi di Castelventro Piacentino S.R.L.<br>Via Mascherpa, 10, Localita' Vallone, 29010 Castelventro<br>Piacentino, Italy | $ 9,000,000 |
| 17 | Bellingham Cold Storage Company<br>2825 Roeder Ave<br>Bellingham WA 98227 USA | $ 1,000,000 |
| 18 | International Juice Concentrates Inc.<br>625 W. Anaheim St.<br>Long Beach CA 90813 USA | $ 1,000,000 |
| 19 | Tri-Union Samoa Packing Corporation<br>P.O. Box 597<br>Pago Pago, American Samoa 96799 | $ 2,400,000 |
| 20 | Preferred Freezer Services<br>900 East M Street<br>Wilmington CA 90748 USA | $ 1,000,000 |
| 21 | Jiangsu Hongze Lake Food Co., Ltd.<br>No. 16 Dong Wu Dao, Hongze Industrial Park<br>Jiangsu Province, Nanjing, China | $ 1,650,000 |
| 22 | Nanjing Yuan Heng Cold Storage<br>No. 3 HuangMa Road, Ma Qun Ke Ji Yuan<br>Jiangsu Province, Nanjing, China | $ 3,300,000 |
| 23 | Tianchang Hai Wang Food Co., Ltd.<br>No. 28 TianCha West Road, TianChang Development Zone<br>Anhui Province, TianChang, China | $ 1,320,000 |
| 24 | Yangzhou Hua Ding Agricultural Product Storage Co., Ltd.<br>No. 1 Ke Yan Wu Road, YiZhen Economic Development Zone<br>Jiangsu Province, Yangzhou, China | $ 3,300,000 |
| 25 | Shandong Ai Tong Hai Feng International Logistics Co., Ltd.<br>No. 378 LongGangShan Road<br>Qingdao Economic Technology Development Zone<br>Shandong Province, Qingdao, China | $ 2,750,000 |
| 26 | Commercial Cold Storage (Ports) (PTY) Ltd.<br>Duncan Docks Branch, Duncan Road<br>Port of Cape Town 8001, South Africa | $ 1,500,000 |
| 27 | Frigorificos de Galicia S.A. (Frigalsa)<br>La Rioux-Twis s/n Aptdo 973<br>36216 Vigo, Spain | $ 2,200,000 |
| 28 | Frictels<br>Camino de Laranxo, 27 (A Riouxa-Twis)<br>36216 Vigo, Spain | $ 1,400,000 |
| 29 | Triton Congelados<br>Pescados y Mariscos Triton, S.L.U.<br>Poligono Sete Pias, Parcela 75-78<br>36630 Cambados (Pontevedra), Spain | $ 2,200,000 |
| 30 | Alimentos Cruz Del Sur<br>Serafin Avendano 6-bajo<br>36201 Vigo, Spain | $ 1,000,000 |

Continued

End't Number 30, Policy No. 494680                    TRI-MARINE INTERNATIONAL, INC
Effective 06/10/2010

| Number | Address | Limit of Liability |
|--------|---------|-------------------|
| 31 | Baja Marine Foods SAPI de CV<br>Lote 3 Mz. 8, Parque Industrial Fondeport el Sauzal de Rodriguez,<br>Ensenada, Baja California, Mexico<br>*Added 06/10/2010* | $1,000,000 |
| | Any one unnamed warehouse<br>Earthquake, Flood & Named Windstorm $2,000,000 Annual<br>Aggregate | $1,000,000 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

Authorized Signature

| Named Assured<br>**TRI-MARINE INTERNATIONAL, INC.** | | | End't Number<br>**33** |
|---|---|---|---|
| Insurance Company<br>**Indemnity Insurance Company of North America** | Policy No.<br>**494680/<br>WR494680** | Sec. | End't Eff. Date<br>**01/01/10** |

### STEAMER ADDITIONALS FOR OVER-AGE AND UNDER-TONNAGE VESSELS

In accordance with the Provisions of Clause 61. (endorsement 10, amended 1/1/2010 by endorsement 27) hereunder the Steamer Additionals for the over-age and under tonnage vessels for the Policy year 2009-2010 are as follows and an additional premium of **$87,335.24** is due and payable.

| Insured Values | Rate per $100 | Premium |
|---|---|---|
| $ 15,675,679.03 | 21 to 25 years      .10 | $15,675.68 |
| $ 47,773,039.88 | 26 years and older  .15 | $71,659.56 |
| | **Total Additional Premium** | **$87,335.24** |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

Authorized Signature

494680

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>34 |
| --- | --- | --- | --- |
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680/<br>WR494680 | Sec. | End't Eff. Date<br>01/01/2010 |

### ADJUSTMENT ENDORSEMENT

It is hereby understood and agreed that the Profit Share calculation effective for the policy term January 1, 2009 to January 1, 2010 is:

| | |
| --- | --- |
| Gross Premium: | $  531,620.00 |
| Less War Premium: | $   79,500.00 |
| Less TRIA Premium: | $    1,620.00 |
| Gross Marine Premium | $  450,500.00 |
| Less 50% of Gross Marine Premium: | $  225,250.00 |
| Net Marine Premium: | $  225,250.00 |
| Less Paid & Outstanding Losses 2008 | $  880,388.35 |
| Balance: | $        0.00 |
| Less 50% for Assurer's Account: | $        0.00 |
| Deficit carry over to 2010:<br>($880,388.35 - $225,250.00) | $  655,138.35 |

ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.

_signature_ 1·-10-10

Per Indemnity Insurance Company of North America

494680

| Named Assured | | | End't Number |
|---|---|---|---|
| TRI-MARINE INTERNATIONAL, INC. | | | 35 |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| Indemnity Insurance Company of North America | 49-880/ WR494680 | | 01/01/2010 |

## BANK ENDORSEMENT

It is hereby understood and agreed that endorsement 3 of this policy is amended as follows:

> **BNP Paribas**
> **20 Collyer Quay, #01-01 Tung Centre**
> **Singapore 049319**

Hereinafter called the Bank, now has or will have delivered to it from time to time title to or control of certain merchandise insured under this policy; or otherwise has or will have an insurable interest therein and that the Bank will be recognized as an insured under this policy in connection with any loss of or damage to such merchandise for which it shall hold warehouse receipts, bills of lading or other evidence of title or control or in the case of property not represented by such documents in which it shall have an insurable interest evidenced by written entry on the records of the Bank, and that payment for any loss of or damage to such merchandise shall be made jointly to both the Bank and the Assured, to the extent of the Bank's insurable interest therein.

This policy shall not be canceled nor materially changed as to the interest of the Bank unless ten (10) days' written notice of such change or cancellation shall have been given to the Bank, except with respect to War, Strikes, Riots and Civil Commotions which are subject to cancellation upon forty-eight (48) hours' notice.

This agreement shall not extend the said policy to cover any additional risks, it being especially agreed that the policy does not insure against conversion, misappropriation or other dishonest acts committed by or on behalf of the named insured. Also, this agreement is subject to the limits of liability named in the policy and to the conditions of any Value Reporting, Full Reporting, Total Insurance clauses incorporated therein or attached thereto, it being understood and agreed nevertheless that unintentional error or omission in the making of reports required of the named insured under this policy shall not prejudice the rights of the Bank to collect hereunder.

The underwriters further agree that nothing contained herein shall impose any liability on the Bank for the payment of premiums.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____

**Per Indemnity Insurance Company of North America**

494680

| Named Assured | | | End't Number |
|---|---|---|---|
| TRI-MARINE INTERNATIONAL, INC. | | | 36 |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| Indemnity Insurance Company of North America | 494680/ WR494680 | | 01/01/2010 |

## ADJUSTMENT ENDORSEMENT

It is hereby understood and agreed that in consideration of the deposit premium of $643,177 per Endorsement 25 dated January 1, 2010, the Anniversary Date of this policy is extended from January 1st to February 1st. This date will be implemented on February 1st of 2011 and will carry forward thereafter, in determining rates, limits and premiums.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_Mike McGill_
Per Indemnity Insurance Company of North America

494680

| Named Assured<br>**TRI-MARINE INTERNATIONAL, INC.** | | | | End't Number<br>**37** |
|---|---|---|---|---|
| Insurance Company<br>**Indemnity Insurance Company of North America** | | Policy No.<br>**494680/<br>WR494680** | Sec. | End't Eff. Date<br>**02/01/2011** |

### DEPOSIT PREMIUM ENDORSEMENT

It is hereby understood and agreed that effective **February 1, 2011** these policies are continued in consideration of a deposit premium of **$656,940.00**. This deposit is calculated at rates of **.10570%** (Marine and War Policies) on estimated net sales of **$600,000,000.00** plus **$1,740.00** Transit TRIA plus **$21,000 Fees**.

This deposit premium shall be due and payable in quarterly installments as follows:

|  | Total | To Singapore | To Italy | To Spain |
|---|---|---|---|---|
| February 1, 2011 | $164,235.00 | $114,772.25 | $42,170.25 | $7,292.50 |
| May 1, 2011 | $164,235.00 | $114,772.25 | $42,170.25 | $7,292.50 |
| August 1, 2011 | $164,235.00 | $114,772.25 | $42,170.25 | $7,292.50 |
| November 1, 2011 | $164,235.00 | $114,772.25 | $42,170.25 | $7,292.50 |

**Premium Allocation:**

|  | *Singapore Master Policy* | *Italy* | *Spain* |
|---|---|---|---|
| Premium | $436,349.00 Cargo (including War) | $168,681.00 | $29,170.00 |
| TRIA | $ 1,740.00 Transit TRIA terrorism | - | - |
| Fees | $ 21,000.00 Includes 2.5% Capital Charge | - | - |
| Annual Total | **$459,089.00** | **$168,681.00** | **$29,170.00** |
|  |  |  |  |
| Each Installment | $114,772.25 | $ 42,170.25 | $ 7,292.50 |

On or before the 30th day following the anniversary date of this endorsement, the Assured agrees to submit to this Company or its agent the total net sales coming within the terms of this policy during the policy year.

If the total net sales are greater than **105%** of the estimated net sales the total difference shall be paid to the Company by the Assured. If the total net sales are less than **95%** of the estimated net sales, the total difference shall be returned to the Assured by this Company. For the purposes of the premium adjustment, it is understood and agreed that the twelve month insured net sales shall be deemed to be no more than US **$650,400,000.00**. This premium cap shall be null and void if the loss ratio (loss and loss adjustment expenses divided by gross premium) for the term exceeds 70%. However, this Company shall retain a minimum premium of **$170,000.00**. Irrespective of earned premium falling short of the deposit, no portion of such minimum premium is refundable in the event of cancellation.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAIN UNCHANGED.**

_____
Authorized Signature

| Named Assured<br>**TRI-MARINE INTERNATIONAL, INC.** | | | End't Number<br>**37 A** |
|---|---|---|---|
| Insurance Company<br>**Indemnity Insurance Company of North America** | Policy No.<br>**494680/<br>WR494680** | Sec. | End't Eff. Date<br>**02/01/2011** |

### DEPOSIT PREMIUM ENDORSEMENT

It is hereby understood and agreed that effective February 1, 2011 the **Deductible Clauses** of this Policy are amended:

**AVERAGE TERMS Clause 14 D. is amended to:**

DEDUCTIBLE: Each claim for loss or damage occurring hereunder shall be adjusted separately and from the amount of each such adjusted claim the sum of **$50,000** shall be deducted per occurrence with respect to bulk shipments of fish, seafood and related goods only. With respect to containerized shipments of fish, seafood and related goods only, the sum of **$15,000** for goods shipped in 20 foot containers and **$25,000** for goods shipped in all other containers shall be deducted per occurrence. The deductible shall not apply to losses recoverable under the FPA, Explosion, and Shore Perils Clauses of this Policy, or to General Average contributions, Salvage charges, or Sue and Labor charges.

With respect to Ship Chandlery Supplies only the deductible shall be **$2,500** per occurrence.

With respect to Business Personal Property, Personal Effects and Household Goods only, the deductible shall be **$2,500** per occurrence.

**SECTION II, INLAND TRANSPORTATION, Clause 13 DEDUCTIBLE is amended to:**

DEDUCTIBLE: With respect to Domestic Shipments of fish, seafood and related goods, the deductible shall be **$15,000** per occurrence.

**SECTION III, WAREHOUSE COVERAGE, Clause 9 DEDUCTIBLE is amended to:**

DEDUCTIBLE: Each claim for loss or damage occurring hereunder whether goods are in transit or storage, except for the perils of Earthquake or USFDA Rejection, shall be adjusted separately and from the amount of each such adjusted claim the sum of **$50,000** shall be deducted per occurrence.

While goods are in storage, each claim for loss or damage due to the peril of earthquake shall be subject to a deductible of **$100,000** per location per occurrence.

Each claim for loss resulting from any one USFDA Rejection (Refusal) per Bill of Lading or Entry is subject to a deductible of Nil.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAIN UNCHANGED.**

_____

**Authorized Signature**

| Named Assured<br>**TRI-MARINE INTERNATIONAL, INC.** | | | End't Number<br>**38** |
|---|---|---|---|
| Insurance Company<br>**Indemnity Insurance Company of North America** | Policy No.<br>**494680** | Sec. | End't Eff. Date<br>**02/01/2011** |

### REVISED WAREHOUSE SCHEDULE

Effective February 1, 2011, the following are scheduled warehouses under the subject policy:

| Number | Address | Limit of Liability |
|---|---|---|
| 1 | Tri-Marine Fish Company<br>220 Cannery Street<br>Terminal Island, CA USA | $ 2,100,000 |
| 2 | Tri-Marine International (office)<br>10500 NE 8th Street<br>Bellevue, WA 98004 USA | $ 50,000 |
| 3 | Inland Cold Storage<br>4100 Bandini Ave.<br>Los Angeles, CA USA | $ 100,000 |
| 4 | Soltai Fishing & Processing Ltd.<br>Noro Base,<br>Noro, Western Province, Solomon Islands | $ 6,000,000 |
| 5 | Wanainchi Marine Products (K) Ltd.<br>Liwatoni Fisheries Complex<br>Liwatoni Road, Mombasa, Kenya | $ 4,000,000 |
| 6 | Magazzini Generali E Frigoriferi Sodele S.R.L.<br>Via XXV Aprile Ovest, 10, 42049 Sant' Ilarrio d'Enza<br>Reggio Emilia, Italy | $10,000,000 |
| 7 | Fridocks-Maggazzini Generali E Frigoriferi S.P.A.<br>S.S. 211 Della Limellina Km, 15068 Pozzolo Formigaro<br>Alessandria, Italy | $36,000,000 |
| 8 | Seafman C.A. – Sociedad Ecuatoriana de Alimentos y<br>Frogorificos Manta C.A.<br>Calle 124 y Ave. 102 Los Esteros,, Manta, Ecuador | $ 6,000,000 |
| 9 | GRALCO S.A.<br>Calle 1 era. 38-121 Zona Industrial<br>Barranquilla,Colombia | $ 4,000,000 |
| 10 | Frigorificos Devesa SL<br>Soutelo--Salar, 36654 Caldas de Reis<br>Pontevedra, Spain | $ 2,000,000 |
| 11 | Eurofish S.A.<br>Urbanizacion Arroyo Azul<br>Manta, Ecuador | $ 1,000,000 |
| 12 | Ningbo FengSheng Food Co<br>#10 Xingye Road, Free Trade East Zone,<br>Ningbo, China | $ 2,500,000 |
| 13 | Todayfood Cold Storage<br>Ningbo today Food Co., Ltd.<br>No. 38 Zhongxing East Road, Xikou<br>Ningbo, China | $ 2,000,000 |
| 14 | Mauritius Freeport Development Company Ltd.<br>Freeport Zone 5, Mer Rouge<br>Port Louis, Mauritius | $ 2,000,000 |

Continued

End't Number 38, Policy No. 494680                          TRI-MARINE INTERNATIONAL, INC
Effective 02/01/2011

| Number | Address | Limit of Liability |
|--------|---------|--------------------|
| 15 | Fridocks, Frigoriferi di Castelventro Placentino S.R.L. Via Mascherpa, 10, Localita' Vallone, 29010 Castelventro Placentino, Italy | $ 9,000,000 |
| 16 | Bellingham Cold Storage Company 2825 Roeder Ave Bellingham WA 98227 USA | $ 1,000,000 |
| 17 | Mesa Cold Storage, Ltd 700 S Raymond Fullerton, CA 92831, USA | $ 1,000,000 |
| 18 | Samoa Tuna Processors, Inc. Pago Pago, American Samoa 96799 | $ 2,400,000 |
| 19 | Preferred Freezer Services 900 East M Street Wilmington CA 90748 USA | $ 1,000,000 |
| 20 | Quingdao Li Ren Aquatic Products Co Ltd No. 88, Shuang Yuan Road Chengyang District, Qingdao, China | $ 6,000,000 |
| 21 | Commercial Cold Storage Ltd. Duncan Docks Branch, Duncan Road Port of Cape Town 8001, South Africa | $ 1,500,000 |
| 22 | Frigorificos de Galicia S.A. (Frigalsa) La Rioux-Twis s/n Aptdo 973 36216 Vigo, Spain | $ 2,200,000 |
| 23 | Friotels Camino de Laranxo, 27 (A Riouxa-Twis) 36216 Vigo, Spain | $ 1,400,000 |
| 24 | Triton Congelados, Pescados y Mariscos Triton, S.L.U. Poligono Sete Pias, Parcela 75-78 36630 Cambados (Pontevedra), Spain | $ 2,200,000 |
| 25 | Alimentos Cruz Del Sur Serafin Avendano 6-Bajo 36201 Vigo, Spain | $ 1,000,000 |
| 26 | Baja Marine Foods SAPI de CV Lote 3 Mz. 8, Parque Industrial, Fondeport el Sauzal de Rodriguez Ensenada, Baja California, Mexico | $ 1,000,000 |
| 27 | Family Foods 969 Newark Turnpike, Unit D Kearney NJ, USA | $ 100,000 |

| Unnamed warehouses -- any one warehouse | $1,000,000 |
|------------------------------------------|------------|
| Unnamed warehouses Annual Aggregate Earthquake, Flood & Named Windstorm | $2,000,000 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_Mike McSin_                                    **Authorized Signature**

| ,524Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>39 |
|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494660/<br>WR494660 | Sec. | End't Eff. Date<br>01/01/2011 |

## AUDIT ENDORSEMENT

In consideration of a total return premium of **$30,158** the audit adjustment for January 1, 2010 to February 1, 2011 is:

| | Marine | War | Total |
|---|---|---|---|
| Actual Sales | $576,426,653 | $576,426,653 | $576,426,653 |
| Rate | .093725% | .0125% | .106225% |
| Premium Earned | $ 540,256 | $ 72,053 | $ 612,309 |
| Deposit | $ 564,703 | $ 74,825 | $ 639,528 |
| End #30 adding BMF warehouse | +$ 776 | | +$ 776 |
| End #31 adding BMF marine | +$ 1,908 | +$ 255 | +$ 2,163 |
| Premium Paid | $ 567,387 | $ 75,080 | $ 642,467 |
| Return Premium<br>Due to Insured | $ 27,131 | $ 3,027 | $ 30,158 |

Per endorsement 25 dated 01/01/2010:

- If total net sales are greater than 105% of the estimated net sales the total difference shall be paid to the Company by the Assured.
  *Estimated net sales $602,000,000 x 105% = $620,100,000*
- If the total net sales are less than 95% of the estimated net sales, the total difference shall be returned to the Assured by this company.
  *Estimated net sales $602,000,000 x 95% = $571,900,000*
- For the purposes of the premium adjustment, it is understood and agreed that the thirteen month insured net sales shall be deemed to be no more than US $650,400,000.
- This premium cap is null and void if the loss ratio (loss and loss adjustment expenses divided by gross premium) for the term exceeds 70%.
  *The loss ratio for 2010 is 90% ($551,462 / $612,309)*

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

Mike McGill

**Per Indemnity Insurance Company of North America**

| Named Assured | | | End't Number |
|---|---|---|---|
| **TRI-MARINE INTERNATIONAL, INC.** | | | **40** |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| **Indemnity Insurance Company of North America** | **494680/** | | **01/01/11** |
| | **WR494680** | | |

## STEAMER ADDITIONALS FOR OVER-AGE AND UNDER-TONNAGE VESSELS

In accordance with the Provisions of Clause 61. (endorsement 10, amended 1/1/2010 by endorsement 27) hereunder the Steamer Additionals for the over-age and under tonnage vessels for the Policy year 2010-2011 are as follows and an additional premium of **$61,021** is due and payable.

| Insured Values | Rate per $100 | Premium |
|---|---|---|
| | | |
| $15,282,300 | 21 to 25 years        .10 | $15,282 |
| $30,492,365 | 26 years and older   .15 | $45,739 |
| | | |
| | **Total Additional Premium** | **$61,021** |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____   _____
**Authorized Signature**

494680

| Named Assured TRI-MARINE INTERNATIONAL, INC. | | | End't Number 41 |
|---|---|---|---|
| Insurance Company Indemnity Insurance Company of North America | Policy No. 494680 | Sec. | End't Eff. Date 02/01/2011 |

## AMENDATORY ENDORSEMENT

Effective February 1, 2011 it is hereby understood and agreed that the following amendment is made a part of this policy:

AVERAGE TERMS, Clause 14. A. 2. is amended to read:

(2) Except while subject to an "ON DECK" BILL OF LADING

Shipments of seafood of every kind and description, packaging supplies and related lawful goods and/or merchandise are insured:

Against all risks of physical loss or damage from any external cause, including loss due to deterioration or spoilage as a result of improper temperature, irrespective of percentage, but excluding nevertheless

i.    The risks of war, strikes, riots, seizure, detention and other risks excluded by the Nuclear Exclusion Clause, the FC&S (Free of Capture and Seizure) Warranty and the SR&CC (Strikes, Riots & Civil Commotions) Warranty in this Policy, excepting to the extent that such risks are specifically covered by endorsement.

ii.   Claims for or consequent upon loss of market, whether arising from a peril insured against or otherwise.

This insurance is extended, notwithstanding the FC&S Warranty, and subject to all other insuring terms, conditions and warranties set forth elsewhere in this policy, to cover physical loss, damage or deterioration from any external cause, including delay, directly arising out of the performance of inspection duties and/or services by customs agents or other duly constituted governmental agencies.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____
**Authorized Signature**

| Named Assured | | | End't Number |
|---|---|---|---|
| TRI-MARINE INTERNATIONAL, INC. | | | 43 |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| Indemnity Insurance Company of North America | 494680/ WR494680 | | 04/19/2011 |

### BANK ENDORSEMENT

It is hereby understood and agreed that

ABN AMRO Bank N.V
80 Raffles Place
#10-20 UOB Plaza 2
Singapore 048624
Singapore

Hereinafter called the Bank, now has or will have delivered to it from time to time title to or control of certain merchandise insured under this policy; or otherwise has or will have an insurable interest therein and that the Bank will be recognized as an insured under this policy in connection with any loss of or damage to such merchandise for which it shall hold warehouse receipts, bills of lading or other evidence of title or control or in the case of property not represented by such documents in which it shall have an insurable interest evidenced by written entry on the records of the Bank, and that payment for any loss of or damage to such merchandise shall be made jointly to both the Bank and the Assured, to the extent of the Bank's insurable interest therein.

This policy shall not be canceled nor materially changed as to the interest of the Bank unless ten (10) days' written notice of such change or cancellation shall have been given to the Bank, except with respect to War, Strikes, Riots and Civil Commotions which are subject to cancellation upon forty-eight (48) hours' notice.

This agreement shall not extend the said policy to cover any additional risks, it being especially agreed that the policy does not insure against conversion, misappropriation or other dishonest acts committed by or on behalf of the named insured. Also, this agreement is subject to the limits of liability named in the policy and to the conditions of any Value Reporting, Full Reporting, Total Insurance clauses incorporated therein or attached thereto, it being understood and agreed nevertheless that unintentional error or omission in the making of reports required of the named insured under this policy shall not prejudice the rights of the Bank to collect hereunder.

The underwriters further agree that nothing contained herein shall impose any liability on the Bank for the payment of premiums.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**


_____
**Authorized Signature**

494680

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | | End't Number<br>44 |
|---|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680/<br>WR494680 | Sec. | | End't Eff. Date<br>04/19/2011 |

## BANK ENDORSEMENT

It is hereby understood and agreed that

**The Hong Kong and Shanghai Banking Corpor...tion Limited**
**Trade and Supply Chain**
**20 Pasir Panjang Road (East lob...y) #11-21**
**Mapletree Business City**
**Singapore 117439**

Hereinafter called the Bank, now has or will have delivered to it from time to time title to or control of certain merchandise insured under this policy; or otherwise has or will have an insurable interest therein and that the Bank will be recognized as an insured under this policy in connection with any loss of or damage to such merchandise for which it shall hold warehouse receipts, bills of lading or other evidence of title or control or in the case of property not represented by such documents in which it shall have an insurable interest evidenced by written entry on the records of the Bank, and that payment for any loss of or damage to such merchandise shall be made jointly to both the Bank and the Assured, to the extent of the Bank's insurable interest therein.

This policy shall not be canceled nor materially changed as to the interest of the Bank unless ten (10) days' written notice of such change or cancellation shall have been given to the Bank, except with respect to War, Strikes, Riots and Civil Commotions which are subject to cancellation upon forty-eight (48) hours' notice.

This agreement shall not extend the said policy to cover any additional risks, it being especially agreed that the policy does not insure against conversion, misappropriation or other dishonest acts committed by or on behalf of the named insured. Also, this agreement is subject to the limits of liability named in the policy and to the conditions of any Value Reporting, Full Reporting, Total Insurance clauses incorporated therein or attached thereto, it being understood and agreed nevertheless that unintentional error or omission in the making of reports required of the named insured under this policy shall not prejudice the rights of the Bank to collect hereunder.

The underwriters further agree that nothing contained herein shall impose any liability on the Bank for the payment of premiums.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

**Authorized Signature**

494680

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | | End't Number<br>45 |
|---|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680/<br>WR494680 | Sec. | | End't Eff. Date<br>06/03/2011 |

## AVERAGE TERMS ENDORSEMENT

It is hereby understood and agreed that for an additional premium of **$7,000 flat charge**, effective June 3, 2011, the **Deductible Clauses** of this Policy are amended:

**AVERAGE TERMS Clause 14 D. is amended to:**

DEDUCTIBLE: Each claim for loss or damage occurring hereunder shall be adjusted separately and from the amount of each such adjusted claim the sum of **$50,000** shall be deducted per occurrence with respect to bulk shipments of fish, seafood and related goods only. With respect to containerized shipments of fish, seafood and related goods only, the sum of **$15,000** for goods shipped in 20 foot containers and **$25,000** for goods shipped in all other containers shall be deducted per occurrence.

For shipments with respect to Tri-Marine Fish Company, LLC and Baja Marine Foods, SAPI de CV only, the deductible shall be **$7,500** per occurrence.

The deductible shall not apply to losses recoverable under the FPA, Explosion, and Shore Perils Clauses of this Policy, or to General Average contributions, Salvage charges, or Sue and Labor charges.

With respect to Ship Chandlery Supplies only the deductible shall be **$2,500** per occurrence.

With respect to Business Personal Property, Personal Effects and Household Goods only, the deductible shall be **$2,500** per occurrence.

**SECTION II, INLAND TRANSPORTATION, Clause 13 DEDUCTIBLE is amended to:**

DEDUCTIBLE: With respect to Domestic Shipments of fish, seafood and related goods, the deductible shall be **$15,000** per occurrence. For Domestic Shipments with respect to Tri-Marine Fish Company, LLC and Baja Marine Foods, SAPI de CV only, the deductible shall be **$7,500** per occurrence.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAIN UNCHANGED.**

_____
Authorized Signature

| Named Assured | | | | End't Number |
|---|---|---|---|---|
| TRI-MARINE INTERNATIONAL, INC. | | | | 46 |
| Insurance Company | | Policy No. | Sec. | End't Eff. Date |
| Indemnity Insurance Company of North America | | 494680/ | | 02/01/2011 |
| | | WR494680 | | |

### ADJUSTMENT ENDORSEMENT

It is hereby understood and agreed that the Profit Share calculation effective for the policy term of January 1, 2010 to February 1, 2011 is:

| | |
|---|---|
| Gross Premium: | $   642,467.00 |
| Less War & TRIA: | $     75,080.00 |
| Gross Marine Premium: | $   567,387.00 |
| Less 50% of Gross Marine Premium: | $   283,693.50 |
| Total Available for Profit Sharing: | $   283,693.50 |
| Less Paid Losses and Expenses: | $   370,453.00 |
| Total Profit: | $            0.00 |
| Less 50% for Assurer's Account: | $            0.00 |
| Less: Deficit Carryover from 2009: | $   655,138.35 |
| Profit Sharing available to Assured: | $            0.00 |
| Deficit Carryover to 2011: | $     86,759.50 |

[$283,693.50 less $370,453.00]

ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA

By _____

| Named Assured TRI-MARINE INTERNATIONAL, INC. | | | End't Number 47 |
|---|---|---|---|
| Insurance Company Indemnity Insurance Company of North America | Policy No. 494680/ WR494680 | Sec. | End't Eff. Date 12/16/2011 |

## DEDUCTIBLE ENDORSEMENT

It is hereby understood and agreed that for an additional premium of $Nil, effective 12/16/2011, the **Deductible Clauses** of this Policy are amended:

**AVERAGE TERMS Clause 14 D. is amended to:**

DEDUCTIBLE: For shipments with respect to Packaging, Cans, Pallets, Labels and related goods only, the deductible shall be **$2,500** per occurrence.

The deductible shall not apply to losses recoverable under the FPA, Explosion, and Shore Perils Clauses of this Policy, or to General Average contributions, Salvage charges, or Sue and Labor charges.

**SECTION II, INLAND TRANSPORTATION, Clause 13 DEDUCTIBLE is amended to:**

DEDUCTIBLE: With respect to Domestic Shipments of Packaging, Cans, Pallets, Labels and related goods only, the deductible shall be **$2,500** per occurrence.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAIN UNCHANGED.**

_Mike M&in_
**Authorized Signature**

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>48 |
|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No.<br>494680/<br>WR494680 | Sec. | End't Eff. Date<br>02/01/11 |

### STEAMER ADDITIONALS FOR OVER-AGE AND UNDER-TONNAGE VESSELS

In accordance with the Provisions of Clause 61 hereunder the Steamer Additionals for the over-age and under tonnage vessels for the Policy year 2011-2012 are as follows and an additional premium of $164,893.48 is due and payable.

| Insured Values | Rate per $100 | | Premium |
|---|---|---|---|
| $ 29,992,543.67 | 16 to 20 years | .00 | 0 |
| $ 46,188,270.98 | 21 to 25 years | .10 | $46,188.27 |
| $ 43,267,090.29 | 26 to 30 years | .15 | 64,900.64 |
| $ 35,869,713.38 | 31 to 35 years | .15 | 53,804.57 |
| | Total Additional Premium | | $164,893.48 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_Mike McJll_

**Authorized Signature**

494680

| Named Assured | | | End't Number |
|---|---|---|---|
| TRI-MARINE INTERNATIONAL, INC. | | | 49 |
| Insurance Company | Policy No. | Sec. | End't Eff. Date |
| Indemnity Insurance Company of North America | 494680/ WR494680 | | 02/01/2011 |

## AUDIT ENDORSEMENT

The audit adjustment for February 1, 2011 to February 1, 2012 is:

| | Marine | War | Total |
|---|---|---|---|
| Sales | $717,360,607 | $717,360,607 | $717,360,607 |
| Rate | 1057% | included | 1057% |
| Premium | $ 758,250 | $ included | $ 758,250 |
| Deposit | $ 656,940 | $ included | $ 656,940 |
| Additional Premium Due | $101,310 | included | $101,310 |

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED.**

_____
Authorized Signature

| Named Assured<br>TRI-MARINE INTERNATIONAL, INC. | | | End't Number<br>50 |
|---|---|---|---|
| Insurance Company<br>Indemnity Insurance Company of North America | Policy No. | Sec. | End't Eff. Date<br>02/01/2011 |

## PROFIT SHARING ADJUSTMENT ENDORSEMENT

It is hereby understood and agreed that the Profit Share calculation effective for the policy term of February 1, 2011 to February 1, 2012 is:

| | |
|---|---|
| Gross Marine Premium: | |
| [Net of War & TRIA] | $  758,250.00 |
| Less 50% of Gross Marine Premium: | $  379,125.00 |
| Total Available for Profit Sharing: | $  379,125.00 |
| Less Paid Losses and Expenses: | $  175,903.00 |
| Total Profit: | $  203,222.00 |
| Less 50% for Assurer's Account: | $  101,611.00 |
| Less: Deficit Carryover from 2010: | $   86,759.50 |
| Subtotal Profit Share: | $   14,851.20 |
| Deficit Carryover to 2012: | $          0 |
| | |
| Profit Sharing available to Assured: | $   14,851.20 |

ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED

_Mike Mill_

Authorized Signature

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____R. Gary Klausner_____ and the assigned Magistrate Judge is _____Charles F. Eick_____.

The case number on all documents filed with the Court should read as follows:

### 2:13-CV-5662-RGK (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____August 6, 2013_____
Date

By  ___MDAVIS___
Deputy Clerk

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☐ Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐ Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐ Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**