1   Lester O. Brown, Bar No. 160828
    LBrown@perkinscoie.com
2   Thomas M. McMahon, Bar No. 106074
    TMcMahon@perkinscoie.com
3   James G. Bernald, Bar No. 205519
    JBernald@perkinscoie.com
4   PERKINS COIE LLP
    1888 Century Park East, Suite 1700
5   Los Angeles, CA 90067-1721
    Telephone: 310.788.9900
6   Facsimile: 310.788.3399

7   Attorneys for Plaintiffs
    TRI MARINE INTERNATIONAL, INC.; TRI
8   MARINE INTERNATIONAL (PTE) LTD.; TRI
    MARINE SPAIN, S.L., and TRI MARINE
9   INTERNATIONAL, S. DE R.L.

**FILED**
CLERK, U.S. DISTRICT COURT

**DEC 17 2013**

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

10                  UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12

13   TRI MARINE INTERNATIONAL,              Case No. 13-CV-05662-RGK (Ex)
     INC., a Washington corporation; TRI
14   MARINE INTERNATIONAL (PTE)             **SECOND AMENDED COMPLAINT**
     LTD., a Singapore corporation; TRI     **FOR:**
15   MARINE SPAIN, S.L., a Spain limited
     liability company; and TRI MARINE      **(1) BREACH OF CONTRACT; AND**
16   INTERNATIONAL, S. DE R.L., a
     Panama limited liability company,      **(2) BREACH OF THE IMPLIED**
17                                          **COVENANT OF GOOD FAITH**
                       Plaintiffs,          **AND FAIR DEALING**
18
          v.                                **JURY TRIAL DEMANDED**
19

20   INDEMNITY INSURANCE
     COMPANY OF NORTH AMERICA,
21   a Pennsylvania corporation, and DOES
     1 through 10,
22
                       Defendants.
23

24

25        Plaintiffs Tri Marine International, Inc., Tri Marine International, Ltd., Tri

26   Marine International (Pte) Ltd., Tri Marine Spain, S.L., and Tri Marine, S. DE R.L.,

27   (collectively, "Tri Marine") complain of defendants as follows:

28

-1-

## NATURE OF THE ACTION

1.    Tri Marine seeks damages from defendant Indemnity Insurance Company of North America (one of the ACE Group of Insurers, referred to hereafter as "Indemnity Insurance"), which was required to cover, under the "open" Marine Policy it issued to Tri Marine International, Inc., as well as to other Tri Marine companies, substantial losses Tri Marine suffered when millions of Euros worth of its property was stolen by a dishonest Tri Marine Spain, S.L. employee upon its arrival at Spanish ports.  In order to do so, the dishonest employee improperly diverted Tri Marine's property during transport to its final destination, Tri Marine's cold storage warehouses in Spain, through fake "sales" to companies that were directly and/or indirectly owned and/or controlled by the dishonest employee.  The purported "sales" were never intended to and did not result in payment to Tri Marine, causing it to suffer millions of Euros worth of losses.

## THE PARTIES

2.    Plaintiff Tri Marine International, Inc. is a Washington corporation with its principal offices in Bellevue, Washington.  Among Tri Marine International, Inc.'s subsidiaries are plaintiff Tri Marine International (Pte), Ltd., a Singapore corporation with its principal offices in Singapore; Tri Marine Spain, S.L., a Spanish limited liability company with its principal offices in Bilbao, Spain; and Tri Marine International, S. DE R.L., a Panama limited liability company.  Tri Marine is in the business of, among other things, fishing, trading, processing, chartering, logistics, international finance and other activities used to provide a reliable and economical supply of tuna and tuna products to leading companies in the global tuna industry.  Tri Marine Spain, S.L. is the Tri Marine subsidiary that buys tuna from Tri Marine International (Pte), Ltd., and Tri Marine International, S. DE R.L. (and sometimes from other vendors) and then sells the tuna to Tri Marine Spain, S.L.'s Spanish customers.

61239-0009/LEGAL28677829.1                                                    13-CV-05662-RGK (Ex)

1      3.     Defendant Indemnity Insurance is a Pennsylvania corporation with its

2 principal offices in Philadelphia, Pennsylvania, and is duly authorized to transact

3 business in the State of California. Indemnity Insurance is or was in the business of

4 providing insurance. Tri Marine is informed and believes, and on that basis alleges,

5 that Indemnity Insurance transacts business in the State of California and the

6 County of Los Angeles.

7      4.     Tri Marine is ignorant of the true names and capacities, whether

8 individual, associate, partnership, corporate, or otherwise, of the Defendants

9 fictitiously designated herein as Does 1 through 10, and therefore sues those

10 Defendants by such fictitious names. Tri Marine will seek leave of Court to amend

11 this Complaint when the true names and capabilities of these fictitiously-designated

12 Defendants have been ascertained. Tri Marine is informed and believes, and on that

13 basis alleges, that Does 1 through 10, in some way unknown to Tri Marine, have

14 caused or are otherwise responsible for the losses alleged herein, and that Does 1

15 through 10 are authorized to, and do, transact business in the State of California and

16 the County of Los Angeles.

17      5.     Tri Marine is informed and believes, and on that basis alleges, that at

18 all times pertinent herein, each defendant was an agent and/or employee of every

19 other defendant. In doing the things alleged in the causes of action stated herein,

20 each defendant was acting within the course and scope of this agency and/or

21 employment and was acting with the consent, permission and/or authorization of

22 each of the remaining defendants. All actions of each defendant alleged in the

23 causes of action stated herein were ratified and/or approved by every other

24 defendant and/or its officers or managing agents, and by agreeing actively to

25 conceal the true facts regarding the wrongful practices alleged herein, each

26 defendant engaged in conspiratorial conduct with every other defendant.

27

28

1           **JURISDICTION AND VENUE**

2         6.    This Court has jurisdiction of this matter because the amount in

3 controversy exceeds the jurisdictional minimum of the Court, exclusive of costs and

4 interest.  Moreover, this Court has jurisdiction over this matter because Indemnity

5 Insurance has had contacts with the State of California regarding the matters

6 alleged herein, and/or is doing business in the State of California.  Moreover, on or

7 about August 6, 2013, Indemnity Insurance removed this case from the Superior

8 Court of California for the County of Los Angeles to this Court on the grounds of

9 diversity jurisdiction pursuant to 28 U.S.C. § 1332.

10         7.    Venue is proper in Los Angeles County, California because the Marine

11 Policy at issue was negotiated by Tri Marine's insurance broker with an ACE

12 Group of Insurers employee, both of whom are located in this venue, and conducted

13 their negotiations in this venue.  Further, coverage for the claim at issue was

14 pursued by Tri Marine's Chief Risk Officer and Tri Marine's broker's claims

15 representative, are located in this venue and pursued coverage for this claim in this

16 venue.

17     **THE MARINE POLICY'S BROAD COVERAGE FOR BARRATRY, ALL**

18       **OTHER LIKE PERILS, LOSSES AND MISFORTUNES, AND**

19          **WAREHOUSE TO WAREHOUSE COVERAGE**

20         8.    Through Indemnity Insurance, the ACE Group of Insurers issued

21 "open" Marine Policy No. 494680 (a copy of which is attached as Exhibit A and

22 incorporated by this reference) to Tri Marine, and coverage under that Policy has

23 been continuously in force from at least May of 1995 through the present (the

24 "Marine Policy").  Tri Marine's insurance broker and an ACE Group of Insurers

25 representative, both located in California, negotiated the Marine Policy's terms in

26 this venue.

27         9.    The Marine Policy, through its Ocean Cargo Section (Section 1)

28 provides coverage for Tri Marine's goods against numerous express Perils,

-4-

1  including but not limited to "barratry of the masters and mariners, and all other like

2  perils, losses and misfortunes … that have or shall come to hurt, detriment, or

3  damage of the said goods and merchandise, or any part thereof, as may be

4  otherwise provided for herein or endorsed hereon."

5       10.   Barratry covers a broad range of misconduct.  Coverage under the

6  Marine Policy is not limited to the misconduct of ships' masters and mariners,

7  because the Policy extends that coverage to include "other like perils."  Indeed,

8  coverage under the Ocean Cargo Section extends to losses that do not occur aboard

9  ship, as it first attaches on land upon the insured's assumption of the risk for the

10  goods and continues until the goods reach their final destination on land.  This

11  extension of coverage beyond the ship is called Warehouse to Warehouse coverage,

12  and is applicable "while goods insured are in transit and/or awaiting transit until

13  delivered to the final warehouse at the destination … or until the expiry of 15 days

14  (or 30 days if the destination to which the goods are insured is outside the limits of

15  the port), whichever occurs first."

16       11.   The Ocean Cargo Section provides a $10 million limit of coverage per

17  claim applicable to "goods on any one vessel or connecting conveyance."  The

18  reference to "connecting conveyance" further demonstrates the applicability of this

19  coverage to situations that do not occur aboard ship.

20       12.   The Ocean Cargo Section of the Marine Policy also covers the

21  expenses and costs that the insured incurs to mitigate losses it suffers, pursuant to

22  the Ocean Cargo Section's Sue & Labor clause providing that, "in the case of any

23  loss or misfortune, it shall be lawful and necessary for [Tri Marine] to sue, labor,

24  and travel for, in and about the defense, safeguard and recovery of the goods and

25  merchandise[,]" with the insurer obligated to "contribute in proportion to the sum

26  herein insured."

27

28

## **TRI MARINE AND ITS BUSINESS**

13.     Tri Marine Spain, S.L. is a subsidiary of Tri Marine International, Inc. The various Tri Marine subsidiaries (all of which are insured via the Marine Policy), such as Tri Marine Spain, S.L., engage in fishing, trading, processing, chartering, logistics, international finance, etc. activities used to provide a reliable and economical supply of tuna and tuna products to leading companies in the global tuna industry.  Tri Marine Spain, S.L., located in Bilbao, Spain, is the Tri Marine subsidiary that buys tuna from Tri Marine International, Inc.'s subsidiary Tri Marine International (Pte), Ltd., and Tri Marine International, S. DE R.L. (and sometimes from other vendors) and then sells the tuna to Tri Marine Spain, S.L.'s Spanish customers, which are mainly canneries.  There is normally no intermediary company between Tri Marine Spain, S.L. and its Spanish customers in the sale of tuna.

14.     Tri Marine Spain, S.L. often arranges sales of tuna to its Spanish customers while the tuna is still at sea being transported to Spain.  In that circumstance, either Tri Marine Spain, S.L. or its customers arrange for land transport to take the tuna to the customer's location upon its arrival at a Spanish port.

15.     If a sale has not already been arranged before the tuna's arrival at a Spanish port, then Tri Marine Spain, S.L. arranges land transport to take the tuna to one of the third-party cold storage facilities in Spain with which Tri Marine Spain, S.L. contracts to provide for the storage of tuna awaiting sale to one of Tri Marine Spain, S.L.'s Spanish customers.

16.     Once Tri Marine Spain, S.L. sells the tuna held in cold storage, depending on the terms of the specific sale, either Tri Marine Spain, S.L. or its Spanish customer arranges for transport of the tuna from the cold storage facility to the customer's location.

-6-

### THE DISHONEST EMPLOYEE - ALFONSO BEITIA

17. In the time period relevant to the losses suffered by Tri Marine, Mr. Alfonso Carlos Beitia Urizar ("Beitia") was General Manager of Tri Marine Spain, S.L. Beitia's power as General Manager of Tri Marine Spain, S.L. permitted him to set the terms on which Tri Marine Spain, S.L. sold its tuna, and to control transport of the tuna upon its arrival in Spain. This typically involved land transport of the tuna to one of Tri Marine's contracted cold storage warehouses located in Spain, which constitute the tuna's final destinations under the Marine Policy's Warehouse to Warehouse coverage.

18. The transactions, discussed below, by which Beitia caused losses to Tri Marine were controlled solely by Beitia and were not subject to approval by anyone else. The transactions were made solely on Beitia's authority which, as described below, he abused to the extreme detriment of Tri Marine. Beitia's misconduct constitutes a form of barratry under the broad meaning of barratry under the Marine Policy.

### BEITIA'S UNLAWFUL TAKING OF TRI MARINE SPAIN, S.L.'S PROPERTY

19. Starting no later than 2011, Beitia used various companies that he directly and/or indirectly owned and/or controlled to steal millions of Euros worth of tuna from Tri Marine. Many of the thefts involved fraudulent "sales" transactions (and accompanying deliveries) that began at the Spanish port, resulting in the tuna being stolen from Tri Marine upon its arrival in Spain.

20. These "sales" (and accompanying deliveries) diverted tuna upon arrival at the Spanish port away from what should have been its final destination, Tri Marine's contracted cold storage facilities, where the tuna otherwise would have been held pending a legitimate sale. These "sales" thus occurred while the tuna was still in transit, and are therefore covered under the barratry provision of the Ocean Cargo Section of the Marine Policy.

-7-

1      21.    Tri Marine suffered far more than €3 million in losses due to these

2  dockside thefts of tuna.  Further, Tri Marine expended hundreds of thousands of

3  Euros trying to recover its lost property from Beitia and the companies he used to

4  steal Tri Marine Spain, S.L.'s tuna.  To date, however, Tri Marine Spain, S.L. has

5  recovered nothing from either Beitia, the companies he improperly utilized, or from

6  his co-conspirators.  These additional mitigation losses are covered under the

7  Marine Policy as Sue & Labor costs.

8          **THE ACE GROUP OF INSURER'S FAILURE TO RESPOND TO TRI**

9                    **MARINE SPAIN, S.L.'S CLAIM**

10      22.    Tri Marine's Los Angeles-based broker provided notice to the ACE

11  Group of Insurers in or about May 2011 that Tri Marine suspected that Beitia may

12  have engaged in some sort of theft from Tri Marine.  Tri Marine sought coverage

13  from the ACE Group of Insurers, while further continuing to investigate Beitia's

14  potential misconduct.

15      23.    Tri Marine's California insurance broker pursued the claim with the

16  ACE Group of Insurers.  For its part, the ACE Group of Insurers should have

17  responded by initiating its own investigation, including determining what potential

18  policies and forms of coverage of ACE Group of Insurers had issued to Tri Marine

19  that might cover its losses, but apparently failed to do so in any meaningful way.

20  However, based on its own investigation, which required the expenditure of

21  substantial resources, Tri Marine's Chief Risk Officer, who is located in Los

22  Angeles, provided extensive documentation of its barratry-like theft losses to the

23  ACE Group of Insurers.

24      24.    Tri Marine has complied with all terms and conditions of the Marine

25  Policy, except to the extent that its performance has been or is excused or has been

26  waived by the ACE Group of Insurers.

27      25.    On June 7, 2013, Indemnity Insurance denied any coverage under the

28  Marine Policy, erroneously claiming that there was no coverage under the Cargo

1    Section of the Marine Policy because Beitia was neither a master nor mariner of a

2    ship delivering tuna to Spain, and because the thefts took place on land rather than

3    on a ship.  In doing so, Indemnity Insurance ignored the Marine Policy's

4    Warehouse to Warehouse extension and the extension of a barratry coverage to "all

5    other like perils, losses or misfortunes … that have or shall come to hurt, detriment

6    or damage of said goods and merchandise, as may be otherwise provided for herein

7    or endorsed hereon."  (A copy of Indemnity Insurance's denial letter is attached as

8    Exhibit B, and incorporated by this reference.)  The ACE Group of Insurers in

9    general, and Indemnity Insurance in particular, did not undertake a meaningful

10   investigation prior to this denial, did not ask a single question of Tri Marine or its

11   representatives, did not ask for any additional documents, did not ask to speak to

12   anyone knowledgeable about the losses, apparently did no search of public records

13   in Spain, and apparently did not seek to evaluate what other potential policies or

14   forms of coverage the ACE Group of Insurers had issued to Tri Marine that might

15   cover its losses.

16        26.    Further, in June or July 2013, but only after denying coverage,

17   Indemnity Insurance requested a meeting with Tri Marine to discuss Tri Marine's

18   claim under the Marine Policy.  However, after this initial request for a meeting,

19   Indemnity Insurance took no substantive steps to schedule a meeting, despite

20   numerous attempts on the part of Tri Marine to make this meeting happen.

21   Ultimately, no meeting took place, and rather than meeting with Tri Marine,

22   Indemnity Insurance removed this case to federal court.

### **FIRST CAUSE OF ACTION**

### **(Against Defendant Indemnity Insurance and Does 1-10 for Breach of Contract)**

26        27.    Tri Marine realleges and incorporates by reference herein each

27   allegation contained above.

28

-9-

28.    Tri Marine and Indemnity Insurance entered into a written insurance contract which was in effect from at least May of 1995 through the present, and which provided coverage for Tri Marine's goods against numerous express Perils, including but not limited to "barratry of the masters and mariners, and all other like perils, losses and misfortunes … that have or shall come to hurt, detriment, or damage of the said goods and merchandise, or any part thereof, as may be otherwise provided for herein or endorsed hereon."

29.    Tri Marine has performed each and every obligation, condition, and covenant required of it under the Marine Policy.

30.    Tri Marine has demanded that Indemnity Insurance pay the claim arising out of Beitia's unlawful taking of Tri Marine property.

31.    Indemnity Insurance has breached the contract by unreasonably refusing to pay, and continuing to withhold, insurance policy benefits now due and payable under the terms of the Marine Policy.

32.    Indemnity Insurance further breached the contract by making unreasonable demands on Tri Marine, not engaging in prompt investigations of Tri Marine's claims, and forcing Tri Marine to institute this litigation to obtain its benefits.

33.    As a direct and proximate result of Indemnity Insurance's actions, Tri Marine has incurred substantial damages, including but not limited to, insurance benefits due under the Marine Policy.

34.    As a direct and proximate result of Indemnity Insurance's actions, Tri Marine has suffered general damages in an amount that has not been precisely ascertained, but is estimated to exceed $4 million, and incidental damages for breach of contract.

35.    As a direct and proximate result of Indemnity Insurance's actions, Tri Marine has incurred, and continues to incur economic losses.

61239-0009/LEGAL.28677829.1

36.     As a result of Indemnity Insurance's breach of the Marine Policy, Tri Marine has incurred attorneys' fees and costs, as a result of efforts to secure the benefits of the Marine Policy, in an amount subject to proof.

## SECOND CAUSE OF ACTION

**(Against Defendant Indemnity Insurance and Does 1-10 for Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)**

37.     Tri Marine realleges and incorporates by reference herein each allegation contained above.

38.     Implied in the Marine Policy is a covenant that the ACE Group of Insurers in general, and Indemnity Insurance in particular, would act in good faith and deal fairly with Tri Marine, would do nothing to interfere with Tri Marine's rights to receive the benefits due under the Marine Policy, and that would give at least the same level of consideration to Tri Marine's interests as to their own interests.

39.     The ACE Group of Insurers in general, and Indemnity Insurance in particular, also had a duty under the Marine Policy, the law, and insurance industry custom and practice to conduct a thorough investigation, including searching for all bases that might support Tri Marine's claims for coverage under any policies issued by the ACE Group of Insurers and any forms of coverage in those policies, before issuing any denial of coverage for Tri Marine's losses.

40.     Instead, Indemnity Insurance denied Tri Marine's claim under the Marine Policy simply because the theft was not made by a ship's master or mariner while the tuna was still located onboard ship. In so doing, Indemnity Insurance ignored the broad language of its own policy, including the expansions of coverage under the Warehouse to Warehouse coverage, which encompasses the entirety of the tuna's transit on land and sea from the originating warehouse to the final destination warehouse, and also ignored the coverage for all named perils and any other perils that are similar to ("like") barratry of masters and mariners. Because

-11-

1   Beitia used his power as General Manager to steal the tuna by improperly diverting

2   it upon its arrival at the dock in Spain away from its final contracted cold storage

3   warehouse destination, Beitia's thefts are "like" the barratry of a ship's master or

4   mariner, and are therefore covered as barratry.  Despite the foregoing, Indemnity

5   Insurance denied coverage by erroneously reading its own coverage provisions,

6   including consciously disregarding or narrowly interpreting the actual "like peril"

7   language, as well as of the design of and intent behind the Marine Policy's broad

8   Warehouse to Warehouse coverage.  Furthermore, Indemnity Insurance denied

9   coverage even though it knew that Tri Marine had purchased its Marine Policy with

10  the understanding and expectation that it would cover losses such as Beitia's theft

11  of tuna at dockside.

12         41.    Indemnity Insurance has breached its duty of good faith and fair

13  dealing in the following respects, among others, by:  (a) refusing to pay in bad faith

14  for Tri Marine's loss of tuna stolen by Beitia while still in transit, knowing Tri

15  Marine's claim to be valid; (b) not attempting in good faith to effectuate a prompt,

16  fair, and equitable settlement of Tri Marine's claim for benefits when its obligation

17  to pay had become reasonably clear; (c) asserting grounds for denying coverage

18  that it knows are not supported by, and are contrary to, the actual terms of its

19  policy, the law, insurance industry custom and practice, and the facts; (d) failing to

20  conduct an adequate investigation of Tri Marine's losses and then asserting grounds

21  for denying coverage based on its inadequate investigation; (e) denying coverage

22  without having conducted an adequate or prompt investigation of Tri Marine's

23  losses; (f) failing to inquire fully into other possible bases of coverage that might

24  encompass Tri Marine's losses; (g) failing to inquire fully into other ACE Group of

25  Insurer policies and possible bases of coverage that might encompass Tri Marine's

26  losses; (h) forcing Tri Marine to institute and to continue this lawsuit in order to

27  recover benefits due under the Marine Policy; and (i) giving greater consideration

28  to its own interests than to Tri Marine's interests.

-12-

42.     Tri Marine is informed and believes and based thereon alleges that Indemnity Insurance has breached its duty of good faith and fair dealing owed to Tri Marine by other acts or omissions of which Tri Marine is presently unaware and which will be shown according to proof at the time of trial.

43.     The denial of benefits claimed by Tri Marine under the Marine Policy was done by Indemnity Insurance without reasonable cause.

44.     As a direct and proximate result of the unreasonable conduct of Indemnity Insurance, Tri Marine has been required to retain attorneys to obtain benefits due to them under the Marine Policy.

45.     Indemnity Insurance's conduct described herein was undertaken by its managing agents or officers, identified herein as Does 1 through 10, who were responsible for Indemnity Insurance's general management and operations including but not limited to claims supervision and operation, underwriting, communications, and decisions.  The aforementioned conduct of these managing agents or officers was therefore undertaken on behalf of Indemnity Insurance and with conscious disregard of Tri Marine's rights.  Indemnity Insurance further had advance knowledge of the action and conduct of the individuals whose actions and conduct were ratified, authorized, and approved by these managing agents and officers who precise identities are unknown and who are therefore identified and designated herein as Does 1 through 10.

46.     Indemnity Insurance consciously disregarded Tri Marine's rights and acted with an intent to injure Tri Marine.  Indemnity Insurance's conduct constitutes oppression, fraud, and/or malice as defined in California Civil Code section 3294. Tri Marine is further informed and believes, and on that basis alleges that: (a) the conduct described herein constituting oppression, fraud, or malice was committed by one or more officers, directors, or managing agents of Indemnity Insurance who acted on its behalf; or (b) the conduct described herein constituting oppression, fraud, or malice was authorized by one or more officers, directors, or

-13-

1  managing agents of Indemnity Insurance; or (c) one or more officers, directors, or

2  managing agents of Indemnity Insurance knew of the conduct constituting

3  oppression, fraud, or malice and adopted or approved that conduct after it occurred.

4

5                                      **PRAYER**

6         WHEREFORE, Plaintiffs Tri Marine demand judgment against Defendant

7  Indemnity Insurance as follows:

8                        **FOR BREACH OF CONTRACT**

9                          **(FIRST CAUSE OF ACTION)**

10        1.      For damages according to proof at the time of trial, in excess of $4

11  million;

12        2.      For reasonable attorneys' fees and expenses incurred in obtaining the

13  benefits due under the Marine Policy, plus interest, according to proof at the time of

14  trial;

15        3.      For all prejudgment and post judgment interest that can properly be

16  awarded;

17        4.      For costs of suit incurred herein; and

18        5.      For such other further and/or different relief as may be just and proper.

19  **FOR TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD**

20                      **FAITH AND FAIR DEALING**

21                        **(SECOND CAUSE OF ACTION)**

22        1.      For general damages for breach of the implied covenant of good faith

23  and fair dealing, in an amount to be determined at trial;

24        2.      For special and consequential damages for breach of the implied

25  covenant of good faith and fair dealing;

26        3.      For attorneys' fees and costs of suit incurred in obtaining the benefits

27  owed under the Marine Policy, pursuant to *Brandt v. Superior Court*, 37 Cal. 3d

28  813 (1985), according to proof;

                                        -14-

1     4.    For punitive damages and exemplary damages according to proof;

2     5.    For all prejudgment and post judgment interest that can properly be

3 awarded; and

4     6.    For such other further and/or different relief as may be just and proper.

DATED: December 16, 2013

**PERKINS COIE LLP**

By:

Lester O. Brown, Bar No. 160828
LBrown@perkinscoie.com
Thomas M. McMahon, Bar No. 106074
TMcMahon@perkinscoie.com
James G. Bernald, Bar No. 205519
JBernald@perkinscoie.com

Attorneys for Plaintiffs
TRI MARINE INTERNATIONAL, INC.;
TRI MARINE INTERNATIONAL (PTE)
LTD.; TRI MARINE SPAIN, S.L., and TRI
MARINE INTERNATIONAL, S. DE R.L.

-15-

**EXHIBIT A**

**EXHIBIT A**

MARINE POLICY 494680 (Re-write of 494680)
of the
**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA**

**SECTION I
OCEAN CARGO**

**ASSURED**

1.  Indemnity Insurance Company of North America, hereinafter referred to as the Company, in consideration of premiums to be paid at rates hereinafter stated, does insure, lost or not lost

    **Tri-Marine International, Inc. and/or Tri-Marine International (Pte) Ltd. and/or Tri-Oceanic Pte Ltd., Tri-Marine Europe SPA, Tri-Marine Spain SRL, Cape Fisheries Holdings LP, National Fisheries Developments Limited, Tri-Marine International SA de CV, Tri-Marine (FSM) Inc., Tri-Marine Fish Company LLC, Tri-Marine International SA, Tri-Oceanic Overseas Holdings LLC, Tri-Oceanic US Holdings LLC, Tri-Oceanic Overseas Holdings Ltd., Tri-Marine International SRL, Tri-Marine International Spain SRL, Renato Curto, an individual, and/or subsidiary companies or corporations, firms or organizations as may now exist or hereinafter be constituted for which the Assured has the responsibility of placing insurance and/or from whom they have instructions to insure.**

    (Hereinafter referred to as· The Assured). For account of whom it may concern.

**MAILING ADDRESS**

| Tri-Marine International (PTE) Ltd. | Copies to be sent to: |
| 15 Fishery Port Road | Tri-Marine International, Inc. |
| Singapore 619735 | 10500 NE 8th Street #1888 |
|  | Bellevue WA 98004 |

**LOSS PAYABLE**

2.  Loss, if any, payable to Assured or order.

**GOODS INSURED**

3.  To attach upon all shipments of lawful goods and merchandise consisting principally of:

    A. **Lawful goods and/or merchandise** consisting principally of, but not limited to fresh, frozen and canned fish and seafood of every kind and description, and related merchandise incidental to the business of the Assured, properly packed for export, including all raw supplies, packaging goods and materials, and ship chandlery supplies. Business personal property, personal effects and household goods.  All other interests handled by the assured in the course of their business and/or in the care, custody and control of the Assured whether in transit or store or elsewhere anywhere in the world includ..g all loading and unloading risks, including prepaid freight and/or advanced freight and freight payable "vessel lost or not lost" under and/or o.. deck shipped by or consigned to the Assured and/or their agents and/or others, their own merchandise or that of others in which they may be interested.  Also to cover all shipments made for the account of others which the Assured may agree or receive instructions to insure hereunder.

494680           1

**B. Liquids in Bulk**

Shipments of liquids in bulk are insured in accordance with the following clauses

1. Against all risks of physical loss or damage from any external cause, including loss or damage arising from contamination, however caused, irrespective of percentage.

2. This insurance is to pay claims for loss in weight and/or shortage and/or leakage and/or nondelivery and/or loss of contents, howsoever caused, but this company to be liable only for such loss in excess of one-half percent (1/2%) each tank separately insured, which one-half percent shall be deducted in all settlements.

3. This insurance is warranted free from any claims arising out of the inherent vice of the cargo or consequent upon delay, detention, loss of time and/or loss of market.

4. It is agreed that this insurance shall cover continuously from the time of leaving containers and/or shore tanks at initial point of shipment, during the entire course of transit (including hose lines, pipe lines, lighters, tank barges and/or tank cars and/or tank trucks) until safely delivered to containers and/or other vessels and/or shore tanks at destination.

5. It is expressly understood and agreed that all risks covered hereunder are accepted subject to satisfactory survey and loading certificate of approved surveyors.

6. Warranted by the Assured that ship's storage tanks be cleaned, tested and approved prior to loading of cargo and a certificate thereof be given by surveyors approved by this company.

   A careful check as to gauge, weights and temperature of cargo shall be taken by surveyor at port of loading and a certificate issued in accordance. It is understood and agreed tat the surveyor's actual determination of weight loaded into the vessel and/or craft shall be accepted as the amount shipped. The surveyor at port of loading shall obtain a certificate from a qualified chemist certifying that, prior to loading, the cargo insured hereu .:der is free from any apparent indication of contamination. On completion of loading, samples are to be taken to dete,-nine the condition of the cargo.

7. In the event of cargo insured being intended for loading or discharge into tank barges, lighters or tank cars for conveyance to or from shore tanks, warranted by the Assured that prior to loading into such conveyance, a certificate that same has been approved shall be obtained from a surveyor approved by this Company.

8. In the event of contamination, a test or tests shall be made by approved chemists, and their reports shall be the basis for determining the measure of damage. Provided the damage be claimable under this policy, this Company shall be liable for the actual cost of reconditioning (including all expenses incident thereto, such as transportation, labor, insurance and storage), loss in weight resulting from reconditioning, and depreciation in quality arising from the contamination, less expenses which would have been incurred had there been no loss.

9. Should the surveyor issue a certificate stating loss has occurred, the amount of loss shall be determined by a comparison of the survey provided for in Paragraph 6 above, and the report of the surveyor as provided for in Paragraph 8 above. In case of total loss, the loss to be adjusted on the basis of shipped weight, less allowances, if any.

494680

2

10. All surveyors' fees to be at the expense of the Assured, except that in the event of a loss, this Company shall be liable for any survey fees or costs necessary to determine the amount of the claim.

11. In the event of non-compliance with any of the warranties and provisions above, the following insuring conditions shall apply to the shipment in question:

Against all risks of physical loss or damage from any external cause, excluding claims for shortage, leakage and/or contamination unless caused by or arising out of:

A. fire or explosion, howsoever or wheresoever occurring;
B. the vessel or craft being stranded, sunk, burnt or in collision or in contact with any substance or thing (ice included) other than water;
C. a forced discharge of cargo;

PROVIDED, however, that notwithstanding the foregoing, this company shall be liable for contamination resulting from heavy weather and loss of liquid insured from connecting pipe lines, flexible or otherwise, in loading, transhipment or discharge.

Claims are to be paid irrespective of percentage, except that claims for shortage are subject to a deduction of one-half percent (1/2%) of each tank separately insured.

## INSURABLE INTEREST

4. To cover all lawful shipments made by or to the Assured for their own account as Principals or as Agents for others and in which they have an insurable interest; or for the account of others from whom written instructions to insure have been received prior to any known or reported loss, damage, or accident, and prior to sailing of the vessel.

## VALUATION

5. Goods in Transit and Goods in Storage

For Goods Sold:
a. Insured shipments shall be valued at Assured's sales (selling) price.
b. Shipments to and from Italy only and/or for storage in Italy shall be valued at Assured's sales (selling) price plus 10%.

For Goods Not Sold (includes inter-company sales; also applies to Italy shipments/storage):
a. Insured shipments and/or goods in storage shall be valued at Assured's purchase price (including all charges in the invoice), plus cost of insurance, plus any prepaid or advanced or guaranteed freight not included in the invoice, plus 15% of the sum of the foregoing items.

Bunker Fuel
Bunker Fuel shall be valued at Assured's purchase price. Foreign currency to be converted into dollars at banker's sight rate of exchange applicable at date of loss to each invoice and/or credit and/or draft; unless superseding basis of valuation appears hereafter.

USFDA Rejection
USFDA Rejection valuation shall be CIF plus 20%.

494680

3

Business Personal Property
Business Personal Property shall be valued at Replacement Cost, of like kind and quality.

Household Goods and Personal Effects
Household Goods and Personal Effects shall be valued at Actual Cash Value.

## ATTACHMENT & TERMINATION

6. To attach on each shipment made on and after **January 1, 2008** and to remain in force continuously thereafter until cancelled by either party giving the other 60 days written notice; such cancellation, however, shall not affect any transit risk on which this insurance has attached prior to the effective date of said cancellation. Notwithstanding the above, coverage provided hereunder on any risks insured on a time basis, or insured for coverage at any location, shall terminate as of the effective date of the cancellation.

    Attachment begins at the transfer point from the time the goods become the Assured's risk or the Assured assumes risk and continues whilst undergoing processing and/or storage and/or consolidation or until delivery to the final destination.

## GEOGRAPHICAL LIMITS

7. From ports and/or places in the world to ports and/or places in the world directly or via ports and/or places in any order, including the risk of transshipment by land, air or water, including while in storage worldwide ashore or afloat.

    It is understood and agreed that the policy shall not apply to shipments to or from countries contrary to the laws of the United States of America or any subdivision thereof, or presidential decrees, or any other United States of America authority.

    The insurance attaches from the time the goods leave the warehouse at the place named in the certificate, special policy, or declaration for the commencement of transit and continues during the ordinary course of transit, including customary transshipment, if any, until the goods are delivered to the final warehouse at the destination named in the certificate, special policy, or declaration, or a substituted destination per description in the policy. Also covers goods prior to their arrival at the final destination while temporarily detained during the ordinary course of transit for purposes of consolidation, deconsolidation, containerization, decontainerization and forwarding, anywhere in the world whether prior to loading or after discharge from the overseas vessel for a period not exceeding thirty (30) days after arrival at the consolidation point. Also covers goods held in storage at locations specified in the policy.

## ECONOMIC SANCTIONS AND EMBARGO PROGRAMS OF THE UNITED STATES

8. This policy excludes loss otherwise payable to an individual, organization, or authority that is the subject of any embargo or other trade sanction imposed by the United States Government; or that arises out of any trade in, or shipment of, any goods or merchandise prohibited by such embargo or sanction, whether or not deemed lawful under the laws of another nation.

494680

4

**CONVEYANCES**

9. A. Per Iron or Steel Steamers and/or vessels and connecting conveyances by land or otherwise, but excluding sailing vessels with or without auxiliary power except as connecting conveyances.
   B. By Aircraft and connecting conveyances.
   C. By first class or registered Mail, ordinary or registered or government insured parcel post, by air or otherwise.
   D. By Land conveyance in accordance with a through bill of lading.

**CRAFT CLAUSE (February 1949)**

10. Including transit by craft and/or lighter to and from the vessel.  Each craft and/or Lighter to be deemed a separate insurance.  The Assured will not be prejudiced by any agreement exempting lightermen from liability.

**LIMIT OF LIABILITY**

11. This company shall not be liable for more than:

| | | |
|---|---|---|
| (a) | $10,000,000 | in respect of goods on any one vessel or connecting conveyance, or in any one place at any one time, NOR in the following cases for more than: |
| (b) | $ 1,000,000 | in respect of goods shipped ON DECK in any one vessel subject to ON DECK bills of lading; |
| (c) | $ 1,000,000 | in respect of goods shipped by any one aircraft or connecting conveyances; |
| (d) | $    100,000 | in respect of goods in any one approved metal barge or by any one tow (other than as a connecting conveyance); |
| (e) | $    100,000 | in respect of goods in any one package transported by mail or parcel post; |
| (f) | $    750,000 $ 1,500,000 | in respect to bunker fuel in any one conveyance; except MV Frio Nikolyev |
| (g) | $      50,000 | in respect to destruction of cargo in any one conveyance; |
| (h) | Per Schedule | in respect to goods in any named warehouse; |
| (i) | $ 1,000,000 | in respect to goods in any one unnamed warehouse; |
| (j) | $ 1,000,000 | in respect to goods transported via inland transit in any one conveyance; |
| (k) | $    250,000 | in respect to Business Personal Property, Household Goods and Personal Effects. |

If the total value at risk exceeds the applicable limit of liability provided by this Policy, the Assured shall nevertheless report to this Company the full amount at risk and shall pay full premium thereon.  The acceptance by this Company of such reports and premium shall not alter or increase the limits of this Company's liability, but this Company shall be liable for the full amount of loss up to but not exceeding the applicable limit of liability.

**ACCUMULATION CLAUSE**

12. Should there be an accumulation of interests beyond the limits expressed in this Policy by reason of any interruption of transit and/or occurrence beyond the control of the Assured, or by reason of any casualty at a transshipping point and/or on any connecting conveyance, this policy shall attach for the full amount at risk, but in no event for more than twice the Policy limit as expressed in the

494680

5

Limit of Liability Clause, provided notice be given this company as soon as practicable upon becoming known to the Assured.

## PERILS CLAUSE

**13.** Touching the adventures and perils which this company is contented to bear and takes upon itself, they are of the seas, fires, jettisons, assailing thieves, barratry of the masters and mariners, and all other like perils, losses and misfortunes (illicit or contraband trade excepted in all cases), that have or shall come to the hurt, detriment, or damage of the said goods and merchandise, or any part thereof, as may be otherwise provided for herein or endorsed hereon.

## AVERAGE TERMS

**14.** Warranted free from Particular Average unless the vessel or craft be stranded, sunk, or burnt, but notwithstanding this warranty, these Assurers are to pay any loss of or damage to the interest of the Assured which may reasonably be attributed to fire, collision or contact of the vessel and/or craft and/or conveyance with any external substance (ice included) other than water, or to discharge of cargo at port of distress.  Also to include the risk of jettison and washing overboard irrespective of percentage. The foregoing warranty, however, shall not apply where more limited or broader terms of Average are made applicable by this policy.

Subject to the Paramount Warranties of this Policy the terms of Average shall be as follows:

A.  (1)  Shipments ON DECK AND SUBJECT TO AN "ON DECK" BILL OF LADING: -(which must be so declared to this Company) are insured; F.P.A. (Free of Particular Average) including jettison and/or washing overboard.

(2)  Except while subject to an "ON DECK" BILL OF LADING

**Shipments of seafood of every kind and description, packaging supplies and related lawful goods and/or merchandise are insured:**

Against all risks of physical loss or damage from any external cause, including loss due to deterioration or spoilage as a result of improper temperature, irrespective of percentage, but excluding nevertheless

i.  The risks of war, strikes, riots, seizure, detention and other risks excluded by the Nuclear Exclusion Clause, the FC&S (Free of Capture and Seizure) Warranty and the SR&CC (Strikes, Riots & Civil Commotions) Warranty in this Policy, excepting to the extent that such risks are specifically covered by endorsement.
ii.  Bone taint and/or improper dressing;
iii.  Claims for or consequent upon detainment, delay, loss of time or loss of market, whether arising from a peril insured against or otherwise.

This insurance is extended, notwithstanding the FC&S Warranty, and subject to all other insuring terms, conditions and warranties set forth elsewhere in this policy, to cover physical loss, damage or deterioration from any external cause, including delay, directly arising out of the

494680

6

performance of inspection duties and/or services by customs agents or other duly constituted governmental agencies.

**(3) Bunker Fuel:**

Bunker fuel is defined as marine diesel oil (MDO), intermediate fuel oil (IFO), and any other petroleum derivative or distillate used for the propulsion of the vessel aboard which it is carried.  It is insured:

> Warranted Free from particular Average unless the loss is as a direct consequence of the vessel or craft being stranded, sunk or burnt, but notwithstanding this warranty, these underwriters are to pay any loss or damage to the interest insured which may reasonably be attributed to fire, collision or contact of the vessel or craft with any external substance (ice included) other than water.

B.  Goods and/or merchandise shipped on board the ocean vessel in containers (Intermodal, Over the Road or similar type) are insured subject to the provisions of this Policy applying to Under Deck shipments, even though such containers be stowed On Deck, provided such goods are subject to an Under Deck or an optional Under Deck/On Deck Bill of Lading.

C.  Shipment by AIR, MAIL or EXPRESS:
(1) To cover against all risks of physical loss or damage from any external cause irrespective of percentage, but excluding those risks excluded by the Paramount Warranties of this Policy.
> ii.  Shipments made by AIR FREIGHT, AIR MAIL, or AIR EXPRESS are warranted free from claim for loss or damage due to cold or changes in atmospheric pressure.
> iii.  Warranted not less than 0% of the invoice value of the goods insured be declared to the airlines and connecting conveyances and so noted on all bills of lading.
> iv.  Warranted by the Assured that all packages mailed and insured under this Policy will be mailed in conformance with Parcel Post or Foreign Mail Regulations existing at the time of shipment in the country of exportation.

It is hereby understood and agreed that the Average Terms Clause, Section titled "Shipments by AIR, MAIL or EXPRESS" shall include the following:

Wherever the words "ship", "vessel", "seaworthiness", "ship or vessel owner" appear in this Policy, they are deemed to include also the words "aircraft", "airworthiness", "aircraft owner".

D.  DEDUCTIBLE:  Each claim for loss or damage occurring hereunder shall be adjusted separately and from the amount of each such adjusted claim the sum of $20,000 shall be deducted per occurrence with respect to bulk shipments of fish, seafood and related goods only.  With respect to containerized shipments of fish, seafood and related goods only, the sum of $5,000 shall be deducted per occurrence.  The deductible shall not apply to losses recoverable under the FPA, Explosion, and Shore Perils Clauses of this Policy, or to General Average contributions, Salvage charges, or Sue and Labor charges.

494680

7

With respect to Ship Chandlery Supplies only the deductible shall be **$2,500** per occurrence.

With respect to Business Personal Property, Personal Effects and Household Goods only, the deductible shall be **$2,500** per occurrence.

## WAREHOUSE TO WAREHOUSE

**15.** This insurance attaches from the time the goods insured leave the Warehouse and/or Store, at the place named in the Policy for the commencement of the transit, and continue during the ordinary course of transit, including customary transshipment, if any, until the goods insured are discharged overside from the overseas vessel at the final port.

Thereafter the insurance continues while goods insured are in transit and/or awaiting transit until delivered to the final warehouse at the destination named in the Policy or until the expiry of 15 days (or 30 days if the destination to which the goods are insured is outside the limits of the port), whichever occurs first. The time limits referred to are to be calculated from midnight of the day on which the discharge overside of the goods insured from the overseas vessel is completed. The goods insured are held covered at a premium to be arranged in the event of transshipment, if any, other than as above and/or in the event of delay in excess of the stated time limits arising from circumstances beyond the control of the Assured.

Note: It is necessary for the Assured to give prompt notice to these Assurers when they become aware of an event for which they are "held covered" under this Policy and the right to such coverage is dependent on compliance with this obligation.

## MARINE EXTENSION CLAUSE (May 1952)

**16.** This policy is extended to cover all shipments which become at risk hereunder in accordance with the following clauses, which supercede and override Clause 15 (Warehouse to Warehouse) wherever they may be contradictory or at a variance.

(1) This insurance attaches from the time the goods leave the warehouse at the place named in the policy for the commencement of the transit and continues until the goods are delivered to the final warehouse at the original destination named in the policy, or a substituted destination as provided in Clause III hereunder.

(2) This insurance to cover the goods during:
  (i) deviation, delay, forced discharge, re-shipment and transshipment.
  (ii) Any other variation of the adventure arising from the exercise of a liberty granted to the shipowner or charterer under the contract of affreightment.

(3) In the event of exercise of any liberty granted to the shipowner or charterer under the contract of affreightment whereby such contract is terminated at a port or place other than the originally insured destination, the insurance continues until the goods are sold and delivered at such port or place; or if the goods be not sold but are forwarded to the originally insured destination or to any other destination this insurance continues until the goods have arrived at final warehouse as provided in Clause I.

494680

8

(4) If while this insurance is still in force and before the expiry of fifteen (15) days from midnight of the day on which the discharge is completed, the goods are resc:d (not being a sale within the terms of Clause III) and are to be forwarded to a destination other than that covered by thi; insurance, the goods are covered hereunder while deposited at such port of discharge until again in transit or until the expiry of the aforementioned fifteen (15) days, whichever shall occur first. If a sale is effected after the expiry of the aforementioned fifteen (15) days, while this insurance is still in force, the protection afforded hereunder shall cease as form the time of the sale.

(5) Held covered at a premium to be arranged in case of change of voyage or of any omission or error in the description of the interest, vessel or voyage.

(6) This insurance shall in no case be deemed to cover loss, damage or expense proximately caused by delay or inherit vice or nature of the subject matter insured.

(7) It is a condition of this insurance that there shall be no interruption or suspension of transit unless due to circumstances beyond the control of the Assured.

Nothing in the foregoing shall be construed as overruling the F.C.& S. Clause or as extending this insurance to cover any risk of war or consequences of hostilities.

NOTE - It is necessary for the Assured to give prompt notice to these Assurers when they become aware of an event for which they are "held covered" under this Policv and the right to such coverage is dependent on compliance with the obligation.

**SOUTH AMERICA CLAUSE**

17. With respect to all shipments to South America and notwithstanding anything Contained elsewhere herein to the contrary (particularly the Marine Extension Clauses) the insurance provided hereunder shall continue to cover for sixty (60) days (ninety (90) days in shipments via the Magdalena River) after completion of discharge of the overseas vessel at port of destination or until the goods are delivered to the final warehouse at destination, whichever may first occur, and shall then terminate.

The time limit referred to above to be reckoned from midnight of the day on which the discharge of the overseas vessel is completed.

**PARAMOUNT WARRANTIES (April 1980)**

18. THE FOLLOWING WARRANTIES SHALL BE PARAMOUNT AND SHALL NOT BE MODIFIED OR SUPERCEDED BY ANY OTHER PROVISION INCLUDED HEREIN OR STAMPED OR ENDORSED HEREON UNLESS SUCH OTHER PROVISION REFERS SPECIFICALLY TO THE RISKS EXCLUDED BY THESE WARRANTIES AND EXPRESSLY ASSUMES THE SAID RISKS:

F.C.& S. (a) NOTWITHSTANDING ANYTHING HEREIN CONTAINED TO THE CONTRARY THIS INSURANCE 'S WARRANTED FREE FROM:

(I) capture, seizure, arrest, restraint, detainment, confiscation, preemp;'nn, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise;

494680

9

(ii)     all loss damage or expense, whether in time of peace or war caused by (i) any weapon of war employing automatic or nuclear fission and/or fusion or other reaction or radioactive force or matter or (ii) any mine or torpedo;

(iii)    all consequences of hostilities or warlike operations (whether there be a declaration of war or not), but this warranty shall not exclude collision or contact with aircraft, or with rockets or similar missiles (other than weapons of war) or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion, unless caused directly (and independently of the nature of the voyage or service which the vessel is concerned or, in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purpose of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power;

(iv)    the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom; or from the consequences of the imposition of martial law, military or usurped power; or piracy.

**S.R. & C.C. (b)** Warranted free from loss, damage or expense caused by or resulting from:

(i)     strikes, lockouts, labor disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrences or disorders;

(ii)    vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional.

**NUCLEAR EXCLUSION CLAUSE (December 1990)**

(c ) THE FOLLOWING CLAUSE SHALL BE CONSIDERED PARAMOUNT AND SHALL NOT BE SUPERSEDED BY ANY OTHER PROVISION STAMPED OR ENDORSED HEREON:

Notwithstanding anything to the contrary herein, it is hereby understood and agreed that this policy shall not apply to any loss, damage, liability or expense due to or arising out of, whether directly or indirectly, nuclear reaction, radiation or radioactive contamination, regardless of how it was caused.  However, subject to all provisions of this policy, if this policy insures against fire, then direct physical damage to the property insured within the United States, or any territory of the United States or Puerto Rico by fire directly caused by the above excluded perils, is insured, provided that the nuclear reaction, radiation or radioactive contamination was not caused, whether directly or indirectly, by way of the perils excluded by the F.C. & S. Warranty of this policy.

Nothing in this endorsement shall be construed to cover any loss, damage, liability or expense caused by nuclear reaction, radiation or radioactive contamination arising directly or indirectly from the fire mentioned above.

494680                                    10

**SUE & LABOR**

19. In case of any loss or misfortune, it shall be lawful and necessary for the Assured, his or their factors, servants and assignee, to sue, labor and travel for, in and about the defense, safeguard and recovery of the goods and merchandise, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or this Company, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of abandonment; to the charges whereof, this Company will contribute in proportion to the sum herein insured.

**BOTH TO BLAME CLAUSE (February 1949)**

20. Where goods are shipped under a Bill of Lading containing the so-called "Both To Blame Collision" Clause, these Assurers agree as to all losses covered by this insurance to indemnify the Assured for this Policy's proportion of any amount (not exceeding the amount insured) which the Assured may be legally bound to pay to the shipowners under such clause. In the event that such liability is asserted the Assured agrees to notify these Assurers who shall have the right at their own cost and expense to defend the Assured against such claim.

**INCHMAREE CLAUSE (February 1949)**

21. This insurance is also specifically to cover any loss of or damage to the interest insured hereunder, through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation and/or management of the vessel by the master, mariners, mates, engineers or pilots.

**EXPLOSION CLAUSE (February 1949)**

22. Including the risk of explosion, howsoever or wheresoever occurring during the currency of this insurance, unless excluded by Paramount warranties set forth in this policy.

**MACHINERY CLAUSE (February 1949)**

23. When the property insured under this policy includes a machine consisting, when complete for sale or use, of several parts then in case of loss or damage covered by this insurance to any part of such machine, these Assurers shall be liable only for the proportion of the insured value of the part lost or damaged, or at the Assureds option for the cost and expense, including labor and forwarding charges, of replacing or repairing the lost or damaged part; but in no event shall these Assurers be liable for more than the insured value of the complete machine.

**FUMIGATION CLAUSE**

24. In the event of the vessel being fumigated and direct loss or damage to Assureds merchandise results therefrom, this Company agrees to indemnify the Assured for such loss or damage, and the Assured agrees to subrogate to this Company any recourse that they may have for recovery of such loss or damage from others.

EXHIBIT A - PAGE 26

**SHORE CLAUSE (February 1949)**

25. Where this insurance by its terms covers while on docks, wharves, or elsewhere on shore, and/or during land transportation, it shall include the risks of collision, derailment, overturning or other accident to the conveyance, fire, lightning, sprinkler leakage, cyclones, hurricanes, earthquakes, floods (meaning the rising of navigable waters), and/or collapse or subsidence of docks or wharves, even though the insurance be otherwise F.P.A.

**WAREHOUSING & FORWARDING, PACKAGES LOST IN LOADING ETC. (February 1949)**

26. Notwithstanding any average warranty contained herein, this Company agrees to pay any landing, warehousing, forwarding and special charges for which this policy in the absence of such warranty would be liable. Also to pay the insured value of any package or packages which may be totally lost in loading, transshipment or discharge.

This insurance will also pay reasonable landing, warehousing, forwarding and special charges as a result of the insolvency or financial default of the owners, charterers, managers or operators of the vessel.

**DELIBERATE DAMAGE -- POLLUTION HAZARD (July 1, 1974)**

27. This insurance also covers, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under the policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

This clause shall not increase the Limits of Liability provided for elsewhere herein.

**IMPORT DUTY**

28. This insurance also covers, subject to policy terms of average, the risk of partial loss by reason of perils insured against on the duties imposed on goods imported into the United States or Canada and insured hereunder, it being understood and agreed, however, that when the risk upon the goods continues beyond the time of landing from the overseas vessel, the increased value, consequent upon the payment of such duties, shall attach as an additional insurance upon the goods from the time such duty is paid or becomes due, to the extent of the amounts thereof actually paid or payable.

Any limit of liability expressed in the policy shall be applied separately to such increased value.

The Assured warrants that on all risks insured hereunder a separate amount shall be reported sufficient to cover the said duty, upon which the rate of premium shall be a named a percentage of the merchandise rate.

The Assured will, in all cases, use reasonable efforts to obtain abatement or refund of duties paid or reclaimed in respect of goods lost, damaged or destroyed. It is further agreed that the Assured shall, when this Company so elects, surrender the merchandise to the Customs authorities and recover duties

494680

12

thereon as provided by law, in which event claim under this policy shall be only for a total loss of the merchandise so surrendered and expenses.

This insurance on duty and/or increased value shall terminate at the end of the import movement covered under this policy (including the Warehouse to Warehouse and Marine Extension Clauses incorporated herein), but nothing contained in these clauses shall alter or affect any coverage granted elsewhere in the policy during the shortage or transit subsequent thereto.

## CONTINGENT COVERAGE

29. This policy is extended to cover shipments sold on terms whereby the Assured is not obliged to furnish ocean marine insurance but only as follows:

    (1) This Company will guarantee to the Assured the prompt collection of any loss or damage covered by the terms of this policy to merchandise shipped, but for which payment has been refused or withheld by the consignee. This Company will advance to the Assured the amount of the loss as a loan without interest, which shall be repayable upon remittance of the purchase price by the consignee or to the extent of any recovery received by the Assured from insurance effected by the consignee or otherwise.

    (2) This coverage is a special agreement between the Assured and this Company and the Assured agrees that no knowledge of this coverage shall be made available to buyer or consignee in any invoice, Certificate of Insurance, or otherwise.

    (3) As soon as is practicable the Assured shall report to the Company (in accordance with the Valuation Clause contained herein) shipments covered by this endorsement and pay premium thereon at the rate of **Included in Deposit** at the applicable rates.

## FOB/FAS

30. It is hereby understood and agreed that this policy is extended to cover, subject to its terms and conditions, goods and/or merchandise sold on F.O.B., F.A.S., or similar terms whereby marine insurance is effected by the buyer. This insurance attaches from commencement of transit at the Assured's plant or other place of shipment and terminates when the Assured's interest ceases but not later than the time the goods and/or merchandise are laden on board the overseas vessel, or at time of transfer of title, whichever shall first occur.

    This insurance includes any lighterage, and for not exceeding thirty days while held at terminals, on wharves, piers, docks, quays, storage barges, boats and lighters while awaiting loading on board the overseas vessel or held covered at an additional premium if required, provided prompt notice is given the Company.

    This insurance, however, is not to attach as respects any goods and/or merchandise if, at the time of loss or damage, there is any other insurance which would attach if the coverage provided under the endorsement had not been effected, except that this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted. Nevertheless, any direct loss sustained by the Assured otherwise recoverable hereunder shall be advanced as a loan without interest repayable out of any recovery the Assured may receive out of such other insurance.

494680

13

**CONSOLIDATION AND CONTAINERIZATION CLAUSE**

31. It is hereby understood and agreed that notwithstanding anything contained elsewhere to the contrary (particularly the Warehouse to Warehouse and Marine Extension Clauses), and subject to the Limit of Liability herein, the insurance provided hereunder shall cover while on premises of freight forwarders, consolidators, truckers, warehousemen or others for the purpose of consolidation, deconsolidation, containerization, decontainerization, distribution or redistribution anywhere in the U.S. prior to loading on overseas vessel or at any transshipment point for a period not exceeding ten (10) days after the arrival at such premises. Held covered in the event of a delay in excess of the above time limit at a premium **Included in the Deposit**. The Assured agrees to report all held "covered" exposures and pay premium thereon at this Company's rate.

**RETURN SHIPMENTS CLAUSE**

32. In the event of refusal or inability of the Assured or other consignee to accept delivery of goods or merchandise insured hereunder, this insurance is extended to cover such shipments, subject to the original insured value and insured conditions, during delay and/or return or until otherwise disposed of. The Assured agrees to report the facts of such situations as soon as practicable after they have knowledge of them and pay premium, if required at rates to be agreed.

**FRAUDULENT BILL OF LADING CLAUSE**

33. This policy covers physical loss or damage to merchandise insured under this Policy occasioned through the acceptance by the Assured and/or their agents or shippers of fraudulent Bills of Lading and/or shipping receipts and/or messenger receipt.

This policy also covers loss or damage caused by the utilization of legitimate bills of lading and/or other shipping documents without the authorization and/or consent of the Assured or its agents.

In no event, however, does this Policy cover loss or damage arising from the shipper's fraud or misstatement.

**CONCEALED DAMAGE CLAUSE**

34. Should delay occur in the opening of any package after the arrival of goods at the final destination, or should the goods be placed in bond or warehouse or any other place of deposit by the Assured or ultimate consignee prior to unpacking; if loss or damage is found when such packages are eventually opened, such loss shall be paid or adjusted by the Underwriters in the same manner as though the packages had been opened immediately upon their arrival, provided that:

1. It is no later than 30 days after arrival at final destination and which can be reasonably shown to have occurred prior to delivery into such places of deposit.

2. Such loss or damage is recoverable under the terms of the policy.

Packages showing external damage are to be opened immediately upon arrival.

494680

14

**DEBRIS REMOVAL CLAUSE**

**35.** This policy covers expenses incurred for the removal of all debris of the property covered hereunder which may be occasioned by loss caused by any of the perils insured except that the Assurers shall not be liable under this clause for more than $250,000 or 25% of the insured value of the Merchandise, whichever is greater. This extension, however, shall not cover any liability or expense for which the Assured may be liable under any pollution statute.

**SHORTAGE FROM INTERMODAL CONTAINERS CLAUSE**

**36.** This Policy is also to pay shortage of contents from intermodal containers, meaning; (a) the difference between the number of packages as per shipper's and/or supplier's invoice and/or packing list which were loaded and (b) the count of packages removed taken by the Assured and/or their agent at time of container emptying, however, wherever and whenever occurring but excluding liability for any such loss which can be attributed to the forcible entry of the container which occurred following its delivery to store, warehouse or factory of the consignee at the destination to which the insured goods are insured unless covered elsewhere in this Policy.

It is understood and agreed that this is a private agreement between this Company and the Assured which the Assured will not mention in certificates of insurance, sales contracts, or otherwise.

**CONTAINER DUMURRAGE CHARGES CLAUSE**

**37.** This Policy shall cover demurrage charges and/or penalties assessed against, and paid by the Assured for late return of containers when said containers are retained by the Assured at the instruction of the Company for inspection by the Company's Surveyor in the investigation of loss or damage recoverable under this Policy. The time period for which the Company shall be liable for said charges and/or penalties shall begin at the time the Company instructs the Assured to retain the containers for inspection and shall cease at the time the Company's Surveyor instructs the Assured to return the containers.

It is understood and agreed that this is a private agreement between this Company and the Assured which the Assured will not mention in certificates of insurance, sales contracts, or otherwise.

**CHANGE OF DESTINATION CLAUSE**

**38.** In case of change of destination, as set forth in the original report of insurance, the goods insured are held covered at a premium, if any, to be agreed upon, the Assured agreeing to report promptly all such changes to the Assurer.

**CONTROL OF DAMAGED GOODS CLAUSE**

**39.** It is agreed that in the event of damage to goods insured under this policy, the Assured shall retain control of all damaged goods. The Assured, however, agrees whenever practicable to recondition and sell such goods after removal of all brands and trademarks, the Company being entitled to the proceeds from such sale.

494680

15

It is further agreed the Company will be consulted and allowed to inspect any damaged goods prior to any disposal or sales of such property.

Where it is agreed by both the Assured and the Company that the disposal or sale of such damaged goods is detrimental to the Assured's interest (or which the Assured will be unable to sell or dispose of under their agreement with any trade associations) such damage will be treated as a constructive total loss, and the goods shall be destroyed in the presence of a representative of the Company.

## EXPEDITING EXPENSE CLAUSE

40. Where, in the event of loss or damage recoverable hereunder, the Assured considers it necessary to forward replacements and/or replacement parts by airfreight or other means, this Company will pay the expediting cost in addition to the underlying claim.

## DESTRUCTION OF CARGO ORDERED BY GOVERNMENTAL AUTHORITY

41. In consideration of the premium already charged, this policy is extended to cover the Assured's expense of destroying insured cargo when required by a duly authorized governmental authority, subject to a maximum limit of $10,000. any one occurrence.

## GENERAL AVERAGE (February 1949)

42. General Average and Salvage and Special Charges payable according to United States law and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

These Assurers agree to pay General Average, Salvage and Special Charges in full, irrespective of insured and contributory values, but in no event for more than the limits of liability found elsewhere in this policy.

## CONTRIBUTORY CLAUSE

43. This Company shall be liable for only such proportion of General Average and Salvage Charges as the amount declared for insurance purposes (less Particular Average for which this Company is liable hereunder, if any) bears to the Contributory Value of the property hereby insured, but in no event to exceed the applicable Limit of Liability.

## BILL OF LADING CLAUSE (February 1949)

44. The Assureds are not to be prejudiced by the presence of the negligence clause and/or latent defect clause in the Bills of Lading and/or Charter Party. The seaworthiness of the vessel as between the Assured and this Company is hereby admitted and the wrongful act or misconduct of the shipowner or his servants causing a loss is not to defeat the recovery by an innocent Assured if the loss in the absence of such wrongful act or misconduct would have been a loss recoverable on the policy. With leave to sail with or without pilots, and to tow and assist vessels or crafts in all situations, and to be towed.

## PAYMENT OF LOSS

**45.** In the event of loss which may give rise to a claim under this policy, prompt notice must be given to this Company. In case of loss, such loss to be paid in thirty days after proof of loss, proof of interest, and adjustment, thereof (the amount of the premium, if unpaid, and all sums due to the Company from the Assured when such loss becomes due being first deducted, and all sums coming due being first paid or secured to the satisfaction of this Company). Proof of loss to be authenticated by the Agent of this Company, if there be one, where such proofs are taken; otherwise by a Correspondent of the American Institute of Marine Underwriters, if there be one, where such proofs are taken, but if neither is represented then by some other recognized Insurance Authority.

## PARTIAL LOSS

**46.** In case of partial loss by perils insured against, the proportion of loss shall be determined by a separation of the damaged portion of the insured property from the sound and by an agreed estimate (by survey) of the percentage of damage of such portion; or if such agreement is not practicable, then by public sale of such damaged portion for the account of the owner of the property, and by comparison of the amount so realized with the sound market value, but in no event to exceed the applicable Limit of Liability.

## CONSTRUCTIVE TOTAL LOSS (February 1949)

**47.** No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value when the expenditure had been incurred.

## LABELS CLAUSE (February 1949)

**48.** In case of damage affecting labels, capsules or wrappers, this Company, if liable therefore under the terms of this policy, shall not be liable for more than an amount sufficient to pay the cost of new labels, capsules or wrappers and the cost of reconditioning the goods, but in no event shall this Company be liable for more than the insured value of the damaged merchandise.

## BRAND CLAUSE

**49.** In case of damage to property bearing a brand, trademark or label, the sale of which in any way carries or implies a guarantee of the supplier or the Assured, the salvage value of such damaged property shall be determined after the removal in the customary manner of all brands, trademarks or labels. The cost of such removal to be borne by this Company.

## OTHER INSURANCE CLAUSE

**50.** A.  If an interest insured hereunder is covered by other insurance which Attached prior to the coverage provided by this policy, then this Company shall be liable only for the amount in excess of such prior insurance; the Assured to receive return premium charged hereunder equivalent to the cost of such prior insurance at the rate of this Company.

494680

17

B.    If an interest insured hereunder is covered by other insurance which attached subsequent to the coverage provided by this policy then this Company shall nevertheless pay to the full extent of liability under this insurance without right to claim contribution from said subsequent insurance.

C.    Other insurance upon the property of same attaching date as the coverage provided by this policy shall be deemed simultaneous and this Company shall be liable only for a ratable contribution to the loss or damage as the amount insured hereunder bears to the aggregate of such simultaneous insurance, the Assured to receive return premium proportionate to such reduction in liability.

## MISREPRESENTATION AND FRAUD

**51.** This Policy shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

## CARRIER CLAUSE (February 1949)

**52.** Warranted that this insurance shall not inure, directly or indirectly, to the benefit of any carrier or bailee.

## ASSIGNMENT & IMPAIRMENT OF RECOVERY

**53.** Warranted by the Assured that any assignment of this policy or insurable interest therein or subrogation rights hereunder to any party, without consent of this Company, shall void the insurance so affected. It is further warranted that this Company shall not be bound to pay any loss which, by agreement or act of the Assured, prior or subsequent hereto, the right of recovery of the Assured for loss of or damage to any property insured hereunder, against any Carrier or Bailee, is released, impaired or lost.

Notwithstanding the forgoing and without prejudice to this insurance, the Assured may accept from carriers only such bill of lading, receipts or contracts of transportation containing a release or limitation of liability as to the value of the goods as are customarily issued by such carriers.

Further, in the event of loss or damage to property covered hereunder the Assured shall immediately make claim in writing against the carriers, bailees, or others involved.

## MULTIPLE RECOVERY

**54.** No loss shall be paid hereunder if the Assured has collected the same from others.

## DECLARATION OF RISK

**55.** Authority is hereby given the Assured and/or their duly authorized representatives to issue special marine policies and/or endorsements thereto on any risks applying hereunder. Such special marine policies and endorsements are to be issued in accordance with the terms and conditions of this insurance

494680

18

and are not to be valid unless countersigned by a duly authorized representative of the Assured.

When the Company supplies copies of Special Policies or Certificates of Insurance of this Company to the Assured, such action authorizes the Assured to utilize such Special Policies or Certificates of Insurance to provide evidence of insurance to third parties, subject to the following restrictions:

a) Special Policies or Certificates of Insurance may be sued only in connection with shipments to which this Open Cargo Policy attaches.

b) Terms, conditions and values entered on the Special Policies or Certificates of Insurance must conform to Open Cargo Policy terms applicable to the shipment for which the Special Policies or Certificates of Insurance are used unless the Company's written agreement to other terms is obtained.

c) Copies of all Special Policies or Certificates of Insurance used by the Assured must be sent to the Company in accordance with the reporting provisions of this Policy.

d) In the event Special Policies or Certificates of Insurance are spoiled, voided, or this Policy is cancelled, the original and duplicate certificates are to be returned promptly to the Company.

By using Special Policies or Certificates of Insurance the Assured agrees to reimburse the Company if, by reason of any omission or insertions made by the Assured upon such Special Policies or Certificates of Insurance, the Company is obliged to pay a claim not covered by this Open Cargo Policy or an amount in excess of what this Open Cargo Policy undertakes to pay.

In the event special marine policies are not required, the Assured may report such risks by any method mutually acceptable to the Assured and this Company. The Assured agrees to forward copies of all special marine policies, endorsements and declarations to the Assured's Broker of Record for transmittal to this Company. This insurance shall not be vitiated, however, by an unintentional error, omission or oversight in making reports, provided the same be communicated to this Company as soon as known or discovered by the Assured and an additional premium paid, if required, or deficiency of premium made good.

## INSPECTION OF RECORDS

**56.** This Company, or its Representative, shall have the privilege at any time during business hours to inspect the records of the Assured as respects shipments coming within the terms of this policy both during the term of this policy and for 12 months after its termination.

## BROKERS

**57. a)** It is understood that for the purposes of this insurance the Assured's Broker of Record is:

**Shorepoint Insurance Services**
**1120 Bristol Street**
**Costa Mesa, CA 92626**

**b)** It is a condition of this policy that the above brokers, or any substituted brokers, shall be deemed to be exclusively the agents of the Assured and not of this company in any and all matters related to, connected with,

494680                                19

or affecting this insurance. Any notice given or mailed by or on behalf of this Company to the above brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to the Assured.

## NOTICE OF SUIT

58. No suit, action or proceeding against this Company for the recovery of any claim shall be sustainable unless commenced within one year from the date of the happening of the accident out of which the claim arises, provided that if such limitation is invalid by the laws of the state within which the policy is issued that such suit, action or proceeding shall be barred unless commenced within the shortest limit of time permitted by the laws of such state.

## PROCESS CLAUSE

59. Notwithstanding anything to the contrary contained herein, it is understood and agreed that coverage provided does not insure against loss, damage, claim or expense sustained while the goods and/or merchandise insured hereunder are being worked upon and directly resulting therefrom.

## PACKING CLAUSE

60. In the event of a claim being made for loss or damage which is alleged to be caused by insufficiency or unsuitability of packing or preparation of the subject matter insured, Underwriters hereby agree that they will not use such alleged insufficiency or unsuitability as a defense against the claim in any case where the packing or preparation was carried out by a party other than the Named Insured hereunder, and the insufficiency or unsuitability arose entirely without the Named Insured's privity or knowledge. For the purpose of this clause "packing" shall be deemed to include stowage in a Container and/or other similar Intermodal methods of unit load.

The Insured agrees to assist Underwriters in all respects to pursue rights of recovery against sellers and/or other responsible third parties.

## STEAMER PENALTIES

61. As a condition of this insurance, the Assured agrees to keep accurate records of the vessels used to transport their goods, and will pay such additional premium as may be required for vessels that do not meet the criteria set forth on the rate schedule attached to this policy.

Penalty Rates:

| Vessel Ages | Rate per $100 |
|---|---|
| 21 to 25 years | .10 |
| 26 years and older | .15 |

### EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION ENDORSEMENT
### (U.S.A. ENDORSEMENT)
### (March 1, 2003)

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

494680

20

1.    In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

    1.1    ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    1.2    The radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3    Any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

    1.4    The radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE
## (U.S.A. ENDORSEMENT)

This insurance is subject to the Institute Extended Radioactive Contamination Exclusion Clause (November 1, 2002) provided that:

    if fire is an insured peril

    and

    where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

    and

    a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Institute Extended Radioactive Contamination Exclusion Clause 1st November, 2002 any loss or damage arising directly from that fire shall, subject to the provisions of this insurance (reinsurance), be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

## CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, ELECTROMAGNETIC WEAPONS AND CYBER ATTACK EXCLUSION ENDORSEMENT (U.S.A.)
## (March 1, 2003)

**With respect to the peril of Terrorism as defined in the Terrorism Exclusion Clause, this clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

1.    In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

    1.1    Any chemical, biological, bio-chemical or electromagnetic weapon or device.

494680                              21